Regarding Case Number: 2017178201

<u>APPEAL OF</u> ████ ████

Document 1: **Statement of** ████ ████

Document 2: **Affidavit of** ████ ████ **with Attachments**

Document 3: **Memorandum of Attorney Jeffrey A. Macey**

Document 4: **Letter from Mahri Irvine, PhD, Director of Campus Initiatives, Indiana Coalition to End Sexual Assault**

Document 5: **Letter from Colonel Thomas Genter**

Document 6: **Police Reports from Purdue University Police Department**

PU-DOE 0491



February 12, 2018

Dear Ms. Stier,

I am writing you to appeal Purdue University's decision to expel me. I was expelled for not providing a good faith report when reporting an act of harassment and committed violence against me. I am an ROTC Cadet and a good Cadet, and I love Purdue. and just got caught up with a guy that had a rule breaking past and was unaware until it was too late.

I was embarrassed about the relationship I had with ▓▓▓ and I knew that he must have texts where I said things to him that I wish no one else could see. I did not want to admit to myself, the school, or my parents that I had let ▓▓▓ into my life to the extent I had. Therefore, I wanted out of the investigation.

I wish this had never happened. But, it doesn't change the fact that ▓▓▓ hit me in my room and that I reported him to the police. I did this so that I could be safe, not to get ▓▓▓ in trouble.

Not only did the investigation overlook facts, but it also never notified me that the investigation had turned onto me and I was now the one being investigated. The facts overlooked included phone calls made to me and my parents by ▓▓▓ and his parents. But also, in the notice of expulsion these points were listed:

- You characterized your relationship with Mr. ▓▓▓ as that of friends who met occasionally to do chemistry homework. The preponderance of the evidence confirms that you and Mr. ▓▓▓ were engaged in a sexual relationship from early September 2017 until on or about October 10, 2017.

  o The reason I was not transparent about my relationship with ▓▓▓ is that I was embarrassed. I never considered us to be "dating." Although, a relationship is agreed upon by both parties—and I told ▓▓▓ multiple times that I was not looking for a relationship nor a commitment of any kind. The definition of a "relationship" is subjective and dependent on people's personal opinions. My definition of a "relationship" is different from the definition that the investigators used. I thought that my sexual history with ▓▓▓ was not relevant, so I covered it up. I apologize. But that doesn't change the fact that he hit me and that I was scared of him. I still am.

- You claimed that you believed Mr. ▓▓▓ was an active, enrolled student. The preponderance of the evidence demonstrates that you knew that Mr. ▓▓▓ had a pending disciplinary matter involving a former girlfriend, that he was not attending classes at Purdue, and that he did not know when or if he would be able to return to

Purdue.

- o I did not know the specifics of ⬛'s situation and he told me a lot of different stories. It wasn't until after the fall break trip that I really found out what was happening. I knew that ⬛ had a girl friend and that he had prior issues with her. When a man says that he is going through issues with a woman, the last thing I think of is that he is having a legal issue with her. For example,, I had to have Kasey Richardson (CARE) explain to me what a PNG was. I was unaware of the PNG and other relationship harassment charges that were being pressed against him until after he hit me.

- You asserted that you had a boyfriend in your hometown. You asserted that you texted him while on the trip to Avon and asked that he call you. You stated that you told Mr. ⬛ and his parents that you were getting a call from your boyfriend in an effort to let everyone know that you had a boyfriend. The preponderance of the evidence establishes that you did not have a hometown boyfriend in September and early October 2017, and that you did not receive a call from your boyfriend while at Mr. ⬛'s parents' home.

  - o This is irrelevant to harassment charges, also I had broken off all relationships prior to college. So this statement, that I was not in a relationship is true. I refer to ⬛ as my guy friend in many social settings because he is my best friend and a guy that's been in my life for a while now. My relationship with ⬛ is hard to explain and not really a part of this case.

- You stated that Mr. ⬛ looked at guns when he took you and a friend to a local Walmart. You asserted that he looked at the guns so long that it made you uncomfortable. Your friend stated that he pointed out the guns, but you and she didn't think much of it. The preponderance of the evidence demonstrates that your account of the Walmart trip is not credible.
  - o ⬛ attended the Walmart trip with me. It is impossible for someone else to conclude that I did or did not feel uncomfortable, without thoroughly discussing the situation with me. ⬛ himself admitted that he went on the trip. ⬛ confirmed we looked at guns. Because I didn't participate in the investigation you didn't get my side of the story. I stand by it. I did feel uncomfortable, and you cannot prove, based on the comments of a witness, that I did not feel uncomfortable. This is a matter of my personal feelings.

- You mischaracterized the circumstances of Mr. ⬛ accompanying you to your home in Ohio for Fall Break. You asserted that Mr. ⬛ had no plans for Fall Break, that he told you that his parents were going to be away, and that he did not want to be alone. You asserted that he was seeking an invitation, so you invited him home with you. The preponderance of the evidence establishes that the two of you made plans to spend Fall Break together at your home in Ohio.

PU-DOE 0502

o I did not mischaracterize this situation. I never said that I did not make plans to spend Fall Break together with ████ in Ohio. I invited him to spend Fall Break for me because he told me that his parents would be attending a wedding, and also when I picked him up from his residence in Avon his mom reminded him that they would be out of town at a wedding and to call if he needed anything. His version of events is not different than mine.

- You stated that you saw your boyfriend while you were home and also went out with friends. You asserted that you did not know what Mr. ████ did while you were with your boyfriend and friends. The preponderance of the evidence establishes that you and Mr. ████ were together in Ohio.

  o Of course we spent time together in Ohio. I already told you this. ████ and I were with each other on fall break. He rode with me to my residence because we were friends and he told me that his parents were going to a wedding over fall break. Over fall break, I went to a football game with my friend ████ ████. And ate with ████ ████ ("boyfriend"), I also went to the gym every day alone. However, we did not spend all of our time together. Activities that ████ and I did together included: going to the zoo, having a bonfire, watching a movie, and watching numerous episodes of The Office. My mom's affidavit also establishes that ████ and I spent time apart over Fall Break. ████ was not telling the truth when he stated we were together the whole time. There are many people who can support my claim that we did not spend the entire trip together, including my mom, ████ and ████.

- You alleged that on the trip back to Purdue from your home in Ohio Mr. ████ did not remind you to take him home to Avon. You asserted that Mr. ████ returned to campus with you. You claimed that when the two of you arrived at your residence hall room, he shut the door and made a statement to the effect that he thought the two of you should be dating. You asserted that you then told him that you did not want a relationship with him and wanted only a friendship with him. You stated that he then grabbed your arm which caused you pain. You stated that you tried to get away, but you were unable to do so. You reported that while holding your arm, he stated, "I could hurt you, does that scare you?" In response, you stated that you pushed him, and then he punched you in the ribs on your right side. You reported that you then hit Mr. ████ in his left ear and knocked him down. You reported that you then left the room to use the bathroom. At that point, you reported that you remembered that you had to drive him to Avon. You stated that you returned to your room and then drove Mr. ████ back to his home in Avon. You also asserted that he was quiet on the ride but his body was twitching. When you arrived at his house, you reported that you told him to, "Get out of my fucking car!" and drove away. You stated that after you dropped him off, he sent her 8 to 10 text message and called you. You asserted that because he did not reach you, he then called your mother and told her that he was worried about Ms. ████ and needed to get in contact with you. The preponderance of the evidence leads to

the conclusion that you drove back to Purdue with Mr. ████ as a passenger in your car and that you then took him to his home in Avon. The preponderance of the evidence establishes that the altercation in your residence hall did not happen.

- o ████ drove back to campus with us. He has said how awkward and silent ████ was on the drive home to campus. Once I got to campus, I started unloading stuff back into my dorm room, ████ assisted. On the last trip ████ shut the door, which I thought nothing of at first. Then when I was putting away my laundry he stated: that we should date. After replying with a no, which I have done more than once. ████ grabbed my arm. I told him to let go and he said something to the extent of: "I could hurt you doesn' that scare you?" I proceeded to shove him away from me. His hand then struck the right side of my ribcage. And I got scared and hit him in the left side of his head, by his ear. He proceeded to look dazed and stumbled backwards. I then left and went to the restroom because I was astonished. I then drove ████ back to his house in Avon, because that is where he left his car and told him to get out of my car. The car ride consisted of ████ tensing up and twitching. After dropping ████ off he proceeded to contact me via. Text and call. ████ then proceeded to call my mother and tell her it was a matter of life or death that I respond, along with his father calling my mother and saying that I am the reason that his son is attempting suicide. ████ is not telling the truth. He has lied on multiple occasions to the investigators and the Purdue Police Department. After he hit me, I was afraid of him and reported him. Reporting ████'s behavior was my right and I should not be punished for doing so.

- Further, you had the opportunity to set the record straight when Ms. Wright wrote to you seeking a meeting to discuss the text messages that Mr. ████ provided and to discuss the inconsistencies in your version of the events vs. his version. You declined that opportunity. I find by a preponderance of the evidence that you provided knowingly false and malicious statements and acted in bad faith by making multiple unfounded allegations against Mr. ████

  - o At no time did Purdue University informed me that I was being investigated for a false report or that I was facing disciplinary action. The Purdue policy clearly states that complainants do not have to participate in investigations or other processes. I exercised my right to not participate, because Ms. Wright wanted me to come in during an exam period; she did not explain that I could come in at another time., Also my Grandfather was in the hospital and I was making arrangements to go see him one last time. Here is the email I sent to Ms. Wright. I am also submitting a screenshot of this email.

Good Evening Ms. Wright and Mr. Amberger,
I hope you are doing well. I wanted to write this email because I have something important I want to share. This entire endeavor has taken up a lot of my time and energy. Additionally, my grandfather is seriously sick and this has also consumed the majority of my energy. At the

PU-DOE 0504

moment, I am trying to devote what little energy remains to studying for finals. When this incident occurred earlier on in the semester it took a lot out of me as well as a lot of time for studying—therefore, I need to capitalize on these last three weeks to salvage my GPA. For example, I got a 38% on that chemistry test that I had rescheduling issues with.

