**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

MARY DOE and NANCY ROE,           )
          Plaintiffs,           )
                       )
    v.           )           CAUSE NO.: 4:18-CV-89-JEM
                       )
PURDUE UNIVERSITY, *et al.*,           )
          Defendants.           )

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment as to Plaintiff Mary Doe [DE 58], filed by Defendants on March 5, 2021. Plaintiff Doe filed a response on April 23, 2021, and Defendants filed a reply on May 7, 2021.

**I.      Procedural Background**

On November 13, 2018, Plaintiffs, both women who had studied at Purdue University, filed an eight count Complaint against Defendants Purdue University and several of its administrators, alleging that they were assaulted in unrelated incidents by male students at Purdue University and were then wrongfully expelled, with the expulsions later reduced to suspensions. Plaintiffs separately reported the incidents to Purdue. According to the Complaint, Purdue investigated and found that Plaintiff Mary Doe had "fabricated" her allegation and Plaintiff Nancy Roe had "reported [her] assault maliciously." Plaintiffs allege that Purdue "has implemented a policy . . . wherein women who cannot prove their claims to the satisfaction of Purdue decisionmakers face discipline up to expulsion at Purdue," and assert that both Plaintiffs were wrongly suspended.

After a motion to dismiss was granted in part, the remaining counts allege violations of

1

Title IX (counts I and II), retaliation under Title IX (counts III and IV), deprivation of civil rights under § 1983 against the individuals in their official capacity (Counts V and VI), and individual § 1983 liability (Counts VII and VIII).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.     Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address

2

another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.' (emphasis in original)" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

## III.  Material Facts

Northern District of Indiana Local Rule 56-1 requires the moving party to include with its motion for summary judgment a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). In response, the opposing party is obligated to file a "'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed." N.D. Ind. L.R. 56-1(b)(2). In this case,

Defendants included a Statement of Material Facts within their Memorandum in Support of Motion for Summary Judgment, along with appropriate citations to supporting evidence. Plaintiff Doe included a Statement of Material Facts within her Response in Opposition to Motion for Summary Judgment; however, Doe's Statement of Material Disputes sets forth only broad categories of disputes, four of the five couched as legal disputes rather than factual ones, and does not identify particular facts that she disputes.

A.  Undisputed Facts

Doe was a freshman at Purdue in the fall of 2017 and enrolled in the Army Reserve Officer Training Corp ("ROTC") program. She drove Male Student A, also a freshman at Purdue at the time, back from Ohio following fall break on October 10, 2017, and he came to her dorm room while he assisted in unloading her car.

After driving Male Student A to his residence, Doe texted her mother that she felt threatened by Male Student A. Shortly thereafter, her mother advised her that Male Student A had a protective order against him[1], and Doe should go to the police. Doe reported to a Resident Assistant ("RA") that Doe felt threatened by Male Student A. Doe also left a message with the Purdue University Police Department ("PUPD") that same evening saying that Male Student A had been present on campus when he was not supposed to be there. Doe met with a PUPD officer on October 11, 2017 and reported the violation of the Persona Non Grata order but did not report a physical assault. Doe advised the officer that Male Student A "got like super angry and like um I don't want to say the word aggressive because he never did anything physically aggressive…"

---

[1] Male Student A had been issued a Persona Non Grata order restricting him from being on the Purdue campus on August 24, 2017.

Defs.' Br. Ex. H, p. 2 [DE 57-9]. On October 12, 2017, Doe again met with the RA and advised the RA that there had been a physical altercation with Male Student A on October 10, 2017. The RA relayed the battery report to PUPD and Doe was called into the PUPD station to make a statement about the battery. Doe advised PUPD of the assault on October 13, 2017. On October 13, 2017, Purdue's Title IX Specialist, Christina Wright, spoke with Doe and advised Doe that Purdue was considering investigating Doe's allegations. At that time, Doe advised Wright that she did not want Purdue to initiate a complaint or to participate in the process, but agreed to speak with Wright, and cooperated with Wright in preparing Purdue's Notice of Allegations, a part of their investigatory procedure which was to be sent to Male Student A.

