UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARY DOE and NANCY ROE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 4:18-cv-00089 |
| ) | |
| PURDUE UNIVERSITY and ALYSSA ) | |
| ROLLOCK and KATIE ) | |
| SERMERSHEIM, in their official and ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MOTION IN LIMINE

Defendants, The Trustees of Purdue University ("Purdue"), Alysa Rollock, and Katie Sermersheim (the "Individual Defendants"), by counsel, move the Court *in limine* for an order that, at the jury trial, the following subjects may not be offered into evidence or addressed to the jury by the Plaintiffs, their counsel, or any witness testifying on their behalf without prior leave of the Court:

**A.  Evidence or arguments to exonerate either Plaintiff for violation of the False Statement Rule.**

Neither Plaintiff has prayed for an injunction ordering Purdue to re-investigate or re-determine the evidence on which their False Statement Rule offenses were decided. Neither Plaintiff has prayed for exoneration by declaratory relief. Further, any such injunctive or declaratory relief would place the factfinder in this Court in the position of deciding the merits of

1

a campus disciplinary rule that arises under Indiana law. Purdue would object on Eleventh Amendment grounds to any such state law determination in this federal Court.[1]

The jury will decide, separately for each Plaintiff, whether the evidence available to Purdue decision-makers was sufficient for a reasonable non-discriminatory determination that the Plaintiff violated the False Statement Rule. Therefore, the evidence must be confined to the evidence that was obtained by Purdue investigators from Plaintiffs and others and relied upon by the Purdue decision-makers. The jury will not be tasked to decide the weight of that evidence.

This limitation also tracks Plaintiffs' theory of relief that Purdue "has implemented a policy … wherein women who cannot prove their claims to the satisfaction of Purdue decisionmakers face discipline up to expulsion at Purdue." (DE 72 p. 1; DE 73 p. 1). This formulation boils down to whether Plaintiffs were disciplined for lack of proof or for lying. This is a narrow and simple question that inquires solely into the Defendants' weighing of the evidence, not anyone else's weighing of the evidence.

Violation of the False Statement Rule is an offense regardless of the outcome of an assault investigation. Not even a confirmed victim can resort to false statements. The preponderance of evidence for and against a finding of assault begs the question whether any of that evidence violates the False Statement Rule. Therefore, it is immaterial whether different decision-makers might weigh the same assault evidence differently.

---

[1] The Indiana legislature has conferred upon Purdue the authority to "govern, by regulation or other means, the conduct of students, faculty, employees, and others while upon property owned, used, or occupied by [Purdue]." Ind. Code § 21-39-2-2. Purdue has authority to "dismiss . . . any student . . . who violates [Purdue's] rules or standards of conduct[.]" Ind. Code § 21-39-2-4. Purdue's authority to regulate sexual harassment derives from this statutory authority. *Hartman v. Keri*, 883 N.E. 2d 772, 778 (Ind. 2008). This statutory authority authorizes Purdue "to construct [its] own disciplinary procedures." *Id*.

It would confuse the jury and prejudice the Defendants, and thus violate Rule of Evidence 403, for the jury to be asked to re-decide the False Statement Rule violation based on novel evidence and argument about whether an assault occurred.

Further, neither Plaintiff has alleged that Purdue violated Title IX by determining that the preponderance of evidence did not support Plaintiffs' respective assault allegations. In itself, such a determination would not result in a suspension.

Also, neither accused male is a party to this case. Neither Plaintiffs nor Defendants have any basis to summon the accused males to the trial to defend themselves against Plaintiffs' assault allegations.

It would confuse the jury and prejudice the Defendants, and thus violate Rule of Evidence 403, to try to argue or try to show that the accused males were in fact responsible.

**B.     Evidence or argument that application of the False Statement Rule to Plaintiffs was retaliation.**

In 34 CFR § 106.71(b)(2) (titled "Retaliation") the Department of Education specifies: "Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this part does not constitute retaliation prohibited under paragraph (a) of this section, provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith." It would violate Rule of Evidence 403 to try to argue or show that Purdue's False Statement Rule is inconsistent with Title IX's requirement for Purdue to investigate and determine responsibility for alleged assault.

