UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARY DOE and NANCY ROE, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Cause No. 4:18-cv-00089-JEM |
| ) | |
| PURDUE UNIVERSITY and ) | |
| ALYSSA ROLLOCK ) | |
| and KATIE SERMERSHEIM, in their official and ) | |
| individual capacities ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff brought a four count complaint; in the Complaint, Plaintiff Mary Roe alleged that:

1. She was sexually assaulted in her dorm room on April 17, 2017;

2. Roe had become intoxicated at a party at Fraternity A, where she was served alcohol despite the fact that she was only 19.

3. The party's host, Male Student B, who served Roe drinks at the party, walked Plaintiff Roe back to her dorm room.

4. Plaintiff Roe was incapable of consenting to sexual intercourse due to her intoxication.

5. Despite her intoxication and without her consent, Male Student B assaulted Roe in the dorm room, penetrating her orally, vaginally, and anally, and choking her.

6. Male Student B also made audio recordings of the assault without Roe's consent.

7. Roe awoke the next day, still intoxicated, and attended class where she left to vomit.

8. Roe discovered increased bruising on her neck which made her concerned about what had happened in her dorm room.

9. She sought and received medical treatment for her injuries.

10. Realizing the extent of the assault, she reported the assault to the University.

11. Defendants investigated the assault.

12. Despite being aware that Roe was intoxicated and that she was physically injured, Defendants found that Roe had reported the assault maliciously and expelled her.

13. After she appealed, Vice-President Rollock reduced her expulsion to a two-year suspension on October 17, 2017.

14. Defendants also found that Male Student B recorded Roe without her consent.

15. Defendants assigned Male Student B a ten (10) page paper as punishment.

At the close of Plaintiff's case, she established every fact listed above.

Additionally, the Plaintiff's established the following facts, also referenced in Plaintiff's Complaint:

1. Purdue has implemented a policy wherein women who cannot prove their claims to the satisfaction of Purdue decisionmakers face discipline up to expulsion at Purdue. Vice President Rollock testified that:

    a. in response to the Plaintiff and another woman's complaint adjudicated on the same day, Dean Sermersheim had instructed a referral to a separate adjudicatory process regarding whether a false statement was made

    b. Rollock directed instead that the investigation of the Plaintiff and other women's "false statements" should be adjudicated contemporaneously with their complaint of sexual assault.

2

      c. In other words, under Rollock's policy established in connection with the August 15, 2017 determinations, if the decisionmakers found that the Complaint was not valid, they could then determine that the Complainant had violated the "false statement" rule and summarily, without separate investigation, discipline them.

2. No reasonable factfinder could concur with Purdue that the Plaintiff made her report maliciously. Instead, substantial facts supported her claims. Plaintiff, her former boyfriend, and the evidence in the investigator's report all establish that the Plaintiff was not making a false statement when she informed the investigators that she was incapacitated. This is evidence of pretext for a retaliatory motive.

3. Purdue's conduct violated Title IX: its investigation of the case was slipshod; the investigators made discriminatory assumptions about the Plaintiff's behavior; and the University departed from basic norms of fairness. The evidence from the Defendant's witnesses is that they did not fairly consider her appeal, did not evaluate relevant evidence that would have determined incapacity, including her medical records and the level of her intoxication, and instead turned on the Plaintiff once the accused student produced a recording, the provenance of which Purdue's investigators never investigated. The evidence establishes that Purdue decision-makers determined that a girl who sounds like the Plaintiff did on the tape, by definition, could not be raped – regardless of whether she remembered it. This is discriminatory.

4. Purdue treated the Plaintiff as if she was the accused rather than the complainant, imposed lesser penalties on the male student who was accused of harassment and punished the Plaintiff for making a protected Title IX complaint. We have heard five

different interpretations of the "incapacitation" standard. One from Dean Sermersheim ("it's equivalent to being passed out"), one from Vice-President Rollock (who acknowledged that you can walk but you can't perform executory functions), one from the Plaintiff's former boyfriend (who testified that if you don't remember it, you couldn't consent), one from the Association of Title IX Administrators, which explains it as:

> Where someone lacks the ability to make rational, reasonable judgments (for any reason, but commonly as a result of alcohol or other drug consumption), they are incapacitated. An incapacitated person could be stark naked, demanding sex, but if they are incapacitated at the time, and that is known or should be known to the responding party, any sexual activity that takes place is misconduct, and any factual consent that may have been expressed is IRRELEVANT. For example, a blacked-out person may say "yes" when asked if they want to have sex but, if incapacitated, they will not know they are saying it. Another way to think about incapacity is as a period of temporary disability.

And Purdue's definition in its policy which defines incapacity as "A mental state in which an individual cannot make rational decisions because they lack the capacity to give knowing Consent (e.g., to understand the who, what, where, why and how of their sexual interaction). Such Incapacitation may be caused by alcohol or other drug use, sleep or unconsciousness. Intoxication is not equivalent to incapacitation."

Incapacitation is an important concept and a complex concept. Notably Purdue's Dean and Vice-President (both of the decisionmakers in this case) disagree about what it means. But there is no evidence in the record from which a jury could find that the Plaintiff knowingly made a false statement material to the investigation when she accurately described her memory loss, her intoxication level, and told Purdue that she believed she was incapacitated and therefore unable to consent. There was no evidence available to the investigators that she knowingly made

4

this false statement. And, in fact, the evidence in the investigator's report indicates that the statement is true.

