UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NANCY ROE, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
|         v. ) | Cause No. 4:18-cv-00089-JEM |
| ) | |
| PURDUE UNIVERSITY and ) | |
| ALYSSA ROLLOCK ) | |
| and KATIE SERMERSHEIM, in their official and ) | |
| individual capacities ) | |
| ) | |
|     Defendants. ) | |

**MOTION FOR (i) JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL ON PLAINTIFF'S TITLE IX CLAIM AND (ii) TO CONFORM THE SECTION 1983 JUDGMENT IN FAVOR OF THE INDIVIDUAL DEFENDANTS TO THE MODEL FORM OF JUDGMENT FOR A DEFENSE VERDICT**

Defendants, The Trustees of Purdue University ("Purdue"), Alysa Rollock, and Katie Sermersheim (the "Individual Defendants"), by counsel, move as follows:

Pursuant to Federal Rules of Civil Procedure 50(b) and 59(a)(1)(A), Purdue moves for entry of judgment as a matter of law in Purdue's favor on Plaintiff's Title IX claim or, in the alternative, for a new trial limited to that claim.

Pursuant to Federal Rule of Civil Procedure 60(a), the Individual Defendants move the Court to conform the Judgment entered on September 23, 2022 [ECF 145] to check the box on the Judgment showing defendants Alysa Rollock and Katherine Sermersheim as prevailing parties, as follows: "The plaintiff recover nothing, the action be dismissed on the merits, and the defendant [name] recover costs from the plaintiff Nancy Roe."[1]

---

[1] Defendant Rollock's name is misspelled in the caption of the case; the correct spelling is Alysa Rollock. Defendant Sermersheim's given name is incorrectly stated in the caption; her given name is Katherine Sermersheim.

1

**Recap of Verdicts and Related Matters**

Defendants incorporate and renew the arguments raised in their Motion for Judgment as a Matter of Law. [DE 136].

In Plaintiff Roe's response to Purdue's mid-trial motion under Federal Rule of Civil Procedure 50(a), Plaintiff Roe promised to prove the following:

- "The evidence is that both [I]ndividual Defendants acted with retaliatory animus based on their discriminatory assumptions about the Plaintiff derived from the sexually exploitive tape produced by the male student."

- The Individual Defendants "punished her because she made a complaint (in violation of her equal protection rights)."

[DE 137 pp. 8-9.] The jury's verdict on Plaintiff's Section 1983 Equal Protection allegation rejected these claims. [DE 144].

The jury's verdict was:

1. in favor of Plaintiff and against Purdue on Plaintiff's Title IX claim and awarded $10,000 in compensatory damages;

2. in favor of Defendant Katherine Sermersheim on Plaintiff's Section 1983 Equal Protection claim by finding that Defendant Katherine Sermersheim did not discipline Plaintiff because Plaintiff was a woman;

3. in favor of Plaintiff and against Defendant Katherine Sermersheim on Plaintiff's Section 1983 Due Process claim and awarded $0 in compensatory damages and found that Defendant Katherine Sermersheim's conduct was malicious or in reckless disregard of Plaintiff's rights but awarded $0 in punitive damages for that finding;

4. in favor of Defendant Alysa Rollock on Plaintiff's Section 1983 Equal Protection claim by finding that Defendant Alysa Rollock did not discipline Plaintiff because Plaintiff was a woman; and

5. in favor of Plaintiff and against Defendant Alysa Rollock on Plaintiff's Section 1983 Due Process claim and awarded $0 in compensatory damages and found that Defendant Alysa

>Rollock's conduct was malicious or in reckless disregard of Plaintiff's rights but awarded $0 in punitive damages for that finding.

[DE 144].

On this verdict, the Court entered Judgment as follows:

>The court has ordered that: the Plaintiff, Nance (sic) Roe, recover from the Defendant Purdue University in compensatory damages in the amount of Ten Thousand Dollars ($10,000), plus post-judgment interest at the rate of 3.91%. the Plaintiff, Nancy Roe, recover from the Defendant Katie Sermersheim compensatory damages in the amount of Zero Dollars ($0.00), and punitive damages in the amount of Zero Dollars ($0.00). the Plaintiff, Nancy Roe, recover from the Defendant Alyssa (sic) Rollock compensatory damages in the amount of Zero Dollars ($0.00), and punitive damages in the amount of Zero Dollars ($0.00) tried to a jury with Judge John E. Martin, presiding, and the jury has rendered a verdict.