As a result, I would like to remove myself from participating in the concluding actions and activities of this case. I didn't want to participate in the beginning; I shared my experience only because I thought it would help the case. I feel as if, regardless of my case or the other woman's, that ███ is a threat to campus and other individuals. His threat to shoot up the school should not be taken lightly. I do believe people can change- but not that significantly, even with psychological help, which clearly did not help his case because I've been informed he was receiving help after the first incident with the other woman, and he obviously did not change his actions.

This email was not written with the intent to sound aggressive or convince you to take action. It was written with honesty and with the intent of sharing my current state and thoughts about removing myself from participating in the case. Thank you for the effort you have made thus far and for keeping campus a safe environment. If you have any questions, please don't hesitate to contact me. Also, if from a legality standpoint you need me to participate, even though I've been told my participation is all voluntary, let me know and I'll find time to come in and share my experience again.

Very Respectfully,

███████████

Army ROTC Cadet
Purdue University
Biomedical Engineering

Ms. Wright replied to my email with the following email:

███████

Thank you for the email you sent last night. We understand that this process had been time consuming and difficult for you. Your participation in the process is voluntary, and you can participate as much or as little as you choose. We will proceed with the investigation on the information that we have. We will notify you when the preliminary report is ready for review; if you choose, you can review that report or decide not to review it. We will also notify you of the date of the equity panel meeting and, again, you can participate in the panel or not participate.

We hope that your grandfather's health improves.
Take care,
Christie

After these correspondences I believe that I was still the complainant in this case, that my participation was voluntary, and that my lack of participation could not "find by a preponderance of the evidence that you provided knowingly false and malicious statements and acted in bad faith by making multiple unfounded allegations against Mr. ███████" By accusing me of making a false report and investigating me for that suspected false report, without notifying me of what it was doing, Purdue violated my right to not participate in the Title IX process.

PU-DOE 0505

**Exclusion of Important Part of My Statement:**

The determination letter did not include a crucial part of my written statement. I had sent Ms. White an email approving the statement that should be used. But my determination letter excluded important information. The underlined sentences in the following paragraph are what was excluded:

"It is further alleged that, after being dropped off at your home, you sent Ms. ████ 8-10 text messages and called her a few times. It is alleged that, since she did not respond to your calls or texts, you called Ms. ████'s mother and told her that you needed to get in contact with Ms. ████ and that you were worried. It is alleged that you continued to call and text Ms. ████ without response. It is further alleged that, on October 9, 2017, you contacted Ms. ████'s mother via telephone and told her that it is a "matter of your daughter's life or death if she calls me back." It is further alleged that on or about Tuesday, October 17, 2017, your father called Ms. ████'s mother and stated that you had threatened suicide and that it was Ms. ████'s fault. "

This information was omitted from the final report, which was what the panel made its decision upon. The underlined portion is very critical to the case. It follows the textbook definition of harassment, "to annoy persistently," as well as , violating the no-contact order that was provided to me by law enforcement. ████'s father then proceeded to call my mother and tell her: "it was my fault that his son ████ tried to commit suicide." His father also harassed me made me feel like reporting was a poor decision. These incidents can all be confirmed by my mother in her affidavit. I don't understand why the investigative report did not address it.

████████ is dangerous and I was right to be scared of him. ████'s previous record is:

- o CM - Criminal Misdemeanor 01/31/2018, 35-46-1-15.1(a)(1)/MA: Invasion of Privacy-Violates protective order under IC 34-26-5 to prevent dom.
- o Criminal Misdemeanor 11/14/2017, Pending 35-43-2-2(b)(1)/MA: Criminal Trespass Def., not having contractual interest in property, knowingly
- o Criminal Misdemeanor 10/16/2017, Pending 9-26-1-1.1(a)(4)/MB: Leaving the Scene of an Accident Def. crashes into an unattended car or other, 7.1-5-1-3(a)(4)/MB: Public Intoxication -- Harassing, Annoying, Alarming
- o Protective order- filed against him by ████ a student whom he previously harassed on campus and was found guilty and suspended from campus until 2021. He was not a good faith reporter in this case.
- o Protective order- filed by me against him, against harassment charges from his threats made against me to my mother and his in-person threats and actions.

**Mitch Daniels Letter:**

President Daniels sent out a letter 30 minutes after I got my expulsion notice. In President Daniels's recent campus-wide memo, he stated: "nobody should ever fear any repercussions" for reporting. Sadly, I did what I thought was the correct thing—namely, report—and I now face serious repercussions. Furthermore, I have now been put on LOA from the ROTC program because they cannot have expelled cadets.

PU-DOE 0506

There have been several of us who have been attacked or harassed in some way by a male student here on campus. I am aware of multiple incidents, and media outlets have been informed by other victims of expulsion due to reporting.

**Statistics:**

I am aware of three other cases in the last few months at Purdue where the victim was initially expelled and then reduced to a suspension. If there were really 3 false reports, statistically speaking that would mean that 98-92 other individuals have come forwards, reported sexual assault or harassment, and their offenders have been found guilty. Statistically speaking, false reports are very low (2-11%). What are the chances that so many female students at Purdue would all be making false reports within the same timeframe?

In the 2016-2017 school year there were only 2 rapes reported at Purdue, and 20 assault/battery/harassment complaints filed. Given that these numbers are significantly lower than the national average it leads me to believe that there is something going on here at Purdue and perhaps, I am just a part of the epidemic. Statistically speaking, only 12% of women do report and I would confidently tell all 12% of those women whom feel comfortable enough reporting—to not report and save their mental health, because at Purdue they are not going to find the closure or healing that they deserve after such a tragic and mentally consuming event. I was not raped, I was not sexually assaulted. I was harassed, and I was physically attacked. I was a part of the 12% that felt that reporting would make closure easier, but it didn't. For me, reporting was just like ripping open the wound again; it was worse than being physically attacked or sexually harassed. Purdue's treatment of me makes me doubt my decision to report. For me, I know if this ever happened again, or if something worse happened, I would not report to Purdue University.

**Call to Action:**

I am following the guidance of President Mitch Daniels and reported what I knew was the right thing to report. I am asking for Mitch Daniels to uphold his promise to victims of sexual harassment and sexual assault; he said that there would be no repercussions,that victims would be treated with dignity and respect, and that victims would not be punished and silenced.

I appreciate your time in reading this appeal. When you think of me, I hope that you consider the daughter of those you sit next to on many occasions, and think about how you would feel if your daughter or if someone else'sdaughter was silenced for doing the right thing.

Respectfully yours,



 Gmail

**Regarding University**

3 messages

Wed, Nov 29, 2017 at 7:27 PM

To: "Wright, Christina A" <wrigh438@purdue.edu>, jamberge@purdue.edu
Bcc: "Richardson, Kasey R" <krrichardson@purdue.edu>

Good Evening Ms.Wright and Mr.Amberger,

I hope you are doing well. I wanted to write this email because I have something important I want to share. This entire endeavor has taken up a lot of my time and energy. Additionally, my grandfather is seriously sick and this has also consumed the majority of my energy. At the moment, I am trying to devote what little energy remains to studying for finals. When this incident occurred earlier on in the semester it took a lot out of me as well as a lot of time for studying—therefore, I need to capitalize on these last three weeks to salvage my GPA. For example, I got a 38% on that chemistry test that I had rescheduling issues with.

As a result, I would like to remove myself from participating in the concluding actions and activities of this case. I didn't want to participate in the beginning; I shared my experience only because I thought it would help the case. I feel as if, regardless of my case or the other woman's, that ███████ is a threat to campus and other individuals. His threat to shoot up the school should not be taken lightly. I do believe people can change- but not that significantly, even with psychological help, which clearly did not help his case because I've been informed he was receiving help after the first incident with the other woman, and he obviously did not change his actions.

This email was not written with the intent to sound aggressive or convince you to take action. It was written with honesty and with the intent of sharing my current state and thoughts about removing myself from participating in the case. Thank you for the effort you have made thus far and for keeping campus a safe environment. If you have any questions please don't hesitate to contact me. Also, if from a legality standpoint you need me to participate, even though I've been told my participation is all voluntary, let me know and I'll find time to come in and share my experience again.

Very Respectfully,

███████████

Army ROTC Cadet
Purdue University
Biomedical Engineering

 Virus-free. www.avast.com

Wright, Christina A <wrigh438@purdue.edu>                    Thu, Nov 30, 2017 at 1:15 PM
To: ███████████████████████, "Amberger, Jacob L" <jamberge@purdue.edu>
Cc: "Richardson, Kasey R" <krrichardson@purdue.edu>



Thank you for the email you sent last night. We understand that this process had been time consuming and difficult for you. Your participation in the process is voluntary, and you can participate as much or as little as you choose. We

PU-DOE 0508

will proceed with the investigation on the information that we have. We will notify you when the preliminary report is ready for review; if you choose, you can review that report or decide not to review it. We will also notify you of the date of the equity panel meeting and, again, you can participate in the panel or not participate.

We hope that your grandfather's health improves.

Take care,

Christie


Christina A. Wright

Title IX Specialist

wrigh438@purdue.edu

317-626-7420


NOTICE: I have been engaged by Purdue University only as an independent fact-finder. Any information presented is not legal advice and is not to be acted on as such. This message and any attachments are only for the named recipient(s). If you receive this message in error, or are not the named recipient(s), please notify the sender at either the e-mail address or telephone number above and delete this e-mail from your computer. Receipt by anyone other than the named recipient(s) is not a waiver of any applicable privilege. Thank you.


From:

Sent: Wednesday, November 29, 2017 7:28 PM

To: Wright, Christina A <wrigh

[Quoted text hidden]

---

                                                                    Sun, Feb 4, 2018 at 8:15 PM


Army ROTC Cadet
Purdue University
Environmental Engineering
[Quoted text hidden]

PU-DOE 0509

AFFIDAVIT of ▓▓▓▓▓▓ ▓▓▓▓▓▓

1. The purpose of this affidavit is to provide my testimony in Case 2017178201.

2. My name is ▓▓▓▓▓▓, and I am the mother of ▓▓▓▓▓▓. I live at ▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓.

3. I have a Bachelor's of Science in Chemical Engineering from ▓▓▓▓▓▓. I have a Master's Degree of Business Administration in Finance from ▓▓▓▓▓▓. I have a Master's Degree of Divinity in Alcohol and Drug Abuse Ministry from the ▓▓▓▓▓▓ in ▓▓▓▓▓▓ Ohio. I have a Master's Degree in Early Childhood Special Education from ▓▓▓▓▓▓ ▓▓▓▓▓▓.