On October 23, 2017, Doe was advised by Dean of Students Sermersheim that Purdue would be investigating her allegations of misconduct by Male Student A. Purdue interviewed eight people during their investigation, including Doe, Male Student A, Doe's roommate, the RA to whom Doe spoke, and the PUPD Detective with whom she met. Purdue also reviewed text messages between Doe and Male Student A, the PUPD file, and Male Students A's written materials.

On October 26, 2017, during a follow up interview with PUPD officers, Doe told them, for the first time, that she and Male Student A had had a consensual sexual relationship prior to October 10, 2017. She admitted she had not disclosed that previously. Doe also advised PUPD officers that prior to October 10, Male Student A had disclosed to her thoughts of violence he had.

The next interaction between Doe and the investigators was November 20, 2017, when she was asked to review certain text messages between Doe and Male Student A as well as "other inconsistencies in your story versus [his] story." Defs.' Br. Ex. A, p. 19 [DE 57-1]. When Doe

responded that she was away from campus and preferred to discuss via email, Purdue investigators indicated they preferred to meet in person. On November 28, 2017, another email was sent to Doe by Purdue's investigator Wright requesting her participation. Doe responded that due to an ailing grandfather and poor grades she would like to "remove myself from participating in the concluding actions and activities of this case. I didn't want to participate in the beginning; I shared my experiences only because I thought it would help the case. I feel as if, regardless of my case or the other woman's that [Male Student A] is a threat to campus and other individuals. His threat to shoot up the school should not be taken lightly." Pl. Resp. Ex. T, p. 7 [DE 64-2]. Doe further stated that she understood her participation to be voluntary, and if not, "let me know and I'll find time to come in and share my experience again." *Id*. Doe was told, via email, by investigator Wright, "Your participation in the process is voluntary, and you can participate as much or as little as you choose. We will proceed with the investigation with the information that we have. We will notify you when the preliminary report is ready for review; if you choose, you can review that report or decide not to review it. We will also notify you of the date of the equity panel hearing and, again, you can participate in the panel or not participate." *Id*., p. 6.

On December 14, 2017, in the midst of the end of semester exam period, Doe was advised that the report of the investigation was ready, and she had seven calendar days to review it and submit feedback. The deadline fell during the holiday break between semesters.

On January 17, 2018, Doe received a letter from Associate Dean of Students Stier that a panel hearing was appointed to meet on January 25, 2018 "regarding the University's investigation of possible violation(s) of the University's Anti-Harassment Policy by [Male Student A]." Doe did not attend the panel hearing. On February 2, 2018, Doe was advised that Stier (to whom Dean of

Students Sermersheim delegated the conducting of the panel hearing) found that "a preponderance of the evidence does not support a finding that [Male Student A]'s conduct violated the Anti-Harassment Policy" and that Doe was not a credible witness. Defs.' Br. Ex. L, p. 2 [DE 57-13]. Purdue's False Statement Rule, set forth as part of its Anti-Harassment Policy, provides that "a good faith report of discrimination or harassment that is not later substantiated is not considered a false statement." Defs.' Br. Ex P, p. 8 [DE 57-17]. Stier found that Doe had violated the Anti-Harassment Policy by knowingly making various false statements. Defs.' Br. Ex. L., pp. 4-5 [DE 57-13]. Stier expelled Doe. Purdue's Anti-Harassment Policy further provides: "In the event that a Complainant chooses not to participate in an interview or declines to provide information requested by the University Investigator, the Chancellor, Dean of Students or Director may dismiss the complaint if there is no independent information upon which to proceed." Defs. Br. Ex P, p. 8 [DE 57-17].

Doe appealed Stier's finding and submitted additional information to Vice President for Ethics and Compliance Rollock on February 12, 2018, including Doe's assertion that Purdue "never notified me that the investigation had turned onto me and I was the one being investigated." Pl.'s Resp. Ex. W, p. 5 [DE 64-5]. On February 22, 2018, Rollock found that Doe had "knowingly made false statements as to material facts in connection with [Doe's] allegations against [Male Student A] and the investigation and resolution of this matter." Defs.' Br. Ex. Q, p. 1 [DE 57-18]. Rollock stated that, in addition to actively making false statement, Doe "elected not to meet with them or to correct the false information you provided." *Id.*, at p. 5.