**C.     Evidence or argument challenging the sufficiency of Purdue's response to Plaintiffs' allegations.**

Neither Plaintiff contends that any act or omission of any Defendant exposed her to sexual harassment. Neither Plaintiff alleges any Defendant should have prevented the reported assaults. Neither Plaintiff alleges that she experienced any assault after she made an assault report to Purdue.

For a Title IX deliberate-indifference claim, Plaintiff would be required to prove that Purdue was "deliberately indifferent to sexual harassment, of which [Purdue] ha[d] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive [Plaintiff] of access to the educational opportunities or benefits provided by [Purdue]." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Sexual harassment that does not recur after it is reported does not meet that standard. *C.S. v. Madison Metro. Sch. Dist.*, __ F.4th ___, 2022 WL 1466249, 2022 U.S. App. LEXIS 12550, at *2 (7th Cir. May 10, 2022) (en banc) (slip op. at 2). The "deliberate indifference" standard asks "whether the school's response to th[e] harassment reflected an official decision not 'to take action to end the harassment or to limit further harassment.'" *C.S.*, 2022 U.S. App. LEXIS 12550 at *12 (slip op. at 10) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289 (1998)). Neither Plaintiff has alleged that Purdue failed to end harassment or limit further harassment.

It would confuse the jury and prejudice the Defendants, and thus violate Rule of Evidence 403, to try to argue or try to show that Defendants violated the "deliberate indifference" standard for a response to a report of sexual harassment.

**D.      Evidence or argument that invites a propensity inference between the respective interactions that Purdue had with each Plaintiff.**

Plaintiffs have repeatedly admitted that their alleged assaults and Purdue's investigation and decision-making on those assault reports were "unrelated" events. This binding admission means that any contention of relatedness is prejudicial and a waste of time.

Purdue renews its objection to simultaneous presentation of each Plaintiff's case-in-chief, for the reasons described in *Henderson v. AT&T Corp.*, 918 F. Supp. 1059 (S.D. Tex. March 19, 1996):

> Moreover, it is likely that some of the evidence relevant to and admissible in one Plaintiff's case against AT&T will not be relevant to or admissible in another Plaintiff's case … A joint trial would limit the Court's ability to exclude such evidence. In all likelihood, the Court would be forced to admit evidence it would otherwise exclude and instruct the jury that the evidence can be considered only in support of the particular Plaintiff's claim, and cannot be considered in the claims of the other Plaintiffs. Because a joint trial would make it extremely difficult for the jury to keep each Plaintiff's claim separate and require each Plaintiff to independently prove her case, the jury may simply resolve the confusion by considering all the testimony to pertain to all the claims, despite any limiting instructions.

*Id.* at 1063-64.

Plaintiff Doe broke the False Statement Rule in the Fall 2017 semester. Plaintiff Roe broke the False Statement Rule in the Spring 2017 semester. There is no significance to two students breaking the same rule in unrelated incidents. Whether, when, and how Doe lied is unrelated to whether, when, and how Roe lied. The happenstance that two unrelated cases from the 2016-17 and 2017-18 school years were filed together by Plaintiffs' counsel is meaningless.

Neither Plaintiff can offer evidence or argument that one case is predictive of the other, showing a propensity to discriminate. Evidence Rules 403 and 404 block such a tactic because it is prejudicial, based on false logic. Plaintiffs have never argued for any exception to the Evidence Rule 404(a)(1) prohibition on use of Doe's case as proof in Roe's case, or vice-versa.

5

In *Waite v. Wood Cty.*, No. 16-cv-643-wmc, 2017 U.S. Dist. LEXIS 224615, *1 (W.D. Wis. Dec. 20, 2017), a Title VII sex discrimination and retaliation case, the court addressed motions *in limine* on the topic of whether plaintiff Waite could present evidence of allegedly similar adverse treatment of another employee (Jochimsen) by the defendant-employer. The decision discusses the controlling Seventh Circuit authorities on interplay of Evidence Rules 403 and 404 in such a case and decides against admissibility of the Jochimsen evidence:

> [Plaintiff Waite] needed to articulate a rationale connecting the similar courses of conduct without relying on a propensity inference. She has not met this burden. While she argues that this evidence shows 'motive, plan, pattern or method of operation,' she is principally inviting the jury to conclude that because the Sheriff's Department treated a different female employee in an allegedly similar manner, that makes it more likely that the Sheriff's Department treated plaintiff improperly.