It is clear from the evidence adduced by the Plaintiff that:

1. The Defendant violated Title IX by remaining deliberately indifferent to her sexual assault. Instead of considering her evidence of incapacitation, they failed to investigate it based on their discriminatory assumptions related to the tape produced by the male subject of the allegations. This Court has already used the deliberate indifference standard to analyze Plaintiff's Title IX claims in connection with its Order on Defendants' Motion for Summary Judgment. [Dkt. 72 p. 11-12 ("Deliberate indifference to harassment constitutes intentional discrimination under Title IX. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (private right of action lies for teacher-on-student harassment when funding recipient acts with deliberate indifference); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (finding a private right of action for damages under Title IX exists for "student-on-student" (peer) harassment where funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities). A plaintiff claiming Title IX discrimination based on an institution's deliberate indifference must establish that the funding recipient acted with deliberate indifference to known acts of harassment which were so severe, pervasive, and objectively offensive that they barred victim's access to educational opportunity. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650, 119 S. Ct. 1661 (1999); *see also Doe v. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 51256 (N.D. IL., March 24, 2020) (concluding that when a school official with authority to correct the issue had knowledge of the sexual abuse but failed to act to

stop abuse it constituted deliberate indifference)"]. To the extent that the Defendant contends that the Plaintiff must prove that she would have been treated differently were she a male student (a legal argument the Plaintiff by no mean concedes), the Plaintiff would ask the jury to consider the treatment and discipline of the male student who sexually exploited her versus the treatment she received from Purdue. Plaintiff has established that the male student was treated leniently despite a serious violation of Defendants' sexual exploitation rules.

2. The Defendant retaliated by the Plaintiff for making a complaint of sexual assault. The evidence produced shows that instead of finding her Complaint unsubstantiated or directing the Plaintiff to resources that the Defendant believed were more clear about the definition of incapacitation (which would have been the policy of "teaching" that Vice-President Rollock alluded to during her testimony), it suspended her for two years. The evidence is that the Defendant was outraged by her behavior on the audio recording and that given the recording, it wanted to punish her for bringing a Complaint under the University's policy. This conclusion is justified by the fact that the pretext the Defendant used – that the Plaintiff made a false statement about whether she was incapacitated – has fallen apart now that the decisionmaker was undisputedly using the incorrect definition of incapacitation. Given that the Plaintiff alleged a violation of the policy under Purdue's own published definition of incapacitation, her Complaint was protected.

3. Both individual Defendants denied the Plaintiff due process. Vice President Rollock, an attorney, testified that it is clearly established law that a Plaintiff is entitled to notice and an opportunity to be heard prior to receiving discipline. But prior to the

issuance of Plaintiff's disciplinary action, there was no opportunity to be heard. Instead, the Defendants relied entirely on the record already generated in connection with regards to the assault allegation; importantly, the Dean of Students testified that she had not seen the Plaintiff's medical records that she submitted in connection with her appeal prior to the deposition in this case some two and a half years after the determination decision was made.

4. Additionally, at trial we also learned that the definition of Incapacitation applied by Dean Sermersheim who made the determination in this case was different than Purdue's stated policy and Plaintiff was disciplined because her definition of incapacitation did not meet Dean Sermersheim. In other words, Plaintiff had no notice of the definition of incapacitation that would be applied in her case; instead, she was mislead by Purdue's published policy, as well as the advice of her Purdue CARE representatives, both of whom heard her version of the story and did not advise her that Purdue was going to apply an alternate definition of incapacitation.

5. Both Defendants denied the Plaintiff Equal Protection of the laws. The Defendants favored the male victim, subjected her to a discriminatory disciplinary process, and quite literally failed to protect the Plaintiff from sexual assault. Moreover, they stereotyped her and punished her based on the exploitive recording produced by the male student. This was inconsistent with their clearly established obligation not to treat women differently than men in connection with state university action.

6. The evidence is that both individual Defendants acted with retaliatory animus based on their discriminatory assumptions about the Plaintiff derived from the sexually exploitive tape produced by the male student. Because of this tape, they deliberately

ignored evidence exonerating the Plaintiff (in violation of her due process rights as described above) and punished her because she made a complaint (in violation of her equal protection rights). Accordingly, this was not mere negligence: the Defendants acted maliciously or with reckless disregard for her clearly established rights.

The jury could determine all of these facts from the evidence produced during the Plaintiff's case. Accordingly, Defendant's Rule 50 Motion should be denied.

The remaining motions raise legal arguments that have already been fully briefed and addressed by the Court. Plaintiff acknowledges that they are preserved for appeal but contends that the court's ruling on these legal issues - the availability of compensatory damages and the availability of a due process claim – are the law of the case. The Court need not re-address these legal contentions in connection with the Defendant's Rule 50 Motion.

Respectfully submitted,

*/s/ Jeffrey A. Macey*
Jeffrey A. Macey (Atty No. 28378-49)
MACEY SWANSON LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
Telephone:  (317) 637-2345
Email:  jmacey@maceylaw.com
***Attorney for Plaintiff***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Response was served on all counsel of record via operation of the Court's electronic filing system on September 21, 2022.

*/s/ Jeffrey A. Macey*
Jeffrey A. Macey (Atty No. 28378-49)
MACEY SWANSON LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
Telephone: (317) 637-2345
Email: jmacey@maceylaw.com
***Attorney for Plaintiff***