[DE 145].

Under controlling precedent,[2] the jury's zero-damages verdict as to the Individual Defendants equates to a judgment for the Individual Defendants and against Plaintiff Roe. Therefore, with respect to Individual Defendants Rollock and Sermersheim, the Judgment should be modified to read: "The plaintiff recover nothing, the action be dismissed on the merits, and the defendants Alysa Rollock and Katherine Sermersheim recover costs from the plaintiff Nancy Roe."

Given the jury's conclusion that the evidence was insufficient to show (in Plaintiff's words in DE 137) "retaliatory animus based on their discriminatory assumptions about the Plaintiff" or that the Individual Defendants "punished her because she made a complaint (in

---

[2] *See Franzen v. Ellis Corp.*, 543 F.3d 420, 431-432 (7th Cir. 2008); *see also Mounson v. Moore*, 117 Fed. Appx. 461, 462 (7th Cir. 2004) ("Mounson received only a jury determination that the defendants violated his constitutional rights, but it was unaccompanied by an enforceable judgment. Mounson has nothing to collect from the defendants or enforce against them.") (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992) (the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, … a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party.")).

3

violation of her equal protection rights)", it is impossible to conclude that the evidence was sufficient to establish either a Title IX retaliation claim against Purdue or that (in the formulation specified by the Seventh Circuit) "sex was a motivating factor in [Purdue's] decision to discipline" Plaintiff Roe. *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019). *See Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019). The special verdict form regarding Plaintiff's Section 1983 Equal Protection claim against Individual Defendants Rollock and Sermersheim establishes that Purdue did not in fact possess or act upon a retaliatory or discriminatory animus. Therefore, judgment must as a matter of law be entered in favor of Purdue on Plaintiff's Title IX claim.

The jury also concluded that Plaintiff was not deprived of any property of any value. Regarding deprivation of Plaintiff's "liberty and/or property", the jury's verdict was that Plaintiff showed no damages. Plaintiff had contended that she would show the jury that she had a property interest in her Purdue enrollment. Given the jury's verdict that the alleged deprivation of her Purdue enrollment caused no damages, there is no rational basis for a damage award against Purdue on Plaintiff's Title IX claim.

For these reasons, the jury was irrational to find liability under Title IX and an award of damages against Purdue under Title IX. The Court should therefore direct the entry of judgment as a matter of law in favor of Purdue on Plaintiff's Title IX claim.

In the alternative, Purdue is entitled to a new trial on Plaintiff's Title IX claim because the jury's contradictory verdicts show that the jury was not properly, consistently, and sufficiently instructed.

For present purposes, Plaintiff Roe's Title IX retaliation claim is immaterial. Before the jury Plaintiff Roe expressly confirmed her sworn deposition testimony that it was reasonable to

disbelieve her incapacity claim: "I can understand if someone didn't feel there was sufficient evidence to support my claim, I can understand that." [DE 54 at p. 7]. As a result of this admission, no reasonable jury could fault Purdue's conclusion that there was insufficient evidence to believe Roe had been too incapacitated by alcohol to consent to sex.

**Standard of Review**

Under Federal Rule of Civil Procedure 50, a court may grant judgment as a matter of law where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Upon a timely-filed renewed motion for judgment as a matter of law "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

In considering a Rule 50(b) motion, a court must "construe the trial evidence strictly in favor of the party who prevailed before the jury." *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018). A court's task "is to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Id.* In so doing, the "court does not make credibility determinations or weigh the evidence." *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012).

Under Rule 59(a), a district court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A); *see also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 602 (7th Cir. 2019) ("Unlike Rule 50, a new trial under Rule 59 may be based on "any reason" recognized by federal law. Fed. R. Civ. P.

59(a)(1)(A)."). The Seventh Circuit has stated that "[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (quoting *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014)); *see also Hillmann v. City of Chicago*, 834 F.3d 787, 793 (7th Cir. 2016) ("The district court has the discretion to 'grant a new trial on all or some of the issues—and to any party,' FED. R. CIV. P. 59(a), and a new trial should be granted if a prejudicial error occurred, ...".).