4. Starting in the Fall of 2017, ▓▓▓ was a freshman at Purdue. Her father, ▓▓▓▓▓▓ her brother ▓▓▓, and I moved her into Owen Hall on or about August 15, 2017.

5. A week or so before Fall break, I talked with ▓▓▓ on the phone, and she said that she would be bringing "a friend" to my/her home in Ohio. I asked if it was a boy or girl, and she said, "boy." I did not ask his name.

6. On Friday, October 6, ▓▓▓ and the friend arrived in the driveway in the afternoon.

7. Her friend introduced himself as ▓▓▓▓▓▓. As a parent, I wanted to find out something about this kid who would be staying in my house for four days and who was a friend of my daughter's, so I asked questions about his major, in which residence hall he was living, where he was from, how he had met ▓▓▓ etc.

8. With respect to his major, he claimed that he was in Chemical Engineering. I am a chemical engineer, so I got out my undergraduate transcript and compared the classes which he was taking with what I had taken. He said he had taken first year chemistry in high school, so he was now taking an advanced chemistry. "That must be Orgo [Organic Chemistry] ... I hated Orgo," I said. He agreed it

Case 2017178201                          ▓▓▓▓▓▓ Affidavit                          Page 1 of 6

was hard. We talked about some of the courses which he would be taking in his later years in chemical engineering.

9. With respect to residence hall, he told me that he was living off campus because Purdue had enrolled too many freshman to accommodate them on campus. I told him that must be nice, and he said that it really wasn't because he had to take the bus to campus. He told me the name of the place but I can't recall it.

10. As you will see from the interactions listed below, ▨▨▨▨▨▨ totally misrepresented his status to all he met on this visit, claiming to be a Purdue student and claiming to live just off of campus when (I later found out) he was not and did not.

11. With respect to where he was from, he told me Avon, Indiana. He also told me that he worked at HotBox Pizza. His mother was the administrator of a Christian Preschool, and his father (I think I recall this correctly) was an engineer or mechanic (something technical). He also said that he was an Eagle Scout.

12. He and ▨▨▨ went off to a ▨▨▨▨▨▨ football game. The next day, they went to the zoo. Prior to going to the zoo, ▨▨▨ unloaded her ROTC gear from her car. She talked about all of the things which she had done with ROTC, and I said that this sounded exciting ("Hey ... I want to do that!" I said), and perhaps ▨▨▨ having been an Eagle Scout, might want to do ROTC. I asked him if it sounded interesting, and he said, "Yes." I suggested that he look into seeing if ROTC would take him in the second semester, and he said that yes, he might pursue that.

13. Sunday, October 8, was ▨▨▨'s birthday, so ▨▨▨'s father, brother ▨▨▨ and his girlfriend, and another family (two parents, three children) accompanied ▨▨▨, ▨▨▨ and me to a pumpkin patch. We came home in the afternoon, and I started making dinner. While I was making dinner, ▨▨▨,

 

PU-DOE 0474

████, ████ and ███'s girlfriend carved pumpkins. ████ carved an American flag, ███ carved some saying, ███'s girlfriend carved a cat, and ███ carved a "Purdue P."

14. That evening, the family friends came over for dinner with all of us. During dinner, he continued to talk about his Purdue experiences, and about his living off campus. This was done in the presence of all of us.

15. On Monday, ████ went to see her friend, ████, for breakfast. She left ████ here (he was staying in my son's room) sleeping. She returned around 11 AM or so, and he came downstairs when she got back. ████, ████ his girlfriend, ████ and I went to a shooting range with ████ driving, but they were closed, so we saw a movie instead.

16. We got back, and while I was making dinner, ████ asked me if he could put my guns away. I told him, "No. Thank you. I'll do that." At the time, I thought it was strange, to the point where when I put the cases away that evening, I checked to make sure they were all there.

17. On Tuesday, October 10, ████, ████ and I met ████'s father and brother at the ████ ████ at 7 AM for breakfast before they returned to Purdue. ████ another Purdue student, arrived around 9 AM, and ████, ████ and ████ left for Purdue.

18. I have always told ████ to call or text me when she reaches her final destination. She called that afternoon much later than I would have expected her to call.

19. ████ was very upset. She told me ████ had made her feel unsafe and that she did not know what to do.

20. I started searching court records and found that a Protective Order had been issued to ████ on 9/1/2017. I sent an email to ████ at 6:16 PM (Attachment 1) with a picture of the database entry for the Protective Order. I told her that her Dad and I were concerned for her safety, and to go see the police.

21. I noticed that the entry indicated that he had not yet been served the Protective Order. I called the Sheriff's office to find out if it had been served, but they couldn't tell me.

22. Given that I now knew that ███████ had a Protective Order filed against him in September, I wanted to find out just what sort of behavior/actions ████ had done so as to have the Order issued, and therefore of what he would be capable with my daughter. In other words, in how much potential danger for personal harm from him was ██████? So the next day, October 11, I did an online request for the file (Attachment 2).

23. The next day is a blur with respect to contact with ██████. I forget when she told me when she had gone to see the campus police and the CARE people, who she had seen, etc., but she had.

24. On Wednesday, October 12, I was out of the house and checked my answering machine upon my return. There was a message from ██████ asking me to get ahold of ██████ because "it was important" (Attachment 3, Entry 1). On my cellphone, I called a close friend to ask her what I should do.

25. When I was on the phone with her, at around 1:50 PM, ██████ called again on my landline. I put ██████ on the landline speaker phone and the friend on the cellphone speaker phone so she could hear the conversation. ██████ does not know that the friend was listening in (Ohio is a one-party state). This conversation is drawn from memory and is in Attachment 3, Entry 2. During the conversation, three times he said that getting ahold of ██████ was a "matter of life or death." After we hung up, I tried calling ██████, but she was on the phone (as it turns out with her father). I told her about the phone calls from ██████. I told her to go see the Police. As it turns out, ROTC had already set her up with an appointment with the Lafayette Police Department for 2 PM.

26. Over the next day, I talked with ██████ and due to ██████'s uttering "a matter of life or death" in the phone call, she, the Police and ROTC feared for her safety, and was now under ROTC protection.

 

PU-DOE 0476

27. On Thursday, October 12, I was again on the phone (landline) with the friend, and at around 8:30 PM got another call (I have call waiting). I put the friend on hold, answered the new call, and it was ▇▇▇'s father, ▇▇▇. I asked ▇▇▇ to please hold, got back with my friend and told her to call me on my cell phone. Which she did. With both on speaker phone, again, the friend could hear everything which was said.

28. The content of the discussion (recalled from memory) is provided in Attachment 3, Entry 3. The key points are these:

- At least twice, ▇▇▇ apologized for what ▇▇▇ had done to ▇▇▇ … once at the beginning of the call and once at the end before hanging up.

- I told him that ▇▇▇ was very upset and was now under ROTC protection as a result of all of this.

- ▇▇▇ relayed that ▇▇▇ had reported ▇▇▇, and as a result ▇▇▇ had tried to commit suicide, and was in the hospital.

- ▇▇▇ and his wife knew about the Protective Order, and ▇▇▇ had lied to them, saying that he was seeing ▇▇▇ off campus. His exact words were, "He lied to us, too."

29. Following this conversation, I spoke with a friend, and he told me that I should immediately write down what I recalled from the phone conversations with ▇▇▇ and his father. Which I did. This is the Attachment 3 referenced above.

30. It wasn't until Saturday, October 14, that I found the Purdue Persona Non Grata list on Purdue's website, and it showed that ▇▇▇ had been on it since 8/24/2017 (Attachment 4).

31. It wasn't until the next week that I learned that ▇▇▇ had run his car into something in a hit or run in Indianapolis/Avon, and there was now a Criminal Misdemeanor case pending in Hendricks County as a result of this (Attachment 5).

PU-DOE 0477

32. Over the course of the next month, I routinely checked the Protective Order database and the Indiana Court Cases database and found that a second Protective Order against ████ had been filed on 10/19/2017, and a complaint against him for criminal trespassing had been filed in the Tippecanoe Superior Court 5 on 11/14/2017.

33. The original Protective Order now shows ████ as having been served on 10/20/2017 -- coincidentally three days after the second Protective Order was filed (Attachment 6).

34. And just last week, on 1/31/2018, yet another complaint for invasion of privacy and violation of a protective order has been filed against ████ in Tippecanoe Superior Court 5.

I, ████████ hereby certify, under penalty of perjury, that the above-stated facts are true and correct to the best of my knowledge.


Executed this 12 day of FEBRUARY , 2018

~~████~~


## Notary Acknowledgement

State of _Ohio_ )
                ) ss
County of _Morrow_ )

On _Feb. 12, 2018_ , before me _Shandi K Jesson_ , a notary public in and for said state, personally appeared ████████████ , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within Affidavit and being first sworn on oath according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief. In testimony whereof, I have hereunto subscribed my name at ████ _Ohio_ , this _12_ day of _February_ , 2018.

**SHANDI K. JESSON**
Notary Public, State of Ohio
My Commission Expires
June 24, 2018
Recorded In Morrow County

_Shandi K Jesson_
Notary Public

PU-DOE 0478

2/7/2018                                                      Restraining order

From: ~~[redacted]~~
To: ~~[redacted]~~                                            Attachment 1
Subject: Restraining order
Date: Tue, Oct 10, 2017 6:16 pm

---

Contact the campus police ... Both Dad and I are concerned for your safety. This guy is very smart and obviously persistent.

You need to start the track record/paper trail on him with the campus police.

nonstudent posing as student on campus with a restraining order ...

I appreciate that you want to handle this yourself, but you're playing with fire right now. The key is to get out of it gracefully so he goes away. Listen to what ~~[redacted]~~ tells you.