B. Disputed Facts

Doe reports that upon returning from fall break with Male Student A, Male Student A shut

7

her dorm room door and told Doe they should be dating. Doe said no, and Male Student A grabbed her arm and threatened her. Doe pushed him, and he hit her in the ribs. Doe then hit him on the ear and left the room to go to the bathroom. When she returned to her room, Male Student A was still there, and she drove him home. It is claimed by Defendants that this physical assault did not occur.

Doe asserts she only reported Male Student A's violation of the Persona Non Grata order initially in order to protect herself and did not want to report the assault or have it investigated. Defendants argue this change in Doe's story is one example of Doe's untruthfulness, one of approximately seven identified by Dean Stier.

Doe's roommate and the roommate's friend gave slightly different versions of the timeline of the day on which the alleged assault took place. Doe's roommate also stated both that Doe had asked if it was okay for a friend to stay the night the night of the incident for safety reasons, and that Doe had only told her about the assault the day before the police interview.

Doe claims that she was unaware that her reporting of the encounter was being considered for disciplinary action against her, that she was repeatedly advised that her participation in the investigation was voluntary, and as a result she was denied the opportunity to fully present her position on that issue. Defendants assert that Doe failed to avail herself of opportunities to more fully participate in the process and present additional evidence or argument.

## IV.   Analysis

Plaintiffs allege that Doe's federally guaranteed equal access to educational opportunities was denied by Purdue's handling of her complaint of assault. Doe claims that her suspension was made in retaliation for complaining to Purdue about the assault and that Rollock and Sermersheim, acting in their official capacities, violated her constitutionally guaranteed right to Equal Protection

while acting under color of state law. Finally, Plaintiff asserts individual liability against Rollock (Count VII) and Sermersheim (Count VIII) for "knowingly or recklessly implement[ing] and manag[ing] a sexual assault complaint process that deprived the Plaintiffs of their constitutional rights to due process and equal protection of the law."

Defendants move for judgment on all of Doe's claims. They argue that Doe has asserted no facts that raise the inference that Purdue acted on the basis of Doe's sex, but argue that Purdue had a valid, non-discriminatory basis to find that Doe made false allegations against Male Student A. Defendants further assert that Doe's false statements are not protected activity under Title IX and therefore she has no claim for retaliation. Defendants also argue that Doe has suffered no deprivation of a protected interest in life, liberty, or property and therefore her Equal Protection and Due Process claims fail. Finally, Defendants assert that Doe's individual §1983 claims also fail.

The crux of Doe's response is that Defendants did not conduct an independent investigation into her culpability, but rather made the decision that she deserved expulsion as part of the investigation into her complaint that she was assaulted. Doe contends the practice of assessing the reporter's culpability in the same investigation in which the assault allegations themselves are reviewed discriminates against women who report assaults. Doe argues that Purdue's complaint process violates Title IX, the issue of whether she lied during the investigation into her complaint is a factual issue, the focus of Purdue's investigation into Doe's culpability was discriminatory, Purdue's investigation process violated Due Process, and Sermersheim and Rollock are not entitled to qualified immunity.

A.      Title IX

Doe alleges that Purdue violated Title IX, 20 U.S.C., § 1681 *et seq*., both through its deliberate indifference in investigating and acting on her report of assault and by punishing her for making the report. In Count I, Doe seeks relief under Title IX only against Purdue University. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998) (recognizing that Congress abrogated the "States' Eleventh Amendment immunity under Title IX" as to entities receiving federal funds) (citing 42 U.S.C. § 2000d-7). Defendants seek summary judgment on Doe's Title IX claim against Purdue University asserted in Count I, arguing that Doe has failed to plead plausible facts showing that Doe was disciplined because she is female. In Count III, Doe also asserts that Purdue is liable under Title IX for retaliating against her for reporting the assault. Defendants argue that since Purdue's application of its False Statement Rule was "fact-based" expelling her was not retaliation, and Doe was not engaged in a protected activity.