*Id.* at *11-12.

Therefore, any evidence or argument suggesting a rationale connecting Purdue's interactions with Plaintiff Roe and Purdue's interactions with Plaintiff Doe must be excluded as an improper propensity inference.

### E. Evidence or argument concerning an alleged "policy" of retaliatory discipline.

There have been dozens of Title IX allegations and investigations at Purdue since 2016.[2] Yet Plaintiffs have never attempted to show that any other students were subjected to the alleged "policy".[3] Despite this lack of evidence, Plaintiff insist that they can refer to a "policy" even if there is no foundation of evidence in the record. In Plaintiffs' words, "[A] jury is entitled to hear

---

[2] https://www.purdue.edu/titleix/Title%20IX/archives/West%20Lafayette.pdf

[3] Plaintiffs do not contend or attempt to show how many allegations of sexual assault at Purdue failed on the weight of the evidence; how many complainants were disciplined for false statements; or, any gender difference in application of such discipline. Plaintiffs do not contend or attempt to show that any false statement finding in a third-party case at Purdue was, in fact, erroneous (i.e., that the complaint did not, in fact, make a false statement). Neither Plaintiff contends that Purdue's False Statement Rule is limited to women, either on its face or as applied.

evidence of both the existence of Purdue's Title IX policies and how these policies affected women." (DE 78 p. 8).

There is no witness who will testify to the existence of the alleged "policy". Neither Plaintiff has personal knowledge of a "policy", nor any personal knowledge of the events in the other' "unrelated" Purdue experience. Witnesses cannot take the stand and invent testimony. Yet that is precisely what Plaintiffs here propose to do: they propose to invent personal knowledge of a "policy" and testify to how it "affected women".

Plaintiffs' expert report quotes Plaintiff Roe as saying: "As far as I know, the other student and I who were expelled are the first victims of sexual assault who have been sanctioned for allegedly lying in a Title IX investigation at Purdue. It is my fear that in the future, unless the actions are rescinded and fixed, this will become a pattern for victims whose respondent's are found not responsible." (DE 79, "Exhibit 12 to Deposition" at p. 7). This statement concedes that no "policy" predated Plaintiffs. Professing "fear" of a future "pattern" equates to admitting that no "pattern" exists. Plaintiffs' counsel has said as much, asserting, "This is a unique case." (DE 65 p. 15).

Therefore, any new evidence alleging such a "policy" must be excluded, and any argument for such a "policy" would be improper speculation without any foundation in the record. Such evidence and argument should therefore be excluded.

**F.      Evidence or argument concerning Purdue University discipline of any non-party.**

Any discipline ordered by Purdue University regarding any non-party student is a collateral matter with no probative value, a waste of time, and a risk of confusion. The determination of a conduct offense by a non-party is unique to the facts and circumstances of that non-party's conduct and has no probative value regarding discriminatory intent toward either

Plaintiff. Non-parties include both males accused by Plaintiffs (Male C.L. accused by Plaintiff Roe and Male E.S. accused by Plaintiff Doe). Purdue's disciplinary actions toward each male are immaterial to either Plaintiff's contentions. It would confuse the jury and prejudice the Defendants, in violation of Evidence Rule 403, to compare Plaintiffs' disciplinary suspensions for False Statement Rule violations to the discipline imposed on non-parties for other offenses.

**G.     Evidence or argument regarding Purdue's CARE staff.**

Purdue operates a counseling center known as CARE. https://www.purdue.edu/odos/care/ CARE's counseling services are confidential under Indiana's statutory privilege for rape crisis counselors. As a support resource, CARE personnel must presume that students who seek CARE's help are in genuine need. CARE personnel are not Title IX investigators and decision-makers and they do not have personal knowledge of the underlying events that may cause a student to seek CARE's help. It would confuse the jury and prejudice the Defendants, and thus violate Evidence Rule 403, to elicit testimony that CARE personnel credited Plaintiffs' accounts of assault or other abuse. Such a step would also waive the privilege for communications with CARE because that privilege cannot be used as both a sword and a shield.