As summarized in *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005), the analysis whether the jury has returned consistent verdicts is a question of law:

> "As a rule civil juries must return consistent verdicts." If possible, this court must reconcile apparently inconsistent verdicts, rather than overturn them. A party claiming that inconsistent verdicts have been returned is not entitled to a new trial "unless no rational jury could have brought back" the verdicts that were returned. A new trial on all claims is the appropriate remedy (rather than judgment as a matter of law) in a case in which the jury has returned inconsistent verdicts.

422 F.3d at 617 (internal citations omitted).

To win a new trial based on an erroneous jury instruction, Purdue must show both that the instructions did not adequately state the law and that the error was prejudicial to it because the jury was likely to be confused or misled. *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (citing *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000)). An erroneous jury instruction is not prejudicial unless "considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Boyd*, 384 F.3d 894 (quoting *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001)). *See also Mary M. v. North Lawrence Community Sch. Corp.*, 131 F.3d 1220, 1225 (7th Cir. 1997) (accord).

**Course of Trial**

Against Purdue, Roe alleged that Purdue's disciplinary decision was motivated by her gender, in violation of Title IX.

Against the Individual Defendants, Roe alleged that the disciplinary decision violated Fourteenth Amendment Equal Protection and deprived her of a constitutionally protected right to remain enrolled at Purdue University, without meeting the Due Process requirement of the Fourteenth Amendment with respect to school discipline.

Plaintiff Roe did not come forward with any evidence that Purdue's application of its False Statement Rule to her was motivated by her gender. The unchallenged testimony of the Individual Defendants was that they employed the same decision-making process as they would if Plaintiff were a man, not a woman. The unchallenged evidence was that the False Statement Rule applied to all persons reporting sexual assault, regardless of gender. The unchallenged evidence was that the Individual Defendants genuinely believed, based on the weight of the evidence, that Plaintiff violated the False Statement Rule. Plaintiff tendered no circumstantial or direct evidence that her gender was a motivating factor in the Individual Defendants' determination that Roe made false statements.[3]

Plaintiff Roe alleged "incapacitation" as a defense to the finding that she violated the False Statement Rule. However, a gender bias or due process allegation cannot be proved by

---

[3] The Individual Defendants' evidence-based conclusion on the False Statement Rule precludes any Title IX retaliation claim. In 34 CFR § 106.71(b)(2) (titled "Retaliation") the Department of Education specifies: "Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this part does not constitute retaliation prohibited under paragraph (a) of this section, provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith."

alleging "incapacitation". Incapacitation is not a gender-related concept. There is no evidence in the record that the analysis of incapacitation involves gender-related factors or varies by gender. Therefore, Plaintiff's arguments to the jury about incapacitation had no probative value as to whether Purdue's discipline of Plaintiff was motivated by her gender.

Further, on the stand, Roe admitted that the Individual Defendants' finding that there was no sexual assault was not an act of gender bias or retaliation: "I can understand if someone didn't feel there was sufficient evidence to support my claim, I can understand that." [DE 54 at p. 7].

Roe also never contended or tried to show that the *lack* of a sexual assault finding interfered with her educational opportunity at Purdue.

## ARGUMENT

**A. The Court erred as a matter of law in permitting the jury to decide Plaintiff's Section 1983 Fourteenth Amendment Due Process claim for alleged deprivation of an alleged property interest in Plaintiff's contract of enrollment.**

**1. No constitutionally protected property interest in Purdue enrollment.**

Against both Purdue and the Individual Defendants, Plaintiff demanded refund damages and consequential damages based upon her enrollment relationship with Purdue. It was error for the Court to allow Plaintiff to seek those damages pursuant to her Section 1983 Fourteenth Amendment Due Process claim.

Plaintiff never established a constitutionally protected property interest in her Purdue enrollment. Therefore, the evidence that went to the jury was not legally sufficient for a constitutional due process claim. *Thiele v. Bd. of Trs. of Ill. State Univ.*, No. 1:20-cv-01197-SLD-TSH, 2021 U.S. Dist. LEXIS 188314, *27-28 (C.D. Ill. Sep. 30, 2021); *Doe v. Purdue Univ.*, 928 F.3d 652, 659-60 (7th Cir. 2019); *Doe v. Purdue Univ.*, 2020 U.S. Dist. LEXIS 168097, *7-8 (N.D. Ind. September 15, 2020). It was therefore legally impermissible for the jury