10/10/2017                    https://mycourts.in.gov/PORMSearch/DetailROM1220795

# mycourts.IN.gov

Protective Orders and No Contact Orders
## Case Detail: 79D05-1708-PO-000540

| | Disclaimer |
|---|---|
| In the Tippecanoe Superior Court 5, Tippecanoe County, Indiana<br>Case No. 79D05-1708-PO-000540<br><br>A Protective Order has been filed against:<br><br>~~[redacted]~~<br>Respondent<br>City: W LAFAYETTE, IN<br>Born: 1983 | **Handgun Prohibition**<br>If a court indicates that the court has not ordered a respondent prohibited from carrying a firearm, that does not mean the individual can legally carry a firearm. Indiana state laws regarding gun ownership still apply, and other areas of circumstance may exist that prohibit a respondent from carrying a firearm. |
| Order Issued on:                                2/13/2017 | |
| Attempted to serve respondent on:               9/5/2017 | **More Information**<br>**About this Case** |
| Other Notes: | |
| Respondent has not yet been served | For more information and local online, or to learn how to get copies of documents in this case, contact the local clerk's office. Mycourts.in.gov/tools |

PU-DOE 0479

# Tippecanoe County Clerk    Attachment 2

# Case Filings

Transaction ID: 1365-7363-9279 Submitted Date & Time: 10-11-2017 6:37 AM

**Case Number**
79D05-1078-PO-000540

**What document is needed**
All documents in file including the complaint and the decision

**When needed**
10-11-2017

## Person Requesting

**Submitter Name**

**Address**

**City**

**State**

**ZIP**

**Phone Number**

**Ext.**

**Fax#**

**Email Address**

**Best Time and way to contact you**
Home phone. If answering machine picks up, please call cell phone. Thank you.

**Comments**
The number provided is my home phone. If the answering machine picks up, please call my cell at ~~~~~~~ Thank you.~~~

**Once your record is located, we will contact you to determine how you would like to obtain it and provide payment. Thank you.**

**Fees**
Certified Record: $2/document
Faxed Document: $2/Page
Mailed Document: $2/document
Court Record: $1/Page

PU-DOE 0480

**Attachment 3**

**Entry 1**

Wednesday, Oct. 12 @ 1:22 PM ... 1-███████ (On answering machine.)

"HI, Mrs. ████. This is ████. Um ... ah... I am just trying to get ahold of ████ because I can't get to her through her cellphone number right now. So I was wondering if you could give me  call back because it's really important. You ca call me back at ████. Thank you."

**Entry 2**

Wednesday, Oct. 12 @ approximately 1:50 PM ... 1-████ (From memory.)

████: "Hi. This is ████ I can't get ahold of ████ Could you please get in touch with her and tell her that I'm trying to reach her?"

████: "████ gets really mad at me when I try to text or call her during the day. Her schedule is packed, and she gets mad at me for bothering her so I don't."

████ "I need to get ahold of ████. It's a matter of life or death."

████: "████ I'm sorry, but like I said, ████ gets mad at me when I get in touch with her during the day. I usually text or call her at night when she isn't so busy."

████ "I really need to talk with her. It's a matter of life or death."

████ "I don't like to bother her during the day. Let me think about it and maybe see what I can do."

████ "Tell her it's a matter of life or death."

████ "OK."

At which point I called ████. She was on the phone (as it turns out) with her father. She called me back at 1:50, hysterically crying.

████: "████, I just got a call from ████. He needs to get in touch with you. He says it's a matter of life or death. Has he texted you or called you today?"

████: "Yes. Three times. I haven't returned them."

████: "████ you need to go see the police."

As it turns out, ROTC had set her up with an appointment at the Lafayette Police Department for 2PM, and she was going to see them.

**Entry 3**

Thursday, Oct. 13 around 8:30 PM. Phone number unknown. (From memory.)

████: "Mrs. ████? Is this ████'s mother?"

████ "Yes."

████ "This is ████, ████'s father." Pause. "I am calling to apologize for what ████ did to ████"

Case 2017178201                    ████ ████ Affidavit                    Att. 3 - Page 1 of 2

PU-DOE 0481

PU-DOE 0482

███ "Well, certainly ███ was very upset by it. For the last two days, she has had 24-hour-a-day protection from ROTC."

███ " ███ reported ███, and he tried to commit suicide yesterday. He is in the hospital."

███. "I'm sorry to hear that. I hope he gets the help he needs."

Then ███ made some sort of statement about trying to make sure that this didn't happen again, to which I replied, ███ should not, in the near future or longer term indefinite future be constantly having to look over her shoulder. My absolute priority is making sure that my daughter is safe."

He made some sort of statement that the police would be coming down to interview ███ in the hospital.

I made some sort of statement telling him how ███ 's father and I had talked, and we had wondered where the parents were in all of this. I asked him if he knew about the Protection Order. He said he did, and that ███ had lied to them ("He lied to us, too"). Apparently ███ told them that he was seeing ███ off campus.

I told him that was not the case, and that I would think that he and his wife should be doing everything they can to make sure that ███ gets the help he needs, not only for ███ 's sake, but for any other young woman who happens to cross his path.

Again, he apologized, and we hung up.

Case 2017178201      Affidavit     Att. 3 - Page 2 of 2

Custom Searc

**U N I V E R S I T Y** Police Department

Police   About   Crime and   Safety   Crime and   Campus &   Sites
Links              Timely Reports   Programs   Strategic Respnse   Community Info   Directory

Attachment 4 Page 1

## Police Links

Message from the Chief
Timely Warnings
Annual Security Report
Purdue Clery Forms
Daily Crime Log
Campus Security and Crime Statistics Policy
Campus Security and Crimes Statistics Procedures
Weapons Policy
Crime Statistics
Active Shooter Training Video
Federal Clery Act
National Sex Offender Registry
Indiana Sex Offender Registry
Active Warrants
Persona Non Grata List
Purdue Campus Map
Crime & Drug Tip Lines
Report a Non-emergency Safety Concern
Emergency Preparedness and Planning
Bicycle Registration
Computer Registration
Fingerprinting
Student Internships

### Annual Secuity Report

**Campus Safety Contacts**

EMERGENCIES
**CALL**

If you see something, say something.

**PURDUE POLICE**
www.purdue.edu/ehps/police
Phone: (765) 494-8221

**PURDUE FIRE**
www.purdue.edu/ehps/fire
Phone: (765) 494-6919

**FIRE PROTECTION ENGINEERING
AND SPECIAL SERVICES**
www.purdue.edu/ehps/fireprotection
Phone: (765) 494-1424

**RADIOLOGICAL &
ENVIRONMENTAL MANAGEMENT**

## Persona Non Grata

| NAME | LOCATION WHERE VALID | ISSUED |
|---|---|---|
| AGARWAL, VEDENT | Third Street Suites | 4-25-17 |
| AHMAD, AIZAZ | Purdue University Campus | 6-26-17 |
| ALZAHRANI,SAEID A. | Purdue University Campus | 11-3-17 |
| APPLEGATE, DEBRA L. | Purdue University Campus | 9-29-17 |
| ARVIN,ALEXANDER L. | Purdue University Campus | 9-6-17 |
| ATKINSON, KENNETH W. JR. | Purdue University Campus | 10-19-17 |
| AU, SPENCER | Purdue University Campus | 1-24-18 |
| BAILEY, NANCY E. | Purdue University Campus | 2-21-17 |
| BECK, JUSTIN M. | Purdue University Campus | 1-18-18 |
| BILLUPS-BROOKS, JONTAE | Purdue University Campus | 11-30-17 |
| BROWN, KYLE J. | Purdue University Campus | 6-26-17 |
| BROWN, MASON L. | Purdue University Campus | 1-24-18 |
| BURGE, SLATER M. | Purdue University Campus | 8-23-17 |
| CHO, BRYAN | Purdue University Campus | 2-20-17 |
| DOUP, SAWYER R. | Purdue University Campus | 12-11-17 |
| EVAN,LUKAS SABIAN-CARTER | Purdue University Campus | 11-18-17 |
| FELIX, DOUGLAS | Purdue University Campus | 2-15-17 |
| FLANNIGAN, DOUGLAS J. JR. | Purdue University Campus | 1-30-18 |
| FORREST, BRITTANY A. | Purdue University Campus | 9-26-17 |
| FORREST, CALVIN S. | Purdue University Campus | 8-29-17 |
| FU, JUN | Purdue University Campus | 3-4-17 |
| GANT, JASON C. | Purdue University Campus | 7-10-17 |
| GETZ,DANIEL S. | Purdue University Campus | 10-25-17 |
| GIRTEN, MANFORD F. | Purdue University Campus | 10-16-17 |
| HAM, JAMES P. | Purdue University Campus | 9-15-17 |
| HATAMI, BRYAN K. | Purdue University Campus | 1-24-18 |
| HARRIS, CORLISS | Purdue Libraries | 10-12-17 |
| JONES,JEREMIAH A. | Purdue University Campus | 2-2-18 |
| KWON, YUL | Recreational Sports Center | 6-8-17 |
| LEWIS, JOHNNY O. | Purdue University Campus | 9-28-17 |
| MIREUT, DAVID | Recreational Sports Center | 11-27-17 |
| MITTON, DYLAN D. | Purdue University Campus | 10-31-17 |
| MODICA, DAVID J. | Purdue University Campus | 9-18-17 |
| NEWTON, BREANNA L. | Purdue University Campus | 5-30-17 |
| NORTHRUP,ABBIGAIL E. | Purdue University Campus | 9-6-17 |
| OKWONG, ANTE E. | Purdue University Campus | 1-18-18 |
| OWEN JR,JASON C. | Purdue University Campus | 10-23-17 |
| PARKER, JAMES A. | Purdue University Campus | 11-1-17 |
| PARMAR,SAROJ | Purdue University Camapu | 10-16-17 |
| PIRIS, ANIBAL | Purdue University Campus | 9-28-17 |
| QIN, TIAN | Purdue University Campus | 2-26-17 |
| RIEGLE, BRICE J. | Purdue University Campus | 10-31-17 |
| RIGGS, MICHAEL A. | Purdue University Campus | 2-13-17 |
| ROCHEFORT, CHRISTOPHER L. | Purdue University Campus | 12-21-17 |
| RODRIGUEZ,BRANDON | Purdue University Campus | 5-4-17 |
| ROWLEY, RICHARD T. | Purdue University Campus | 11-7-17 |
| SALTS, BLAKE A. | Purdue University Campus | 9-6-17 |
| SCHAFER, EVAN M. | Purdue University Campus | 8-24-17 |
| SCOTT, JUSTIN | Purdue University Campus | 5-30-17 |
| SHUBA,TODD P. | Purdue University Campus | 10-25-17 |
| SIZEMORE, LOGAN M. | Purdue University Campus | 9-18-17 |
| SIZEMORE,TANNER J. | Purdue University Campus | 9-18-17 |
| SMITH, PATRICK C. | Recreational Sports Center | 5-1-17 |
| SMITH, SAMANTHA JO | Purdue University Campus | 10-31-17 |