i.      Deliberate Indifference

Doe claims a violation of Title IX "by [Purdue University's] deliberately indifferent response to the complaint she made of sexual harassment" Pl.'s Resp., p. 12. Deliberate indifference constitutes intentional discrimination under Title IX. *See, e.g., Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 183 (2005) (private right of action lies for teacher-on-student harassment when funding recipient acts with deliberate indifference); *Davis v. Monroe Cty. Bd. of Educ*., 526 U.S. 629, 633 (1999) (private right of action for damages under Title IX exists for "student-on-student" (peer) harassment where funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities). A plaintiff claiming Title IX discrimination through an institution's deliberate indifference must establish that the funding

10

recipient acted with deliberate indifference to known acts of harassment which were so severe, pervasive, and objectively offensive that they barred victim's access to educational opportunity. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see also Doe v. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 51256 (N.D. IL., March 24, 2020) (concluding that when a school official with authority to correct the issue had knowledge of the sexual abuse but failed to act to stop abuse it constituted deliberate indifference).

Defendants move for summary judgment on Count I on the basis that there is no recognized private right of action for disparate impact, and therefore Doe must show "facts raising the inference that Purdue acted at least partly on the basis of sex in [her] particular case." *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019). Defendants argue that Purdue's decisionmakers did not base their decision on the fact that Doe was female, but on the fact that she made false statements. Defendants assert that Doe has "conceded that Purdue's expectation that persons will provide truthful information … is a fair policy and that she would not fault Purdue for applying the False Statement Rule to her by its terms," and that this concession is dispositive of her claim. Defendants argue there is no evidence of "selective enforcement" of Purdue's False Statement Rule, that Purdue's investigative process was reasonable, and that Doe's conduct was to blame for any deficiencies in the process.

Doe argues that the deliberate indifference of Purdue's decisionmakers is intentional discrimination, and therefore a cause of action lies under Title IX. Doe asserts that "a complaint process that has the effect of turning on the accuser without notice to the accuser is unreasonable" in that it deprives the accuser of a fair process and deters complaints which violates Title IX's anti-retaliation provisions, and, in this case, discriminated against a female complainant in favor of a

11

male accused. Pl.'s Resp. p. 13 [DE 65]. Doe further argues that the procedural defects involved sex stereotyping which has been prohibited in discrimination contexts.

A school is considered deliberately indifferent if its actions are clearly unreasonable in light of the known circumstances. *See Doe v. Macomb Cmty. United Sch. Dist. 185*, 2020 U.S. Dist. LEXIS 247132 (C.D. Ill. March 30, 2020). In this instance, Doe was advised that the panel was investigating "possible violation(s) of the University's Anti-Harassment Policy by [Male Student A]," Pl.'s Resp. Ex. V [DE 64-4], but Defendants have not provided any evidence or argument that Doe was advised the panel was investigating *Doe's* conduct. A jury could find that not telling a student her conduct was also being investigated as part of the panel hearing was unreasonable. This is particularly true when Doe was advised that her participation, and even attendance at the panel hearing, was voluntary. Purdue apparently concluded that Doe's lack of participation after her initial reporting weighed against her credibility, without her being told that she was facing disciplinary action as a result of the investigation into Male Student A's conduct. *See Doe v. Macomb, supra*, at *64 ("whether [the school] responded in a way that was clearly unreasonable in light of the known circumstances—is for a jury to decide"). Defendants are not entitled to summary judgment on Count I.

ii.    Retaliation

Doe also claims that Purdue suspended her in retaliation for reporting the alleged assault, in violation of Title IX (Count III). Purdue argues that Doe's suspension was based on Defendants' determination that Doe knowingly made false statements during the reporting and investigation of the incident, not because she reported it.