**H.     Evidence or argument regarding emotional distress or harm.**

Pursuant to the Supreme Court's ruling in *Cummings v. Premier Rehab Keller, P.L.L.C.*, No. 20-219, 596 U.S. __, 2022 U.S. LEXIS 2230 (April 28, 2022), emotional distress damages are not recoverable under Title IX. Should Plaintiff prevail on her Title IX claim, any recovery will be limited to "those remedies 'that [are] normally available for contract actions.'" *Id.* at *22-23 (slip op. at 11) (quoting *Barnes*, 536 U.S. at 188).

Regarding Plaintiffs' Section 1983 damage claim, a grant of Defendants' pending motion to dismiss that claim on Eleventh Amendment grounds will leave Plaintiffs' Title IX claim as their sole theory of relief for damages.

Therefore, evidence or argument regarding emotional distress would be irrelevant, confusing to the jury, and a waste of time, and should therefore be excluded under Rule of Evidence 403.

**I.  Evidence or argument regarding consequential damages.**

Each Plaintiff has contended that she is entitled to an award of consequential damages for expenses (including tuition, room, and board) incurred to study at other institutions. There are three reasons why that evidence must be excluded.

*First*, for those consequential damages, Plaintiffs have not complied with Rule 26(a)(1)(A)(iii), which requires "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." "Under Federal Rule of Civil Procedure 37(c)(1), when a party fails to provide information as required by Rule 26(a) or (e), 'the party is not allowed to use that information' at trial, 'unless the failure was substantially justified or is harmless.' Fed. R. Civ. P. 37(c)(1)." *Neurografix v. Brainlab, Inc.*, No. 12 C 6075, 2021 U.S. Dist. LEXIS 50710, *18 (N.D. Ill. Mar. 17, 2021).

*Second*, any damage for tuition, room, or board is a state law contract claim that must be brought under state law in state court. *Thiele v. Bd. of Trs. of Ill. State Univ.*, No. 21-3017, 2022 U.S. App. LEXIS 14686, *3-4 (7th Cir. May 27, 2022). Plaintiffs were invitees under a license

9

pursuant to the implied contract of enrollment between Purdue and them.[4] Plaintiffs have elected not to assert a contract claim in this case, presumably because of the Eleventh Amendment bar. Plaintiffs cannot evade the Eleventh Amendment bar by dressing up a contract claim as a Title IX claim or a Section 1983 claim.

Because Plaintiffs' Title IX claims are limited to "those remedies 'that [are] normally available for contract actions.'" [*Cummings, supra*] the economic loss doctrine under Indiana contract law applies. Any alleged consequential damages for tuition, room and board paid for other institutions that Plaintiffs chose to attend while they were suspended from Purdue are economic losses. Those alleged economic losses are only available in an action for breach of Plaintiffs' contract of enrollment at Purdue. *Scottsdale Ins. Co. v. Total Prop. Care*, No. 1:16-CV-227-TLS, 2017 U.S. Dist. LEXIS 166765, *4 (N.D. Ind. Oct. 10, 2017) (summarizing and applying Indiana law). Because there is no breach of contract claim in this case, those economic losses are unavailable in this case. Evidence regarding unavailable damages is confusing and a waste of time and should be excluded.

*Third*, Plaintiffs were not expelled from Purdue. They had the option to return to Purdue when their suspensions ended and complete their Purdue educations. A suspension from enrollment at Purdue is revocation of a contractual license with a conditional option for reinstatement, not loss of an entitlement. *Doe v. Purdue*, 928 F.3d 652, 660 (7th Cir. 2019).[5]

---

[4] The Indiana Court of Appeals has "characterized the legal relationship between a student and a university as one of implied contract." *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013) (discussing *Neel v. Indiana University Board of Trustees*, 435 N.E.2d 607, 610 (Ind. Ct. App. 1982)). *See also Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) (invoking analysis in *Neel*). In *Chang v. Purdue University*, 985 N.E.2d 35 (Ind. Ct. App. 2013), the court described *Neel*, *Gordon*, and *Amaya* as "foundational" to claims relating to "the nature of the contractual relationship between a university and its students." *Id.* at 46.