8

to find deprivation of a property interest protected by Fourteenth Amendment Due Process and impermissible for the jury to reach Plaintiff's related punitive damage claim.[4]

### 2.  No lack of notice and opportunity to be heard.

Roe also failed to tender evidence showing a lack of notice and an opportunity to be heard on the false-statement violation. Roe did not contend or show that she lacked sufficient opportunity to prove the truth of her statements that were found to offend the False Statement Rule. Further, the evidence at trial showed that Defendant Sermersheim informed Roe of her right to appeal her false-statement determination and sanction to Defendant Rollock. The testimony established that Rollock reviewed Roe's appeal materials and the underlying evidence. Roe was unable to identify any evidence that she did not in fact provide to Purdue when afforded the opportunity to be heard on the potential finding of a False Statement Rule violation.

Further, the Individual Defendants had qualified immunity to Roe's Section 1983 Due Process claims because there was no clearly established requirement that Purdue provide Plaintiff Roe with any more or different process than she in fact was afforded. Plaintiff has never cited "a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (internal citations omitted). "[T]here must be settled authority that would cause [the defendant] to understand the illegality of the action." *Id.* Roe has failed her burden to come forward with "settled authority" showing that she was constitutionally

---

[4] Roe did not allege that she was deprived of any constitutionally protected liberty interest. In the context of university-student discipline, the Seventh Circuit has recognized only one form of Due Process liberty interest, known as a "stigma plus" deprivation of "occupational liberty". *Doe v. Purdue Univ.*, 928 F.3d at 662–63. "[T]he publication requirement of the stigma-plus test" involves disclosure of a disciplinary suspension to the plaintiff's "current and prospective employers." *Id.* at 662. Roe did not allege or come forward with evidence of any such disclosure to current or prospective employers.

9

entitled to a different process on the False Statement Rule than the process provided by the Individual Defendants. *See, e.g., Sebesta v. Davis*, 878 F.3d 226, 234 (7th Cir. 2017) (authorities cited by plaintiff "to support her position that the three individual defendants should have known they were violating [plaintiff's constitutional rights] fail to meet the specificity criteria that the Supreme Court has established").

### 3.      Eleventh Amendment bar on subject-matter jurisdiction.

Because the Eleventh Amendment deprived this Court of subject-matter jurisdiction over Plaintiff's Section 1983 claims, the Court lacked jurisdiction to permit the Section 1983 claims against the Individual Defendants to proceed to trial.[5]

"No court may decide a case without subject matter jurisdiction." *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000). The evidence failed to show any difference between Plaintiff's enrollment relationship with Purdue, on one hand, and application of the Eleventh Amendment bar to claims against individual defendants who are acting on behalf of the employer-defendant, on the other hand. For Eleventh Amendment purposes, there is no meaningful distinction between Plaintiff's enrollment relationship with Purdue and an employment relationship with Purdue. As summarized recently by the United States District Court for the Southern District of Indiana:

> The Seventh Circuit has similarly held that suits arising from the plaintiff's employment relationships with the state will inevitably result in the state paying a judgment because there is "no reason" to believe an individual defendant would "foot the bill" for a judgment based on an employment contract to which only the state was a party. *Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018); *see Wade v. Ind. Univ. Sch. of Med.*, No. 16-CV-02256, 2019 U.S. Dist. LEXIS 116115, 2019 WL 3067519, at *8 (S.D. Ind. July 12, 2019) ("When the

---

[5] In support of this Motion, Defendants incorporate and renew the arguments raised in their Renewed Motion to Dismiss Section 1983 Damage Claims (Counts VII and VIII) for Lack of Subject Matter Jurisdiction [DE 81], and Brief in Support of Renewed Motion to Dismiss Section 1983 Damage Claims (Counts VII and VIII) for Lack of Subject Matter Jurisdiction [DE 82].

plaintiff seeks damages against individual defendants arising from an employment relationship, . . . any damages would be paid by the state employer.").

*Patton v. Ind. Univ. Bd. of Trs.*, No. 1:20-cv-00699-TWP-MJD, 2022 U.S. Dist. LEXIS 154900, *28 (S.D. Ind. Aug. 29, 2022). If, in this statement of law, each use of the word "employment" were instead "enrollment", it would bar Plaintiff's claims against the Individual Defendants.