PU-DOE 0483

2/7/2018          Purdue University - Persons Non Grata

www.purdue.edu/ehps/rom
Phone: (765) 494-6371

**ENVIRONMENTAL HEALTH &
SAFETY REGULATORY
COMPLIANCE**
www.purdue.edu/ehps/arc
Robin Mills Ridgway, Ph.D., PE
Phone: (765) 496-8405
Email: mridgway@purdue.edu

**CAMPUS EMERGENCY
PREPAREDNESS & PLANNING
OFFICE**
www.purdue.edu/ehps/emergency_
preparedness
Phone: (765) 494-0446

**TO REPORT A SAFETY CONCERN**
Email: ehps@purdue.edu

**TEXT MESSAGE SIGN-UP**
Sign up for emergency text messages
at www.purdue.edu/securepurdue

**CAROL SHELBY, SENIOR
DIRECTOR**
Phone: (765) 494-7504
Email: cshelby@purdue.edu

Do you want to recognize one of
our staff for a job well done?
Nominate the staff member(s) for a
Bravo Award here!

| Name | Location | Date |
|---|---|---|
| STAHL, DAYTON E. | Other | 10-5-17 |
| THAYER, GUY L | Recreational Sports Center | 4-20-17 |
| TOMLIN, ANTHONY M. | Purdue University Campus | 9-16-17 |
| VALICENTI, ALBERT C. | Purdue University Campus | 9-5-17 |
| VANBUREN, MATTHEW | Purdue University Campus | 9-7-17 |
| VAN LIEU, CHRISTOPHER | Shreve Hall | 4-27-17 |
| VANSANT, JONAH M. | Purdue University Campus | 10-16-17 |
| VESER, EDWARD R. | Purdue University Campus | 12-21-17 |
| WAGNER, WILLIAM M. | Circle Pines, 1000 David Ross Rd. | 11-29-17 |
| WANG, WEICHEN | Purdue University Campus | 3-7-17 |
| WARD, DONALD G. | Purdue University Campus | 2-13-17 |
| WEATHERS, JOSEPH T. | Purdue University Campus | 8-23-17 |
| WILHIGHT JR, CLINTON | Purdue University Campu | 2-2-18 |
| WILLIAMS, JAMES P. | Purdue University Campus | 2-21-17 |
| YAYA, ALANIS | Purdue University Campus | 4-20-17 |
| YEAKLEY, CHRIS A. | PMU, Union Club Hotel, Stewart Center and Hick Library | 11-4-17 |

Attachment 4 Page 2

Purdue University, West Lafayette, IN 47937 (765) 494 4600 © 2014 Purdue University | An equal access/equal opportunity university | Copyright Complaints
If you have trouble accessing this page because of a disability, please contact Purdue Marketing and Media at marketing@purdue.edu.

PU-DOE 0484

Attachment 5

# Search Results

Party Search

First: ▒▒▒▒▒

Last: ▒▒▒▒▒

BackNew SearchRefine Search

View

### State of Indiana v. ▒▒▒▒▒                                      . 01/31/2018

79D05-1801-CM-000422

Court
Tippecanoe Superior Court 5
Case Type
CM - Criminal Misdemeanor
Filed
01/31/2018
Status
01/31/2018, Pending
Charges
35-46-1-15.1(a)(1)/MA: Invasion of Privacy-Violates protective order under IC 34-26-5 to prevent dom.
Parties
State of Indiana, ▒▒▒▒▒
Attorneys
Harrington

### State of Indiana v. ▒▒▒▒▒                                      -- 11/14/2017

79D05-1711-CM-004415

Court
Tippecanoe Superior Court 5
Case Type
CM - Criminal Misdemeanor
Filed
11/14/2017
Status
11/14/2017, Pending
Charges
35-43-2-2(b)(1)/MA: Criminal Trespass Def., not having contractual interest in property, knowingly
Parties
State of Indiana, ▒▒▒▒▒
Attorneys
Harrington, Garten

### State of Indiana v. ▒▒▒▒▒

32D04-1710-CM-001394

Court
Hendricks Superior Court 4
Case Type
CM - Criminal Misdemeanor
Filed
10/16/2017
Status
10/16/2017, Pending
Charges
9-26-1-1.1(a)(4)/MB: Leaving the Scene of an Accident Def. crashes into an unattended car or other, 7.1-5-1-3(a)(4)/MB:
Public Intoxication -- Harassing, Annoying, Alarming def. harasses, annoys or a
Parties
State of Indiana, ▒▒▒▒▒
Attorneys
Baldwin, Garten

# mycourts.IN.gov

Attachment 6 Page 1

Protective Orders and No Contact Orders
## Case Detail: 79D05-1708-PO-000540

| | Disclaimer |
|---|---|
| In the Tippecanoe Superior Court 5, Tippecanoe County, Indiana<br>Case No. 79D05-1708-PO-000540<br><br>A Protective Order has been filed against:<br><br>~~[redacted]~~<br>Respondent<br>City: AVON, IN<br>Born: 1988 | **Handgun Prohibition**<br>If a record indicates that the court has not ordered a respondent prohibited from carrying a firearm, that does not mean the individual can legally carry a firearm. Indiana state laws regarding gun ownership still apply, and other cases or circumstances may exist that prohibit a respondent from carrying a firearm. |
| Order Issued on:                                    9/1/2017 | |
| Respondent successfully served on:          10/20/2017 | **More Information About this Case**<br>For more information not found online, or to learn how to get copies of documents in this case, contact the local clerk's office.<br>http://courts.in.gov/records |

PU-DOE 0486

# mycourts.IN.gov

Attachment 6 Page 2

Protective Orders and No Contact Orders
## Case Detail: 79D05-1710-PO-000653

In the Tippecanoe Superior Court 5, Tippecanoe County, Indiana
Case No. 79D05-1710-PO-000653

A Protective Order has been filed against:

Respondent
City: AVON, IN
Born: 1993

Order issued on:                                                    10/17/2017

Attempted to serve respondent on:                                  10/18/2017
Officer Notes:

Respondent has not yet been served

**Disclaimer**

**Handgun Prohibition**
If a record indicates that the court has not ordered a respondent prohibited from carrying a firearm, that does not mean the individual can legally carry a firearm. Indiana state laws regarding gun ownership still apply, and other cases or circumstances may exist that prohibit a respondent from carrying a firearm.

**More Information About this Case**

For more information not found online, or to learn how to get copies of documents in this case, contact the local clerk's office. http://courts.in.gov/courts

PU-DOE 0487

Regarding Case Number: 2017178201

## MEMORANDUM IN SUPPORT OF ██████ ██████ 'S REINSTATEMENT

Purdue University expelled ██████ ██████ without notifying her that she was under investigation or giving her an opportunity to defend herself. That, by itself, is grounds to reinstate ██████ ██████.

Purdue University took the word of a serial violator of its own rules, one who lied to the Purdue University Police Department, lied to the investigators in this matter, and who engaged in harassing conduct with another woman. Purdue took this man's word instead of ██████ 's because she was too embarrassed to divulge the intimate details of her interactions with the man who hit her. That, by itself, is grounds to reinstate ██████.

Purdue University violated its own policies and federal law, imposed a penalty that was grossly disproportionate to the deficiencies in her statement to investigators, and made a finding – that ██████ was "malicious" – that was completely unsupported by the facts in the record. For all these reasons, ██████ should be reinstated, this matter expunged from her record, and immediately returned to the ranks of Purdue students in good standing. There is no reason to ruin a young woman's life after she made a report to the police in good faith.

## I. FACTS

██████ ██████, a freshman at Purdue University and ROTC Cadet on an ROTC scholarship, began seeing ██████ ██████ after meeting on Tinder around September 10, 2017. ██████ was unaware that at this time ██████ had been banned from campus due to his conduct toward another Purdue student. Despite this ban, ██████ visited her on campus multiple times until he struck her on October 10, 2017.

██████ and ██████ were intimate sexually, but ██████ left out key details about his status at Purdue. He indicated that he was involved in a disciplinary matter involving his ex-girlfriend

1

PU-DOE 0492

that was delaying his ability to be at Purdue. He was pressed frequently by ███ to update her on his status but he demurred.

On September 23, 2017, ███ indicated he might get expelled. ███ reacted with shock: "Why would you get expelled?" ███ said, "I don't think I've told you enough. What I said to her was really horrifying." ███ told ███ that he told his ex-girlfriend that he "wanted to kill her in a lot of ways" but that he was now "a different person."

███ met ███s family and ███ reciprocated, inviting him to meet her family on fall break. During the visit on October 6 through 10, ███ continued to lie about his status at Purdue to both ███ and her parents (see statement of ███ ███). After the visit, ███ became aggressive about their relationship and struck ███. ███ immediately took ███ back to his parents' house and broke off communications with him. After she was hit by ███ ███ contacted the Purdue University Police Department on the recommendation of her mother (who was later contacted multiple times in an alarming way by ███ after ███ ceased communicating with him). ███ was also kept under protective watch by Purdue and obtained a protective order against ███ (the second protective order a female student had obtained against ███)

Pursuant to her police report, Purdue opened up an investigation. ███ approved several allegations formulated by Purdue against ███, but as the investigation proceeded ███s grades suffered and her time was increasingly consumed by an illness in the family. She notified Purdue that she no longer wanted to participate in the investigation but that she would if it was legally required.

Purdue informed her that it was not and kept her apprised of the investigation. After the investigation concluded, ███ was informed that she was expelled from Purdue.

2

PU-DOE 0493

II.    ████ Filed a Police Report to Protect Herself.

Regardless of ████'s prior relationship with ████ ████, she had an absolute right to report assault to the police. Her central claim was that ████ struck her in her dorm room. In filing the report, she was seeking protection from the individual who had struck her. Purdue's decision to investigate the claim was not initiated at ████'s insistence. The investigation was initiated by Purdue in response to the filing of a police report.