Title IX "encompasses suits for retaliation, because retaliation falls within the statute's

prohibition of intentional discrimination on the basis of sex." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178, 125 S. Ct. 1497 (2005). It prohibits educational institutions from retaliating against people who speak out against sexual harassment. *Id.*, at 183. To establish a claim for retaliation in violation of Title IX, a plaintiff must produce enough evidence for a reasonable trier of fact to conclude: (1) she engaged in a statutorily protected activity; (2) the school took a materially adverse action against her; and (3) there existed a but-for causal relationship between the two. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). "[A]n adverse action is one that a reasonable [student] would find to be materially adverse such that the [student] would be dissuaded from engaging in the protected activity." *Burton*, *supra*, at 696 (quotation marks omitted) (citing *Doe v. Macomb Cmty. Unit Sch. Dist. 185*, 2020 U.S. Dist. LEXIS 247132 (C.D. Ill. March 30, 2020)).

The elements of a Title IX retaliation claim are the same as a claim brought pursuant to the antiretaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). In *Jackson*, *supra*, the Court of Appeals for the Seventh Circuit considered a retaliation claim brought by a high school basketball coach who was removed from his coaching position after reporting sex discrimination in the school's athletic program. *Jackson*, *supra*, at 171-72. In holding that he could bring a claim against the school board, the *Jackson* Court noted, "[r]etaliation . . . is a form of 'discrimination' because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." *Id*. at 173-74. Because "[r]eporting incidents of discrimination is integral to Title IX enforcement," *Id*. at 180, "[w]here the retaliation

13

occurs because the complainant speaks out about sex discrimination, the 'on the basis of sex' requirement is satisfied." *Id*. at 179.

There is no dispute that Doe's suspension was a materially adverse action by Defendants. There also does not seem to be any dispute that Doe's suspension was causally related to her complaint of an assault. Where the parties differ is in their assessment of whether Doe's report was a protected activity under Title IX. Doe asserts that Purdue made credibility determinations based on Doe's lack of participation in portions of the investigation into Male Student A's actions, and without the decision makers ever speaking with her. Purdue argues that there was no evidence to support her report and therefore it is not protected activity. Purdue further asserts that Doe's acknowledgment that the False Statement Rule is fair is dispositive.

The Court notes that, despite Purdue's assertions regarding its assessment of interviewee's veracity, there is no evidence that Purdue investigated or punished Doe's roommate or the roommate's friend regarding their slightly differing reports about what happened of the day of the alleged assault; however, Stier determined that Doe was less credible than Male Student A without ever personally interviewing Doe, and then punished Doe for reporting an assault. Generally, reporting prohibited conduct (like assaults and relationship violence) is a protected activity under Title IX. *See Jackson,* 544 U.S. at 179-80 ("Where the retaliation occurs because the complainant speaks out about sex discrimination, the 'on the basis of sex' requirement is satisfied" because "[r]eporting incidents of discrimination is integral to Title IX enforcement."). Doe was told that her participation in the investigation was voluntary and was never given any indication that the investigation was into her conduct, rather than into Male Student A's conduct.

Likewise, Doe's agreement that Purdue's False Statement Rule is fair on its face does not

mean that it was fairly applied. The False Statement Rule provides that "a good faith report of discrimination or harassment that is not later substantiated" is not deemed to be a false statement. Since a crucial issue in Defendants' decision making was whether Doe's report of the assault was made in good faith, factual issues as to Doe's statements, her inconsistencies, the inconsistencies of other witnesses, and the decision-makers' assessment of her lack of participation should be resolved by a trier of fact.

Defendants argue that, even if Doe could show facts that supported her claim her statements were made in good faith, she must still prove that Defendants intended to retaliate against her. However, that does not take into account that, if Doe's credibility was determined without advising her that it was even at issue, the process itself could be deemed fundamentally flawed. Purdue's Anti-Harassment Policy provides for the dismissal of a complaint "if there is no independent information upon which to proceed," which, combined with the statements of investigator Wright that Doe's participation in the investigation against Male Student A was voluntary, could have caused Doe to believe that there would be no negative repercussions for her from her withdrawal from participating. In that situation, a jury could find the flaws in the process equate to deliberate indifference. *See Davis v. Monroe Cty. Bd. of Ed.*,526 U.S. 629, 648-49 (1999); *Jackson*, 544 U.S. at 173-74 ("Retaliation . . . is a form of 'discrimination' because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination.").