[5] "In the context of higher education, any property interest is a matter of contract between the student and the university. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009).

Since Plaintiffs never had an entitlement to remain continuously enrolled at Purdue, a postponement on their eligible date to take more courses did not harm them. It is impossible to lose something that Plaintiffs did not have. A pause in Plaintiffs' Purdue education did not deprive them of a Purdue education. *Accord Doe v. Trs. of Ind. Univer-Sity,* 2020 U.S. Dist. LEXIS 222855, at *11 (S.D. Ind. Nov. 30, 2020) (student's transfer arguments are immaterial to evaluation of alleged harm from not continuing at school that suspended student). Further, Plaintiffs did not return to Purdue when their suspensions ended, which shows that their decisions to enroll in college elsewhere were purely elective decisions.

For these reasons, Plaintiffs' choices to continue their education elsewhere at a higher cost are immaterial and evidence of alleged damages relating to those choices is inadmissible.

**J.**     **Evidence or argument regarding punitive damages.**

Punitive damages are not available to Plaintiffs on their Title IX claims because punitive damages are not a remedy available on a contract claim. *Cummings, supra*.

Evidence or argument regarding punitive damages should also be excluded with respect to Plaintiffs' Section 1983 damage claims. For the reasons briefed in the pending motion to dismiss the Section 1983 damage claims, those claims are outside of the Court's subject matter jurisdiction in this case.

If the Court permits Plaintiffs to go to trial on their Section 1983 damage claims, the punitive damage component should be bifurcated and tried separately after the jury determines whether either Individual Defendant is liable to either Plaintiff for Section 1983 damages. It would prejudice the Individual Defendants and confuse the jury to ask them to consider punitive damages in the aggregate as to both Plaintiffs and both Individual Defendants. There are four different punitive damage scenarios: Plaintiff Doe/Individual Defendant Rollock, Plaintiff

Doe/Individual Defendant Sermersheim, Plaintiff Roe/Individual Defendant Rollock, and Plaintiff Roe/Individual Defendant Sermersheim. Further, Individual Defendant Sermersheim was not the decision-maker with respect to Plaintiff Roe (non-party Stier was the decision-maker). Therefore, it would be greatly confusing to the jury and highly prejudicial to Individual Defendant Sermersheim to offer evidence or argument for punitive damages in a matter that did not involve her at all.

K.  **Evidence or argument as to a non-party's Title IX allegations against Purdue University and any event or evidence underlying or in the course of any non-party's Title IX lawsuit against Purdue University.**

Purdue has been named as a defendant in several other Title IX suits, including two other suits presently pending in this Court. None of those suits has resulted in any determination on the merits against Purdue or either of the Individual Defendants. Therefore, none of the suits has any preclusive effect. It would confuse the jury and prejudice the Defendants, and thus violate Evidence Rule 403, for Plaintiffs to offer argument or evidence regarding the existence of those cases, the allegations and evidence in those cases, any rulings of those cases, or any consensual resolution of those cases.

L.  **Evidence or testimony offered by or through either Plaintiff by any lay witness regarding any diagnosis or other clinical determination.**

Neither Plaintiff nor any other lay witness is competent to testify regarding any diagnosis or other clinical determination. For example, Plaintiff Roe has in the past contended that she was clinically incapacitated by alcohol during the sexual encounter that she reported to Purdue. However, Plaintiff has no credential to make that determination and has not obtained and disclosed any expert diagnostic opinion establishing her incapacity as a matter of medical science. Under Evidence Rule 702, questions requiring scientific or expert knowledge can be answered only by those possessing the requisite skill and knowledge to give their answers

12

probative value, and persons not qualified are not competent witnesses as to such questions. Because neither Plaintiff nor other lay witnesses are competent to testify regarding such matters, any testimony or questions designed to elicit such testimony would serve only to prejudice, confuse and mislead the jury, and should be excluded.