No case provides any basis to believe that the Eleventh Amendment analysis is any different for Plaintiff's enrollment relationship with Purdue than if Plaintiff had instead sought relief based on an employment relationship with Purdue. Just as individual defendants who work for a corporate employer are not the employer, here the Individual Defendants work for Purdue, and the Individual Defendants are not parties to the enrollment contract.

Plaintiff Roe has always had the burden of overcoming the presumptive Eleventh Amendment bar because "the plaintiff, as the party invoking federal jurisdiction, always bears the burden to establish that subject matter jurisdiction exists." *Powell v. Illinois*, No. 18 CV 6675, 2019 U.S. Dist. LEXIS 168209, *16 (N.D. Ill. Sep. 30, 2019). Plaintiff Roe must supply the Court "reason to believe" that the Individual Defendants "would foot the bill for a resulting judgment" based on Roe's enrollment relationship with Purdue University. *Haynes v. Indiana Univ.*, 902 F.3d 724, 732 (7th Cir. 2018). Further, in closing argument, Plaintiff made no distinction between Purdue and the Individual Defendants. By lumping Purdue and the Individual Defendants together, Plaintiff expressly conceded that Purdue is the "real party" for her Section 1983 claims. *Isabell v. Trs. Of Ind. Univ.*, 432 F. Supp. 3d 786, 793 (N.D. Ind. 2020).

**4.     Prejudicial effect.**

The Court's unconstitutional attempt to exercise subject-matter jurisdiction over the Individual Defendants pursuant to Section 1983 turned a straightforward Title IX dispute between a university and student into a tangle of overlapping claims that confused the jury.

11

Allowing the Section 1983 claim to go the jury infected the determination of the Title IX claim by allowing the jury to conclude that the same course of conduct was a harmless Due Process deprivation and a harmful Title IX violation. This inconsistency shows that the Eleventh Amendment error was not only a subject-matter jurisdiction error, it also led to a logic error because Title IX is a statutory protection against gender discrimination, not a constitutional due process requirement.

**B. Purdue is entitled to judgment as a matter of law on Plaintiff's Title IX claim. The trial evidence and the jury's verdict established that the jury did not have a legally sufficient evidentiary basis to find that Purdue's discipline of Plaintiff Roe was motivated by her gender.**

The jury did not find any gender discrimination by Defendant Sermersheim or Defendant Rollock. *See* [DE 144]. The "VERDICT: Katherine Sermersheim" and "VERDICT: Alysa Rollock" forms each state that the jury unanimously finds in favor of the Individual Defendants with respect to Plaintiff's claim that the Individual Defendants "disciplined Plaintiff [Roe] because Plaintiff [Roe] is a woman." This finding is conclusive not only under Fourteenth Amendment Equal Protection but also as to Plaintiff's burden under Title IX to show that Purdue University's disciplinary suspension of Plaintiff was motivated by her gender. Numerous cases establish that the concept of discriminatory animus has the same meaning across multiple federal discrimination causes of action, including Section 1983 and Title IX.[6]

---

[6] *See Williams v. Seniff*, 342 F.3d 774, 788 n. 13 (7th Cir. 2003) (holding that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims). "Title VI and Title IX are so similar that a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014); *Brewer v. Bd. of Trs. of Univ. of Illinois*, 479 F.3d 908, 921 (7th Cir. 2007) ("The elements of a prima facie case are the same under both Title VI and VII."). *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 n.8 (10th Cir. 2017) ("The *McDonnell Douglas* framework applies both to the Title IX and Title VII sex discrimination claims."); *Martin v. S. Ill. Univ. Sch. of Med.*, No. 16-CV-3294, 2017 U.S. Dist. LEXIS 174828, at *28-32 (C.D. Ill. Oct. 23, 2017) (collecting cases applying *McDonnel-Douglas* to Title VI and IX claims). *See, e.g., Lee v. Univ. of New Mexico*, 449 F. Supp. 3d 1071, 1141 (D.N.M. 2020).

Plaintiff's Title IX allegation against Purdue focused squarely and solely on the Individual Defendants as the decision-makers for purposes of Title IX liability. A gender discrimination allegation centers on individuals who are alleged to have possessed and acted upon a discriminatory animus. In Plaintiff Roe's telling, those two individuals were the Individual Defendants, Rollock and Sermersheim. The jury verdict forms stated the jury's specific conclusion that neither Rollock nor Sermersheim engaged in gender discrimination. *See* [DE 144 at pp. 3-4, 6-7].