At the time of the complaint, ████ had just turned 19. ████'s sexual history should *never* have been the subject of Purdue's investigation. It appears that after ████ filed the police report someone from Purdue interviewed her about the incident and developed the statements she made in that incident into a series of allegations against ████.

During that time, ████ misled the investigators about the nature of her relationship with ████. And it appears that her decision to do so has now resulted in Purdue's decision to expel her. It is apparent that ████'s delivery of voluminous text messages that reveal incredibly private communications impugned ████'s credibility with the investigators.[1] Had ████ had legal counsel at the time, she surely would not have made the same mistake.

But independent of ████'s decision to not reveal her sexual relationship with ████ ████ to the investigators, there is plenty of evidence that corroborates her report to the police that he struck her. Moreover, ████ himself lied on several occasions, in addition to having violated the University's ban on his presence on campus throughout this period.

III.    ████'s Claims Can Be Corroborated

At the time the investigation was proceeding, ████ was protected by a protective order filed on her behalf. ████'s parents had apologized for ████'s behavior. And ████ had

---

[1] It is impossible to tell whether ████ kept all text messages or selectively edited them. ████ did not keep her text messages with ████ deleting them contemporaneously for obvious reasons: they contained incredibly private material.

3

reported matters to the police. Given that she was now protected, ████ turned her attention to her school work and asked to not participate further in the investigation of ████ (who had already been banned from campus and who was apparently under the care of his parents).

████ is attaching to her appeal the affidavit of her mother, ████████, who corroborates ████'s version of events on the fall break trip. During the trip, ████ maintained to ████████ and other friends and family members that he was a student at Purdue and living off campus because of overcrowding issues; he spoke in detail about classes he was taking and his major. The ████ were completely taken in; as you can see from her affidavit, ████ ████ is an incredibly accomplished woman; ████'s deception must have been fantastic.

████████'s testimony is also key to understanding how murky ████'s understanding of ████████'s educational status was. Nowhere in the numerous texts that ████ provided does he reveal to ████ that he is banned from Purdue's campus. Instead, he hints that he is involved in an ongoing disciplinary process and that he looks forward to coming to Purdue.

On September 11, he tells her that he's "just stressed about the Purdue stuff," but that he'll "get through it." On 9/13 he tells her that he'll "probably be on probation." ████ responds "does it go on your permanent record?" He tells her "it just goes through P.U.'s behavioral committee." ████ says, "oh that's not awful." He tells her, "Yeah it should be fine; it just annoys me." He texted her occasionally to imply that he would be at Purdue imminently. It's not until 9/23 that he tells her he might be expelled. Finally, on the weekend of October 6, he concocts elaborate lies about classes he's taking. There's no evidence that ████████ was

4

ever aware of exactly what ████ 's status was; no evidence of any plan they made to deceive her parents, and finally no evidence other than she was confused about what he was doing.

████████ also can testify that ████ called her, after dropping ████ off, and reported that she feared for her safety.[2] It was at ███████ 's suggestion that ████ contacted the police. ██████████ also can testify that ████ himself called ████ several times, claiming that it was a matter of "life and death," and that later ████ 's father, ███████ called ████ and apologized for "what ███ did." This is key corroborating evidence that was notably absent from the investigation. Had the school informed ████ that she was at the risk of being expelled, then she would have obviously provided this evidence to the school.

Noticeably, these allegations were not even referenced in the final report.

Other key corroborating evidence is that ████ informed her friend ██████████ the same day that ████ had struck her. She also called the police at 7:00 that evening.

Had ████ known that *she* was the subject of a new investigation about the veracity of her complaints, she would have provided verifying documents including:

1.  A sworn statement from her mother corroborating her account of ████ 's lies based on lies ████ told to ████ 's family, and ████ 's conduct after ████ discontinued contact with him.

2.  Her own testimony about the incident at Wal-Mart, ████ 's threats about shootings, the statements she made to her RA, and the events in her dorm room.

3.  Corroborating statements from her ROTC superiors whom she kept informed of the developments with ████ as they occurred.

---

[2] ████ did not tell her mother that she had been struck. A trauma-informed investigator should know why: because ████ was ashamed and because she did not want to unduly alarm her mother more than necessary.

5

▓▓▓▓ was deprived of the opportunity to do so.

IV.     ▓▓▓▓ was Never Notified that she was at Risk for Expulsion

▓▓▓ ▓▓▓▓ was tried and convicted without ever being notified of the charges against her or having an opportunity to defend herself. This violates the University's procedures, Title IX practices, and basic guarantees of due process. At no time was ▓▓▓▓ informed that she was in jeopardy of disciplinary action. Given that the report justifying expulsion seems to credit ▓▓▓▓'s own testimony as well as hearsay that ▓▓▓▓ was not allowed to respond to, the University's choice to credit ▓▓▓▓'s testimony in the absence of any defense by ▓▓▓▓ trampled on ▓▓▓▓'s rights to discontinue participation in the investigation, particularly since ▓▓▓▓ indicated that she *would* continue to participate if it were required.

This contravenes the following section of Purdue's policy on Participation of the Parties in a case such as this (emphasis added):

> 6. Expectations Regarding Participation by the Parties
>
> All employees and students have an obligation to cooperate in the conduct of these Procedures. Failure to do so may result in disciplinary action. **In the event that a Complainant chooses not to participate in an interview or declines to provide information requested by the University Investigator, the Chancellor, Dean of Students or Director may dismiss the complaint if there is no independent information upon which to proceed.** The Chancellor, Dean of Students or Director shall provide written notice of such dismissal to the Complainant(s) and the Respondent(s). In the event that a Respondent chooses not to participate in an interview or declines to provide information requested by the University Investigator, the University Investigator may conclude that such information or interview, if provided or conducted, would be adverse to the Respondent. **Where the complaint or the circumstances involve potential criminal conduct, however, a party may choose to remain silent during the process, and such silence will not be held as an admission or considered to be adverse to the party.**
>
> **In the event that an impacted party chooses not to participate in an interview or declines to provide information requested by the University Investigator in connection with a University-Initiated Investigation, the Chancellor, Dean of Students or Director may dismiss the University-Initiated Investigation.**

6

PU-DOE 0497

All University community members are expected to provide truthful information in any report or proceeding under these Procedures. Any person who knowingly makes a false statement in connection with the resolution of a complaint under these Procedures may be subject to appropriate discipline. **Making a good faith report of discrimination or harassment that is not later substantiated is not considered a false statement.**

Based on Purdue's policies, the worst ▓▓▓ had to fear by not participating in the process was the dismissal of her complaint. Again, ▓▓▓ filed the Complaint with the Police; the Purdue investigation was in response to her police report.

Second, there is not a shred of evidence that ▓▓▓ ▓▓▓ was acting in bad faith. Failing to disclose a sexual relationship is not evidence of bad faith; it is evidence of a very natural embarrassment.

Nowhere in the report of the findings of the investigator does it ascribe a motive to ▓▓▓'s complaints about ▓▓▓. Without any finding of a motive, it is impossible to ascribe bad faith to her.

And, indeed, the evidence provided by ▓▓▓ indicates that there was a severe rupture in their relationship on Fall Break, that ▓▓▓ ceased communications with him after they returned from Fall Break, and that he became upset shortly before Fall Break – threatening suicide on more than one occasion. Combined with ▓▓▓'s mother's testimony – that ▓▓▓ called her, referencing life and death, and that his father later apologized "for what ▓▓▓ did," it becomes clear that ▓▓▓'s behavior toward ▓▓▓ changed significantly around Fall Break.

▓▓▓'s version of events is that he demanded to start dating her, grabbed and struck her when she refused, and that she then cut off contact. ▓▓▓ told this version to ▓▓▓

7

her friend, on the same day; she called the police at 7:00 that evening to report the intimation. She also told her roommate that night.[3]

The Police report further corroborates ▮▮▮▮'s version of events; she told the story to the Police on 10/11, asked the Police specifically that she did not want to anger ▮▮▮▮ by letting him know she was accusing him. This is consistent with her text to ▮▮▮▮ on the night of 10/10, where she informs him she is going to bed. Her conduct is consistent with an attempt to defuse a situation she believed had become dangerous for her. (Notice the advice of her mother in an e-mail sent that night attached to her affidavit: "The key is to get out of it gracefully so that he goes away.")

Again, there is no alternative explanation in the case file. The trajectory of the texts provided by ▮▮▮▮ which became increasingly unhinged, the testimony of her friend ▮▮▮▮▮▮ the police report, her mother's affidavit, the apologies offered by ▮▮▮▮▮▮▮'s father, and ▮▮▮▮'s own communications to the police – where he flatly denied being on campus at all[4] – support that ▮▮▮▮ was telling the truth about the key allegation in the case. And this evidence refutes that ▮▮▮▮ was acting in bad faith.

## V. ▮▮▮▮ Should be Reinstated

▮▮▮▮▮▮▮▮ is promising student with a bright future both at Purdue University and in our Armed Forces. At age 18, she got mixed up with a dangerous man, and when he became

---

[3] The failure to notify ▮▮▮▮ that she was subject to investigation also blocked her ability to test evidence provided by other witnesses. Her roommate and roommate's friend testified that they were in the room that day and the attack could not have happened. ▮▮▮▮ contends they weren't there for the entire period. Could they have gotten the day wrong? ▮▮▮▮ was in her room more than once. ▮▮▮▮'s version is supported by the fact that she told the roommate *that day* that ▮▮▮▮ had "gotten physical." Her statement to this effect only makes sense if there was a period of time where she was alone with ▮▮▮▮ that day. ▮▮▮▮ should have had the opportunity to test her roommate's memory.

[4] ▮▮▮▮ also told the investigator that he did not go to the gun section of Wal-Mart, but this was disputed by the third party that was also present. Similarly, ▮▮▮▮ appeared to testify that he did talk about shooting up a school per page 13 of the investigative report but because the reports were heavily redacted it was impossible for ▮▮▮▮ and the undersigned to confirm that.

8

violent, she tried to protect herself. The investigation's departure from procedures, the facts

supporting ████'s version of events, and basic concepts of fairness all militate in favor of

████'s reinstatement. I encourage the University to do the right thing and erase this from her

record.