Considering the factual disputes as to what happened, a jury might reasonably conclude that the investigatory process was unfair to reporters of assaults, and even discourages reporting of assaults, and summary judgment on Doe's retaliation claim would be inappropriate, as whether

Doe's report was protected activity is crucial to a cause of action for Title IX retaliation.

      B.     § 1983

The Fourteenth Amendment contains what are commonly referred to as the Equal Protection Clause and the Due Process Clause. The Equal Protection Clause states: "No State shall make or enforce any law which shall…deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. Amend. XIV, § 1. The Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. 42 U.S.C. § 1983 serves as a procedural vehicle for lawsuits vindicating federal rights elsewhere conferred. To state a § 1983 claim, a plaintiff must show that she was deprived of a right secured by the Constitution or federal law, by a person acting under color of law. Under 42 U.S.C. § 1983, an individual may bring a claim against a person acting under the color of state law for a violation of the Due Process Clause or the Equal Protection Clause. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017); *Fitzgerald v. Barnstable Sch Comm*., 555 U.S. 246, 254 (2009). Doe's § 1983 claims against Purdue have been dismissed. Defendants seek summary judgment on the § 1983 claims against the individual defendants in their official capacities (Count V) based on Eleventh Amendment immunity and against the individual Defendants in their individual capacity (Rollock (Count VII), and Sermersheim (Count VIII)) based on a lack of equal protection or due process offense, and qualified immunity. The Court considers each argument in turn.

      i.     Claims against individuals in their official capacities

Doe's Count V asserts a § 1983 claim against individual defendants Sermersheim and Rollock in their official capacities. She alleges that the decision to suspend her violated both her

Equal Protection and Due Process rights. She seeks injunctive relief to be reinstated to Purdue and the removal of the disciplinary action from her record. Defendants move for summary judgment on the official capacity count and argue that Doe's claim is flawed because (a) Doe lacks standing for an order for reinstatement; (b) Doe has not raised any factual issue about her reinstatement or expungement of her student records; (c) Doe was not deprived of any protected interest; and (d) there is no evidence of current or prospective harm attributable to an unequal protection of law. To succeed on her claim, Dow must establish that the actions of the Defendants deprived her of a protected interest without due process or that she is suffering or will suffer harm because of unequal treatment by the Defendants.

a)   Standing for Reinstatement

Defendants assert that Doe lacks standing to seek reinstatement since her suspension has expired, she alleges no obstacle to re-enrollment, and she has not alleged an intention to return to Purdue. Doe failed to respond to this argument, and hence it is waived. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). However, since the two-year suspension period has expired, the issue of whether she was entitled to re-enroll during that period is moot, and this Court need not rule on it.

b)   Factual Issue on Reinstatement or Expungement

Defendants argue that there is no evidence that Doe has suffered any harm associated with Purdue's possession of internal records from the investigation and suspension. Doe argues that since the disciplinary action has not been expunged from her student record, her academic record remains tainted. Defendants bear the burden of proving that Doe's academic record is not tainted,

17

but they offer nothing than a conclusory statement that Doe is suffering no harm. Defendants did not include any analysis, evidence, or development of this argument, and therefore are not entitled to summary judgment on the question of whether Doe is entitled to the requested injunctive relief of expungement.

### c) Deprivation of Protected Interest

Defendants next argue that Doe did not suffer any loss of any protected life, liberty, or property interest, as there is no guaranteed interest in a Purdue education. Doe responds that, in addition to the procedural due process violations of a lack an opportunity to cross-examine, to be fully heard, and notice of what was at stake, she was deprived of the property interest in the sums she paid for tuition for the semester in which she was suspended, and she was placed on a leave of absence from her Army ROTC program.

The issue of whether a tuition payment is a property interest was resolved in *Doe v. Purdue Univ.*, 928 F.3d 652, 662-63 (7th Cir. 2019) (holding that breach of contract causes of action are available for losses attributable to claims for tuition paid for an incomplete semester), and Doe has an available state court cause of action for breach of contract. There has been no developed argument that any other damages Doe has suffered are not a property interest, and due to the factual disputes about Purdue's investigation of Doe, as set forth above, a jury could find that the individual Defendants acting in their official capacities deprived Doe of her due process and that deprivation caused her losses. Summary judgment would therefore be inappropriate.