**M.  Any "Golden Rule" appeal to the jury.**

A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Teslim,* 869 F.2d 316, 328 (7th Cir. 1989); *see Spray- Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1246 (7th Cir. 1982), *aff'd,* 465 U.S. 752 (1984) (quoting *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 741 (5th Cir.1978), *rev'd on other grounds,* 606 F.2d 524 (5th Cir. 1979) (en banc), *cert. denied,* 446 U.S. 956 (1980)). Under Rule of Evidence 403, any such argument, evidence, or inference should be barred due to the danger of confusing the issues and prejudicing the jury.

**N.      Any mention that Defendants have liability insurance coverage.**

Evidence that insurance coverage is available to pay a judgment in this matter is irrelevant, prejudicial, and inadmissible. Under Rule of Evidence 411, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." In this case, there is no other purpose for admission of such evidence. Defendants request that the Court instruct Plaintiffs and their counsel and witnesses that they are not to offer any evidence or testimony which might in any way refer to the existence of Defendants' insurance. It is well established that evidence concerning the availability of insurance coverage for a defendant injects prejudicial elements into the case.

Plaintiffs' attorney should further be instructed not to ask jurors questions about insurance or insurance companies during voir dire.

**O.       Plaintiffs Should Not Be Allowed to Tell The Jury About The "History," "Purpose," Or "Intent" Of Title IX or Section 1983.**

There is no jury factfinding task involving the history, purpose, or intent of Title IX. Those topics are freighted with political considerations that have no probative value and would prejudice Defendants if introduced at trial.

**P.       Plaintiffs Should Not Be Allowed To Argue That The Jury Should "Send a Message" To Defendants.**

Plaintiff should not be allowed to argue to the jury that it should "send a message" to Defendants.  *See, e.g.*, *Lauderdale v. Russell*, No. 1:16-cv-02684-TWP-TAB, 2020 U.S. Dist. LEXIS 2670, *9 (S.D. Ind. Jan. 8, 2020) (finding phrases "send defendants a message" or "teach them a lesson" irrelevant and prejudicial); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 U.S. Dist. LEXIS 211723, *2 (N.D. Ind. Dec. 5, 2019) (finding "a request to send a message beyond making Plaintiff whole . . . inappropriate in a case for only compensatory damages"); *Scott v. Menard, Inc.*, No. 2:10-cv-442, 2015 U.S. Dist. LEXIS 99247, *8 (N.D. Ind. July 30, 2015) (finding any "send a message" argument "would be unfairly prejudicial"); *Pearson v. Ill. Cent. R.R.*, No. 06-cv-0822-DRH, 2008 U.S. Dist. LEXIS 24855, *2 (S.D. Ill. Mar. 27, 2008) (excluding any "argument, comment or suggestion that the jurors act as safety advocates in this lawsuit or that they send a message to the corporate defendant with their verdict," as "improper and inflammatory").

Any implication that a damages award is premised upon any reason other than to fairly compensate a Plaintiff for pecuniary losses is inappropriate and should be barred under Evidence Rule 403.

Q. **Evidence or Argument Directed to Constitutional Due Process.**

For the reasons stated in Defendants' pending motion to dismiss Plaintiffs' Section 1983 damage claims, there is no subject-matter jurisdiction in this case for damage claims regarding deprivation of property or constitutionally protected interests without Fourteenth Amendment Due Process.

A private right of action under Title IX is solely for enforcement of Title IX. Though there is caselaw identifying an overlap between Title IX's anti-discrimination requirements and Fourteenth Amendment Equal Protection, no Seventh Circuit case finds that the Title IX private of action can support a damage claim for deprivation of property or constitutionally protected interests without Fourteenth Amendment Due Process.

Further, Plaintiffs have no constitutionally protected property interest of liberty interest in their Purdue enrollment.

For these reasons, it would confuse the jury and prejudice the Defendants, and thus violate Rule of Evidence 403, for Plaintiffs to offer argument or evidence regarding alleged deprivation of constitutionally protected property or liberty interests without Fourteenth Amendment Due Process.

R. **Certain opinions from Plaintiffs' designated expert witness, Melinda Manning.**

Plaintiffs have tendered an expert designation and report by Melinda Manning. Her report was previously filed by Plaintiffs. (*See* DE 79, "Exhibit 12 to Deposition"). Certain of Ms. Manning's opinions should be excluded, as follows.