The jury's verdict on Rollock and Sermersheim therefore establishes that Roe failed to come forward with sufficient evidence to "show that sex was a motivating factor in [Purdue's] decision to discipline" her. *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019).

How squarely Plaintiff Roe's Section 1983 Equal Protection claim and her Title IX claim overlapped can be seen by a side-by-side examination of two instructions.

Final Jury Instruction No. 19 tasked the jury: "If you find that Plaintiff [Roe] has proved by a preponderance of the evidence that Defendant Purdue University treated her differently because of her gender, then you must find that Defendant Purdue University violated Title IX." [DE 140 p. 20].

Final Jury Instruction No. 21 tasked the jury: "If you find that Plaintiff [Roe] has proven by the preponderance of the evidence that she was disciplined by Defendant Sermersheim and/or Defendant Rollock and that the discipline was because she is female, then you must find that Defendant Sermersheim and/or Defendant Rollock violated Plaintiff [Roe's] right to equal protection under the law." [DE 140 p. 23].

These instructions are substantively identical, the only difference being that No. 19 is directed to Purdue University and Instruction No. 21 is directed to Individual Defendants

Sermersheim and Rollock. Given the undisputed fact that Sermersheim and Rollock were the decision-makers for Purdue University, the verdict in favor of Sermersheim and Rollock on Instruction No. 21 makes it impossible for a rational jury to render a verdict against Purdue University on Instruction No. 19.

Purdue is entitled to judgment as a matter of law because the jury's specific findings as to the lack of discriminatory animus on the part of the Individual Defendants negates any possible conclusion that Purdue violated Title IX. In *Freeman v. Chicago Park Dist.*, 189 F.3d 613, 618 (7th Cir. 1999), the court affirmed the district court's post-trial entry of judgment for defendant because the jury's conclusion that the defendant did not discriminate in violation of Title VII was conclusive as to discrimination for purposes of 42 U.S.C. § 1981. This step is also supported by the rule, "A judge may dissipate the inconsistency by setting aside one of the conflicting verdicts, if that verdict was unsupported by the evidence." *Am. Cas. Co. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1305 (7th Cir. 1993).

The same reasoning dictates the same result here. The jury's conclusion that the Individual Defendants did not discriminate in violation of Section 1983 is conclusive for purposes of Title IX.

### C. In the alternative, the Court should order a new trial on Plaintiff's claim against Purdue.

#### 1. The jury's inconsistent verdicts on discriminatory animus cannot be reconciled and therefore necessitate a new trial.

As summarized above, the analysis whether the jury has returned consistent verdicts is a question of law, and a verdict is inconsistent if no rational jury could have brought back the verdicts that were returned. No rational jury could conclude that Individual Defendants Sermersheim and Rollock lacked discriminatory animus but Purdue University did. No rational

jury could conclude that Plaintiff proved Title IX damages even though she failed to prove any damages on her Equal Protection and Due Process claims. If those inconsistences do not compel entry of judgment as a matter of law in favor of Purdue on the Title IX claim, then at a minimum those inconsistencies compel a new trial for Purdue on the Title IX claim.

   **2. The jury received no evidence of a "deliberate indifference" violation of Title IX. The erroneous Title IX instruction and verdict form prejudiced Purdue by permitting the jury to find liability based on a "deliberate indifference" theory of relief that had no foundation in the evidence.**

For a Title IX deliberate-indifference claim, Plaintiff would be required to prove that Purdue was "deliberately indifferent to sexual harassment, of which [Purdue] ha[d] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive [Plaintiff] of access to the educational opportunities or benefits provided by [Purdue]." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Sexual harassment that does not recur after it is reported does not meet that standard. *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 540 (7th Cir. 2022) (en banc). The "deliberate indifference" theory of relief asks "whether the school's response to th[e] harassment reflected an official decision not 'to take action to end the harassment or to limit further harassment.'" *Id.* at 544 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289 (1998)). For a "deliberate indifference" claim, Plaintiff Roe must show "past misconduct revealing risks" that she was exposed to a recurrence. *Id.* at 542.