Respectfully submitted,

/s/ Jeffrey A. Macey
Jeffrey A. Macey, #28378-49
MACEY SWANSON LLP
445 North Pennsylvania Street, Suite 401
Indianapolis, Indiana 46204
jmacey@maceylaw.com
317-637-2345

9

PU-DOE 0500



Indiana Coalition to
**End Sexual Assault**
Engage. Educate. Empower.

Alysa Christmas Rollock
Title IX Office
Purdue University
Ernest C. Young Hall, Room 1029
155 S. Grant Street
West Lafayette, IN 47907

February 12, 2018

Ms. Rollock,

I am writing to express my grave concern about the way that Purdue University's Title IX Office has handled a report from Ms. ⬛⬛⬛⬛⬛, a first-year female student at Purdue. My concerns are based on information that Ms. ⬛⬛⬛ has shared with me, as well as my additional knowledge of Purdue's treatment of other female students who sought help from your office.

As a student at Purdue, Ms. ⬛⬛⬛ exercised her right, under Title IX, to seek assistance from the university about a situation in which she felt threatened by a male student. In response, your Title IX office transformed an investigation about Ms. ⬛⬛⬛'s report of victimization into an investigation of her credibility and character. Your office did not notify Ms. ⬛⬛⬛ that you were investigating her for an alleged false report and did not give her an informed opportunity to respond to the false report allegations you brought against her. Although your policy indicates that students suspected of false reports will be investigated, Purdue University did not handle this situation appropriately or in a trauma-informed manner.

By choosing to investigate Ms. ⬛⬛⬛ for an alleged false report, not notifying her about the investigation into her character, not giving her a chance to defend herself, and in general, not following national best practices for suspected false reports, Purdue University has endangered Ms. ⬛⬛⬛'s academic and military career and taken away her opportunities for equal access to education at Purdue. Ms. ⬛⬛⬛ was an ROTC cadet, and she had specific plans to graduate from Purdue with an Environmental Engineering degree, and then enlist in the Army as an officer. By expelling her from Purdue, your office has profoundly disrupted Ms. ⬛⬛⬛'s educational opportunities and her future career.

The determination letter that Purdue sent to Ms. ⬛⬛⬛ focused almost solely on her alleged lack of credibility, and provided no specific references to pieces of evidence that could credibly support Purdue's allegations against her. The determination letter should have focused on explaining how the evidence was interpreted to find the respondent responsible, or not responsible, for the behaviors reported by Ms. ⬛⬛⬛.

If your office had wanted to investigate Ms. ⬛⬛⬛ for an alleged false report, your office should have properly conducted the first investigation into the incident that Ms. ⬛⬛⬛ reported. After that investigation was concluded, your office could have then opened a new investigation into Ms. ⬛⬛⬛'s alleged false report. Your office should have then notified Ms.

9246 N. Meridian Street, Suite 227    Indianapolis, IN 46260
317.624.2370    indianacesa.org

████ that you were investigating her for an alleged false report, and given her an informed opportunity to defend herself and her character.

In addition to the glaringly problematic way that your office dealt with Ms. ████'s alleged false report, your office also did not engage with Ms. ████ in a trauma-informed manner when you informed her that she was expelled and would need to leave campus within a matter of days. You placed the burden of making an appeal to temporarily stay on campus on Ms. ████ rather than a Purdue employee like her victim advocate.

In summary, my opinion on this matter is that Purdue University's Title IX Office has dealt with Ms. ████'s case in a way that is not trauma-informed, does not adhere to national best practices for campus investigations, and could be viewed as retaliatory in nature.

My recommendation is that Ms. ████ be immediately reinstated as a fulltime student at Purdue University. She should be provided with accommodations that will help her deal with any academic problems she may have experienced during this process, along with any other accommodations that she and her victim advocate request.

Mahri Irvine, PhD
Director of Campus Initiatives
Indiana Coalition to End Sexual Assault

PU-DOE 0490



**DIVISION OF MILITARY**
**SCIENCE AND TECHNOLOGY**

February 12, 2018

Ms. Kelley Stier
Dean of Students

I firmly stand behind Cadet ▨▨▨ ▨▨▨ and support her efforts to appeal the board's results for expulsion.

Cadet ▨▨▨ is honest, trustworthy and a valued member of the Purdue University's Army ROTC program. In the short time she has been with the program she has left a lasting impression with me and others as an individual who values commitment and strives to do her best in everything she does. Last semester, she was a member of the battalion's "Iron Platoon." The iron platoon was created for individuals who seek excellence in physical fitness and tactical proficiency on leadership skills. Cadet ▨▨▨ applied for and successfully completed the week long physically and mentally demanding try-out event. Acceptance into the iron platoon requires additional time and effort on the individual's behalf, which is significantly more than other members of the battalion experience. Membership in the iron platoon is a badge of honor because not every cadet is capable of "making the cut." Cadet ▨▨▨'s values and character are a few reasons she is experiencing success in the program.

Cadet ▨▨▨ arrived at Purdue Army ROTC as a four-year national scholarship winner. Every year tens of thousands of high school seniors apply and only a small percentage are awarded scholarships. Cadet ▨▨▨, based on her morals and high ability in academics, athletics and leadership was again selected ahead of her peers to be part of a profession that closely examines it applicants for acceptance.

I believe Cadet ▨▨▨'s recounting of events. Expelling her is not the right answer and is not in accordance with the Army's policy towards sexual assault and harassment.

*Boiler up!*

Lieutenant Colonel Thomas Genter
Professor of Military Science

Army ROTC ▪ 812 3rd Street ▪ West Lafayette, IN 47907-2006
(765) 494-2099 ▪ Fax: (765) 494-2098 ▪ polytechnic.purdue.edu/armyrotc

PU-DOE 0488

STATE OF INDIANA          )
                          ) SS:
COUNTY OF TIPPECANOE )

STATE OF INDIANA

VS.

Avon, IN
DOB:
OLN:

**FILED**

NOV. 1 4 2017

*Christa Coffcer*
Clerk Superior Court No. 5 Tippecanoe Co.

IN THE TIPPECANOE SUPERIOR COURT 5

CAUSE NO: 79D05 - 1711-CM- 004415

Count I

### INFORMATION OF CRIMINAL TRESPASS
(Class A Misdemeanor)

The Prosecuting Attorney for the Twenty-third Judicial Circuit of the State of Indiana informs that:

On or about October 10, 2017, in Tippecanoe County, State of Indiana, ▇▇▇▇▇ not having a contractual interest in the property, did knowingly or intentionally enter the real property of another person, to-wit: Purdue University, after having been denied entry by Purdue University or Its agent;

All of which is contrary to the form of the statute in such cases made and provided, to wit: I.C. 35-43-2-2(b)(1) , and against the peace and dignity of the State of Indiana.

                              PATRICK K. HARRINGTON
                              Prosecuting Attorney for the
                              23rd Judicial Circuit

BY:  _Kelly_____
     Deputy Prosecuting Attorney
     Attorney No. 2862-1-19

Affiant does swear or affirm, under penalties of perjury as specified by Indiana Code 35-44.1-2-1, that the foregoing representations are true to the best of Affiant's knowledge and belief.

Dated: _November 9___, 2017          Signed: _____
                                              Affiant

Case No. PUPD 17-1373

Witnesses: Detective Hartman, Detective Sherer, Purdue University, ▇▇▇▇▇▇
*Pending LSA, PI*

STATE OF INDIANA      )
                 ) SS:
COUNTY OF TIPPECANOE )

STATE OF INDIANA

VS.

IN THE TIPPECANOE SUPERIOR COURT 5

**FILED**

NOV. 1 4 2017

*Christe Coyker*
Clerk Superior Court No. 5 Tippecanoe Ct.

CAUSE NO: 79D05 - 1711-CM-004415

DOB:
OLN:

Count I

INFORMATION OF CRIMINAL TRESPASS
(Class A Misdemeanor)

The Prosecuting Attorney for the Twenty-third Judicial Circuit of the State of Indiana informs that:

On or about October 10, 2017, in Tippecanoe County, State of Indiana, ████████, not having a contractual interest in the property, did knowingly or intentionally enter the real property of another person, to-wit: Purdue University, after having been denied entry by Purdue University or its agent;

All of which is contrary to the form of the statute in such cases made and provided, to wit: I.C. 35-43-2-2(b)(1) , and against the peace and dignity of the State of Indiana.

PATRICK K. HARRINGTON
Prosecuting Attorney for the
23rd Judicial Circuit

BY: *Keep*
Deputy Prosecuting Attorney
Attorney No. 2862 1-15

Affiant does swear or affirm, under penalties of perjury as specified by Indiana Code 35-44.1-2-1, that the foregoing representations are true to the best of Affiant's knowledge and belief.

Dated: November 9 , 2017                 Signed: _____
                                                     Affiant

Case No. PUPD 17-1373

Witnesses: Detective Hartman, Detective Sherer, Purdue University, Caroline Pomeroy
*Pending LSA, PI*

PU-DOE 0511

STATE OF INDIANA     )
                         ) SS:
COUNTY OF TIPPECANOE )

IN THE TIPPECANOE SUPERIOR COURT 5

STATE OF INDIANA

VS.

~~[redacted]~~
DOB: ~~[redacted]~~
OLN: ~~[redacted]~~

**FILED**

NOV. 1 4 2017

*Christa Coffey*
Clerk Superior Court No. 5 Tippecanoe Co.

CAUSE NO: 79D05-1711-CM-004415

## AFFIDAVIT OF PROBABLE CAUSE

Affiant, being duly sworn upon their oath, states that he/she is a law enforcement officer with the Tippecanoe County Prosecutor's Office, that he/she has examined the reports filed by Detective Hartman, Purdue University Police Department, among other things that he/she investigated or arrested ~~[redacted]~~ on or about October 10, 2017 for the offenses of:

## CRIMINAL TRESPASS

As more fully set forth in the reports for Agency/Case #PUPD 17-1373, copies of which are attached hereto. Affiant believes the information and statements provided by the officer are credible and reliable as such statements and information was/were based upon firsthand knowledge of the incidents recounted in such statements and detailed in the above-referenced police reports. Affiant believes Detective Hartman is/are credible and reliable for the reason that he/she/they are law enforcement officers in Tippecanoe County, Indiana, and because his/her/their reports were made in the course of his/her/their investigations into the commission of crimes committed here in Tippecanoe County, State of Indiana.