### d) Harm Attributable to Unequal Protection

Defendants' final basis for summary judgment on Count V is that Doe presented no evidence of current or prospective harm caused by any equal protection violation. Doe responds

18

that the unfairness of the process inherently violated her rights on the basis of her sex as protected

by the Equal Protection Clause. She also asserts that she was placed on a leave of absence from

her Army ROTC program. Defendant has failed to establish there is no material issue of fact as to

the harm caused by that result of the Defendants' decision to suspend Doe. Again, in light of the

factual disputes as to the process, and its implication of Title IX issues, summary judgment will

not be granted on Count V.

Because there are unanswered questions of fact for a jury about the process by which Doe

was disciplined and the role of the individual defendants in the investigation and discipline,

summary judgment on her § 1983 claims against the individual defendants in their official

capacities is inappropriate.

> ii.    Claims against individual defendants

Defendants move for summary judgment on the individual capacity claims on the basis

that the only due process claim recognized by the Seventh Circuit Court of appeals in a university

student discipline context is a "'stigma-plus' deprivation of 'occupational liberty.'" *See Doe v.*

*Purdue Univ*., 928 F.3d 652, 662-63 (7th Cir. 2019). Stigma-plus deprivations of occupational

liberty entail both the stigma of negative information, as well as dissemination of that information.

*Id*. Defendants argue there is no factual question that Doe is suffering any current deprivation of

life, liberty, or property, so Doe was not entitled to any process she was denied, and they are

entitled to summary judgment. Doe argues that "[w]hen a right is protected by the Due Process

Clause, a state may not withdraw it on grounds of misconduct absent fundamentally fair procedures

to determine whether the misconduct has occurred." *Id.*, at 663. Doe further argues that the more

severe the discipline, the more procedural safeguards should be in place. *Id*. Doe argues that procedural defects in Purdue's process taint the decision to suspend her.

As in *Doe v. Purdue Univ.*, in which the Seventh Circuit Court of Appeals concluded that the plaintiff's required authorization for Purdue to release information about a sanction to his ROTC program satisfied the stigma-plus standard, the disclosure of Doe's sanction may impact her future education and employment opportunities. 928 F.3d 652, 662-63 (7th Cir. 2019). Doe was a member of the ROTC program at Purdue at the time of her discipline and her suspension resulted in her having to take a leave of absence from that program. Defendants do not dispute that the sanction has already negatively impacted her participation in the Army ROTC program, but argue that because Doe has no protected right to a Purdue education, suspension (rather than expulsion) does not constitute a deprivation of any protected interest. A jury could find that Doe has sustained a loss of a liberty interest in a stigma-plus claim as a result of a flawed investigatory process. *See, e.g., Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2015) (noting that the plaintiffs who were legally obligated to allow state to disclose finding they were child abusers successfully stated stigma-plus claim); *Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) (holding that the state deprived plaintiffs of liberty interest when state adjudicated that they violated child safety laws and could no longer operate day care center); *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603 (7th Cir. 2002) (concluding that the state deprived plaintiffs of an occupational interest when reported finding of child neglect to employers).

Summary judgment on Doe's claims for deprivation of due process is not appropriate because a jury could find Purdue's flawed investigatory process resulted in a loss of a liberty interest to Doe in a stigma-plus context, even if Doe is the one who may be legally obligated to

report the stigma. Doe has asserted that the decision by Purdue, which she argues was based on a flawed process, has resulted in a loss of at least some benefits of her Army ROTC program, and a jury could agree.

## V.    Conclusion

For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff Mary Doe [DE 58]. The Court hereby **DENIES as moot** Defendants' MOTION for Hearing re [53] MOTION for Summary Judgment as to Nancy Roe, [58] MOTION for Summary Judgment as to Mary Doe (Motion for Oral Argument on Defendants' Motion for Summary Judgment) [DE 67].

The Court **SETS** this matter for a status conference on **February 10, 2022 at 12:30 p.m. (Central Time).** Parties are instructed to dial 877-873-8017 and enter access code 5155509# when prompted.

SO ORDERED this 13th day of January, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record

21