<u>Legal Standard</u> "The admissibility of expert testimony is governed by Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). Pursuant to the *Daubert*

framework, the Court must evaluate whether the testimony is reliable and relevant. 509 U.S. at 589.

Ms. Manning's opinions on the training and professional competency of Purdue personnel who investigated and decided Plaintiffs' sexual assault reports to Purdue. This topic concerns the standard of care. There is no negligence claim in this case. Evidence Rule 702 "requires a valid connection to the pertinent inquiry as a precondition to admissibility." *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1019, 1030 (N.D. Ill. 2014) (citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 805-06 (7th Cir. 2013)). Negligent breach of a standard of care is, by definition, not probative of intent. Plaintiffs' damage claims require proof of intentional harm. If Plaintiffs are permitted to open the door to issues of training and competency, that evidence would confuse the jury and waste time, and thus violate Rule of Evidence 403.

Plaintiff Roe's self-described incapacitation. Ms. Manning is not credentialed in medical science and therefore cannot offer an admissible expert opinion that attempt to model or reproduce Plaintiff Roe's alleged incapacitation symptoms. *Daubert* lists the following factors to guide district courts in assessing an expert's methodology: "(1) Whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has been met with general acceptance." 509 U.S. at 593–94. These factors apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Peoples State Bank v. Stifel, Nicolaus & Co.*, 1:10-cv-1640-RLY-TAB, 2013 U.S. Dist. LEXIS 35159, *13 (S.D. Ind. March 14, 2013) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). To be admissible, an expert's opinion must explain how

her knowledge or experience, when applied to the facts at hand, compels his conclusions.[6] Under these authorities, Ms. Manning's opinion on incapacitation is inadmissible.

<u>The question of retaliatory intent</u>. The presence or absence of retaliatory intent is an ultimate question that is reserved to the jury as factfinder. There is no recognized domain of expertise for the evaluation of retaliatory intent. "Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person." *Sommerfield v. City of Chi.*, 254 F.R.D. 317, 329 (N.D. Ill. 2008)) (citations omitted); *see Malone v. Potter*, No. 07-05530 MMM (FFMx), 2009 WL 10672523, at *5 (C.D. Cal. Feb. 25, 2009) (excluding expert's testimony regarding whether defendant followed its own policies where the "the jury [could] read the policies and determine whether defendant followed them without expert testimony"). Therefore Ms. Manning's evaluation of retaliatory intent in this case is inadmissible.

**S.     Evidence not produced in discovery.**

It would prejudice Defendants and therefore violate Rule of Evidence 403 for Plaintiffs to seek to admit any evidence not produced in discovery.

WHEREFORE, Defendants request that the Court grant this Motion *in Limine* and order the Plaintiffs, their counsel, and all witnesses testifying on their behalf be instructed not to mention the above listed subjects without prior leave of the Court.

---

[6] *See McQuiston v. Helms*, No. 1:06-cv-1668- LJM-DML, 2009 WL 554101, at *8 (S.D. Ind. Mar. 4, 2009) (excluding expert's report where it provided no connection between his knowledge and the underlying facts that would enable him to draw the conclusion). "[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998) (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989)); *see Haynes v. Ind. Univ.*, 902 F.3d 724, 733 (7th Cir. 2018) (excluding expert's testimony where it "merely flag[ged] certain evidence for the fact-finder's consideration" but offered no specialized knowledge); *see also Hall*, 93 F.3d at 1343 (noting that "[u]nless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting influence on the jury that would be subject to control under Rule 403").

Dated: June 6, 2022         Respectfully submitted,

                 /s/ William P. Kealey
                 William P. Kealey (Attorney No. 18973-79)
                 Joseph H. Harrison III (Attorney No. 35248-53)
                 STUART & BRANIGIN LLP
                 300 Main Street, Suite 900
                 P.O. Box 1010
                 Lafayette, IN  47902-1010
                 Telephone:  765-423-1561
                 Facsimile: 765-742-8175
                 E-Mail:  wpk@stuartlaw.com
                 ***Attorneys for Defendants***

1503678-1