No reasonable jury, properly instructed, could find that Purdue failed to investigate the assault that Roe reported or failed to address a risk of recurrence. Plaintiff Roe never alleged that Purdue failed to investigate her report of sexual assault. She never alleged that she experienced further harassment, whether by the accused male from her April 17-18, 2017 encounter, or by anyone else.

15

The undisputed evidence at trial proved that Purdue responded to Roe's report by, among other things, promptly and thoroughly investigating Roe's report, as evidenced by the 182-page investigation report. *See* Defendants' Ex. I. Further, Plaintiff Roe never contended or showed that the lack of a sexual assault finding interfered with Plaintiff's educational opportunity at Purdue. Roe never alleged that Purdue's response to her report was followed by any interference by the accused student in Plaintiff's educational opportunities at Purdue. Roe never alleged that Purdue failed to end harassment or limit further harassment. In fact, Roe testified that her final contact with the accused student preceded her April 22, 2017 report to Purdue. Therefore, any claim for "deliberate indifference" failed as a matter of law.

The error in permitting the jury to consider a "deliberate indifference" theory of liability is easily seen by posing the question, would Plaintiff Roe have had an actionable claim for "deliberate indifference" if Purdue had disciplined *neither* Roe *nor* the respondent C.L.? She would not, because the suspension that was at the heart of the trial had nothing to do with the question whether Roe was safe on the Purdue campus after she reported her allegation against C.L. Roe never alleged that Purdue failed to protect her from C.L.

Further, nothing in the "deliberate indifference" caselaw equips a plaintiff like Roe with a cause of action against the school for not imposing a retributory sanction on the alleged assailant.

Despite no pending claim for deliberate indifference or evidence at trial to support such a claim, the Court instructed the jury:

> … Plaintiff [Roe] also claims that Defendant Purdue University's response to her assault complaint amounted to deliberate indifference to sexual harassment because it reflected an official decision not to take action to end student on student harassment. 'Deliberate indifference' means that Defendant Purdue University's response to the alleged harassment or lack of response was clearly unreasonable in light of all the known circumstances.

> If you find that Plaintiff [Roe] has proved by a preponderance of the evidence that Defendant Purdue University treated her claim of assault with deliberate indifference during the investigation, or that Purdue University's method of determining that Plaintiff [Roe] should be subject to discipline was so unreasonable as to constitute an official decision to not take action to remedy student on student harassment, then you must find that Purdue University violated Title IX.

(Final Jury Instructions of the Court, Court's Final Jury Instruction No. 19 [DE 140 at p. 21]).

Giving Final Jury Instruction No. 19 confused the jury and exposed Purdue to a theory of relief that had no basis at all in the trial evidence. The giving of Final Instruction No. 19 improperly permitted the jury to conclude that Purdue violated Title IX, by finding that Purdue "treated Plaintiff [Roe's] claim of assault with indifference during the investigation; or that Defendant Purdue University's method of determining that Plaintiff [Roe] should be subject to discipline was the equivalent of an official decision not to take action to remedy student-on-student harassment." *See* [DE 144 at VERDICT: Purdue University, Question 1]. The giving of Final Instruction No. 19 prejudiced Purdue because the jury was likely to be confused or misled in to thinking it could find Purdue violated Title IX under one of these two "theories" of deliberate indifference.

Purdue is entitled to a new trial on Plaintiff Roe's Title IX claim because the Court erroneously gave Final Instruction No. 19, and doing so materially prejudiced Purdue. Considering Final Instruction No. 19 and the instructions as a whole, the jury was misinformed that they had received evidence relating to the elements of a "deliberate indifference" theory of relief.

This error was replicated in the Title IX verdict form. The Court's Title IX verdict form gave the jury four options to find an alleged Title IX violation, with the jury only needing to

choose one to find Purdue liable under Title IX, two of the four listed options were "deliberate indifference" findings:

> We, the jury, unanimously find in favor of Plaintiff [Roe] with respect to her claim that Defendant Purdue University treated her differently in investigating a complaint of assault because she is female; that it retaliated against her because of her good faith complaint of sexual assault; that it treated Plaintiff [Roe]'s claim of assault **with indifference** during the investigation; **or that** Defendant Purdue University's method of determining that Plaintiff [Roe] should be subject to discipline **was the equivalent of an official decision not to take action to remedy student-on-student harassment**.

[DE 144] (emphasis added).