Affiant swears under penalty of perjury as specified by Indiana Code 35-44.1-2-1, that the foregoing representations are true.

November 9, 2017
Date

Affiant

## INCIDENT/INVESTIGATION REPORT

*Purdue University Police Department*

Case # *2017-001373*

| Status Codes | 1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown |
|---|---|

| | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

**NARRATIVE**

**THREAT/INTIMIDATION**

On Wednesday October 11, 2017 I received a voicemail message from ▓▓▓▓▓. In her message she states that she has information regarding ▓▓▓▓▓ being present on the West Lafayette campus, and that she was told to leave her contact information with me. I returned her phone call at 0810 hours.

▓▓▓▓ stated that she was going to class and did not have much time to speak. She did state that to the best of her knowledge that ▓▓▓ was not on campus at this time but he had been on campus Tuesday evening. She stated that she would meet with me and give a complete statement at 1430 hours on this date.

At the agreed upon time, ▓▓▓ met with me at PUPD Headquarters. She was escorted to an interview room where a recording was started. ▓▓▓ stated that she had chatted with ▓▓▓ via social media beginning the second week of classes for the fall semester. She stated that she needed help with Chemistry and that he said he was a Chemistry major, living at The Cottages. She met with him at her dorm, Owen Hall, and he assisted her with her school work. She stated that they then saw each other one to two times a week until the fall break. At one point ▓▓▓ drove ▓▓▓ to Avon where she met his family. Then on the fall break from Friday October 6 to Tuesday October 10, ▓▓▓ traveled with ▓▓▓ to her hometown in Ohio. He had told her that his family would be away during the break and he had nothing to do. ▓▓▓ stated that on this trip to Ohio she began to witness odd behavior from ▓▓▓. He also disclosed to her on this trip that he was taking medication for mental illness.

The two returned to campus on Tuesday October 10 at approximately 1430 hours. ▓▓▓ assisted ▓▓▓ with carrying her belongings to her room in Owen Hall. Upon arrival at her room, ▓▓▓ stated "I think we should be dating". ▓▓▓ then told ▓▓▓ that she only wanted to be friends and that she did not want a romantic relationship with him. ▓▓▓ states that at this point ▓▓▓ became angry and said "I could hurt you, does that scare you?" ▓▓▓ states that this comment took her off guard and she did not reply. ▓▓▓ then shared with her that he had thought about "shooting up his high school" in his junior year of school. At this point ▓▓▓ told ▓▓▓ to leave to which he complied. ▓▓▓ stated that ▓▓▓'s whereabouts was unknown at the time. She also asked that it not appear to ▓▓▓ that she was accusing him, fearing that this would make him angrier.

In order to establish ▓▓▓'s location I made telephone contact with him. He stated that he was at his home in Avon Indiana and had not been at the West Lafayette campus since I had spoken with him in Avon on August 25, 2017. After advising ▓▓▓ that he had been seen on campus, he stated that he was on campus on Tuesday but was in car. I then reiterated to him the terms and conditions of the Persona Non-Grata to which he stated multiple times he understood. I then asked ▓▓▓ why he was on campus. He advised that he was visiting his girlfriend, ▓▓▓▓▓. I told ▓▓▓ I would contact ▓▓▓ for further details.

After returning to speak with ▓▓▓, I was advised that ▓▓▓ had just contacted ▓▓▓'s mother and left a voicemail that he needed ▓▓▓

R_CS2IBR    By: JASHARP, 10/31/2017 14:11    Page 2

PU-DOE 0513

## INCIDENT/INVESTIGATION REPORT

Narr. (cont.) OCA: 2017-001373                    *Purdue University Police Department*

to contact him and that it was "a matter of life and death". I immediately reestablished phone contact with ▒▒▒ and advised him I had learned of the message. He stated that he used the phrase "matter of life and death" as a phrase of urgency so that ▒▒▒ would contact him immediately. I then advised ▒▒▒ that I had spoken with ▒▒▒ and that he was to have no further contact with ▒▒▒ or anyone in her family. ▒▒▒ stated that he understood.

Contact was made with ▒▒▒'s father, ▒▒▒, by telephone. I advised ▒▒▒ of the situation. He stated that he was familiar with ▒▒▒ and believed that she and ▒▒▒ had been dating for some time. I told him about the statements that ▒▒▒ had made and that verifying his location for security purposes was necessary. ▒▒▒ confirmed that ▒▒▒ was with him at their residence in Avon and that he would keep track of ▒▒▒. I asked him to pass on to me any information that would be pertinent to the safety and security of campus. He did advise that ▒▒▒ would have an appointment with a mental health professional on Thursday October, 12. Arrangements were made for a meeting at their Avon residence on October 12 between ▒▒▒ and PUPD Detectives in reference to this case.

The residence life staff of Owen Hall was updated on the situation and stated they would reach out to ▒▒▒ and provide any needed services. Office of the Dean of Students was contacted and updated on the current situation as well. A telephone call was received from Jason McCormick of the Purdue Army ROTC. He advised that due to ▒▒▒'s participation in their program he needed to report the incident through their chain of command. He was provided with the preliminary information and steps being taken.

Investigation continues.

cc: DOS (1), Lisa Heinold (1), A. Rollock (1), E. Oliver (1),Prosecutor (1),

R_CS2IBR                                  By: JASHARP, 10/31/2017 14:11                                  Page 3

STATE OF INDIANA )
 ) SS:
COUNTY OF TIPPECANOE )

STATE OF INDIANA

VS.

~~[redacted]~~

DOB: ~~[redacted]~~
OLN: ~~[redacted]~~ IN

**FILED**
IN THE TIPPECANOE SUPERIOR COURT 5

JAN 3 1 2018

*Christa Coffey*
Clerk Superior Court No. 1 Tippecanoe Co.

CAUSE NO: 79D05-1801-CM-000422

Count I

**INFORMATION OF INVASION OF PRIVACY**
(Class A Misdemeanor)

The Prosecuting Attorney for the Twenty-third Judicial Circuit of the State of Indiana informs that:

On or about January 10, 2018, in Tippecanoe County, State of Indiana ~~[redacted]~~ did knowingly violate a protective order to prevent domestic or family violence issued under I.C. 34-26-5 by the Superior Court of Tippecanoe County under cause number 79D05-1708-PO-540, to protect ~~[redacted]~~

All of which is contrary to the form of the statute in such cases made and provided, to wit: I.C. 35-46-1-15.1(a)(1), and against the peace and dignity of the State of Indiana.

PATRICK K. HARRINGTON
Prosecuting Attorney for the
23rd Judicial Circuit

BY: _____
Deputy Prosecuting Attorney
Attorney No. *34100-53*

Affiant does swear or affirm, under penalties of perjury as specified by Indiana Code 35-44.1-2-1, that the foregoing representations are true to the best of Affiant's knowledge and belief.

Dated: 01-31 _____, 2018          Signed: _____
                                                    Affiant

Case No. PUPD 18-72

Witnesses: Officer Hartman, ~~[redacted]~~
*Pending Trespass, Pending LSA, PI,*

STATE OF INDIANA  )
                  ) SS:
COUNTY OF TIPPECANOE )

STATE OF INDIANA

VS.

~~████████~~
~~████████~~
~~████████~~
DOB: ~~████~~
OLN: ~~████████~~ IN

FILED

IN THE TIPPECANOE SUPERIOR COURT 5

JAN 3 1 2018

*Christa Coffey*
Clerk Superior Court No. 1 Tippecanoe Co.

CAUSE NO: 79D05 -1801-CM-000422

### AFFIDAVIT OF PROBABLE CAUSE

Affiant, being duly sworn upon their oath, states that he/she is a law enforcement officer with the Tippecanoe County Prosecutor's Office, that he/she has examined the reports filed by Officer Hartman, Purdue University Police Department, among other things that he/she investigated or arrested ~~████████~~ on or about January 10, 2018 for the offenses of:

### INVASION OF PRIVACY

As more fully set forth in the reports for Agency/Case #PUPD 18-72, copies of which are attached hereto. Affiant believes the information and statements provided by the officer are credible and reliable as such statements and information was/were based upon firsthand knowledge of the incidents recounted in such statements and detailed in the above-referenced police reports. Affiant believes Officer Hartman is/are credible and reliable for the reason that he/she/they are law enforcement officers in Tippecanoe County, Indiana, and because his/her/their reports were made in the course of his/her/their investigations into the commission of crimes committed here in Tippecanoe County, State of Indiana.

Affiant swears under penalty of perjury as specified by Indiana Code 35-44.1-2-1, that the foregoing representations are true.

01-31
Date

Affiant

# INCIDENT/INVESTIGATION REPORT

*Purdue University Police Department*

Case # *2018-000072*

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |

|   | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|-----|--------|----------|--------------|----------------|-|
| D R U G S |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Assisting Officers

Suspect Hate / Bias Motivated:

NARRATIVE

CONTEMPT OF COURT

On Friday January 12, 2018 I was contacted via email by ████ In her email she stated that ████████ had attempted to contact her by Facebook Messenger. Arrangements were made for ███ to meet with me on Tuesday January 16 at 0945 hours at PUPD Headquarters. On the 16th ████ arrived at the agreed upon time and was escorted to an interview room where a recording was started.

████ stated that she had not been contacted by ████ for many months and had no contact since the Protective Order was issued September 1, 2017. On January 10, 2018 ████ sent a series of 10 Facebook Messenger messages to ████ between 1851 hours and 2046 hours. I observed these messages on her phone. In the messages ████ was apologetic for his previous behavior and requested that ████ not contact the police for fear of getting in trouble. ████ confirmed she has not responded or communicated back to ████ in any way.

████ was advised on steps to take in order to block any future communication attempts from ████. ████ agreed to email screenshots of the messages to me for the case.

I obtained a printed copy of the active protection order in which ████ is prohibited from "directly or indirectly communicating with the Petitioner" ████. At this time I have not received the requested screenshots of the messages from ████.

Investigation continues.

cc: Prosecutor (1)/ DOS (1)/ A. Rollock (1)/ E. Oliver (1)/

R_CS2IBR

By: TRSTULLER, 01/17/2018 09:13

Page 2

PU-DOE 0517