The last two "options" on the Title IX verdict form ("that it treated Plaintiff [Roe]'s claim of assault with indifference during the investigation" and "that Defendant Purdue University's method of determining that Plaintiff [Roe] should be subject to discipline was the equivalent of an official decision not to take action to remedy student-on-student harassment") permitted the jury to find a Title IX violation based on deliberate indifference even though there was no actionable deliberate indifference alleged and no evidence from which the jury could find deliberate indifference. [DE 144].

This erroneous Title IX verdict form permitted the jury to find a Title IX violation even if they found that (1) Purdue did not treat Roe differently in investigating her complaint of assault because she was a female and (2) Purdue did not retaliate against Roe because she made a good faith complaint of sexual assault. The "or" appearing within Question 1a. means the jury's Title IX verdict might have rested solely on one of the improper deliberate indifference theories of relief. *See* [DE 144]. By inviting the jury to find liability against Purdue on a "deliberate indifference" theory of relief that fails as a matter of law, Final Instruction No. 19 and the corresponding provision of the verdict form invited error as a matter of law.

18

The Court improperly placed the issue of "deliberate indifference" before the jury through Final Instruction No. 19 and the Title IX verdict form, thereby entitling Purdue to a new trial limited to Plaintiff's Title IX claim. *See Mary M. v. North Lawrence Community Sch. Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997) (finding Title IX final instruction contained an incorrect statement of law that prejudiced the complaining party and reversing the jury's finding and remanding the case for a new trial). In *Mary M.*, the jury returned a verdict finding the defendant school corporation liable under Title IX but awarded the plaintiff nothing in compensatory and punitive damages. *Id.* at 1221. Plaintiff's main contention on appeal was that the district court judge erred in permitting the question of "welcomeness" to be placed before the jury and argued that a final jury instruction on this issue was erroneous. *Id.* at 1224. The Seventh Circuit agreed and reversed the jury's verdict on the basis of an erroneous instruction given by the trial court. *Id.* at 1224, 1228. The Seventh Circuit reasoned that the instruction had misled the jury, resulting in an inconsistent verdict that could not be reconciled:

> While we will not venture to guess why or how the jury could have found for Diane on the issue of liability and proceeded to award her nothing in compensatory or punitive damages, we find that the instruction regarding welcomeness is so intertwined with the issue of damages as to severely prejudice her. The only way to determine whether the jury believed the welcomeness instruction prohibited it from awarding monetary relief, or whether it believed Diane suffered no damages, is to remand this case for a new trial with the instruction that welcomeness is not at issue.

*Id.* at 1227-1228. Like *Mary M.*, Final Instruction No. 19 included incorrect statements of law based on the claims and evidence at trial and Purdue was prejudiced by this erroneous instruction. Moreover, Final Instruction No. 19 misled the jury, as evidenced by the inconsistent verdicts. The jury was misled on the applicable law and its understanding of the issues relevant to its determination whether Purdue violated Title IX was seriously compromised through the giving of Final Instruction No. 19. The Court's error in giving Final Instruction No. 19 requires a

new trial on Plaintiff's Title IX claim, and in the new trial there should be no instruction or verdict form regarding "deliberate indifference".

As summarized above, the inconsistency between the jury's no-gender-discrimination finding as to the Individual Defendants and the jury's Title IX verdict against Purdue shows that erroneous Final Instruction No. 19 confused the jury and prejudiced Purdue. This inconsistency in the jury's verdict further necessitates a new trial on Plaintiff's Title IX claim.

For these reasons, Purdue is entitled to a new trial on Plaintiff Roe's Title IX claim.

## CONCLUSION

For the foregoing reasons, Purdue respectfully requests that their motion for judgment as a matter of law be granted and judgment be entered in favor of Purdue on Plaintiff's Title IX claim. Alternatively, the Court should order a new trial limited to Plaintiff Roe's Title IX retaliation claim against Purdue. The Individual Defendants respectfully request that the Judgment be conformed to show them as prevailing parties on the claims against them.

Dated: October 21, 2022                                  Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (Attorney No. 18973-79)
Joseph H. Harrison III (Attorney No. 35248-53)
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN  47902-1010
Telephone:  765-423-1561
Facsimile: 765-742-8175
E-Mail:  wpk@stuartlaw.com
            jhh@stuartlaw.com
**Attorneys for Defendants**

1528383v1