UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NANCY ROE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Cause No. 4:18-cv-00089-JEM |
| ) | |
| PURDUE UNIVERSITY and ) | |
| ALYSSA ROLLOCK ) | |
| and KATIE SERMERSHEIM, in their official and ) | |
| individual capacities ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER PETITION FOR ATTORNEYS' FEES AND BILL OF COSTS**

Nancy Roe won a trial after nearly four years of litigation against Purdue University and the individual Defendants. She won a jury verdict of $10,000 and a finding that the individual Defendants willfully and maliciously interfered with her rights to Due Process. She has a pending motion for injunctive relief that would wipe her record clean.

This was not a pyrrhic victory. Roe did not "aim high and fall short." Instead, Roe received complete vindication, compensation for her economic loss, and the possibility of meaningful change at Purdue University. The Court's order on her Petition for Fees should reflect the totality of her victory, the amount of work that was required to simply put her in the position to claim that victory, and the important public interest served by the litigation.

**A. The Amount of the Verdict is Not Determinative of Fees**

The Seventh Circuit recently weighed in on the issue of the proportionality of the verdict and the fees claimed in an attorney's fees petition under a fee-shifting statute. While the case was brought under the Federal Debt Collection Practices Act, which involves a separate fee-shifting

1

statute, the Seventh Circuit reaffirmed its long tradition of recognizing the importance of attorney's fees in cases that serve the public interest. "Some cases involve important public interests which may not be reflected in the size of a particular recovery." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022) (citing *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)).

The *Cooper* case also shored up two relevant principles to this case. In *Cooper*, the Plaintiff's maximum statutory recovery was $1,000 and the Plaintiff recovered $500 in statutory damages and no damages for actual harm. The district court rejected all of the Plaintiff's fees incurred after he had turned down an offer of $500 plus fees and costs prior to trial. The Plaintiff's attorney sought $65,357.90 plus costs. The district court instead awarded the lodestar amount for the period prior to the Plaintiff's rejection of the $500 offer.

The Seventh Circuit reversed. It found that barring fees incurred after a substantial offer that was not made pursuant to Rule 68 was "harsh" and that by barring these fees the district court went "too far" and conflicted with cases in the Circuit that required "strict compliance" with Rule 68 "before imposing such harsh consequences." In *Cooper*, the Seventh Circuit explained that the rejection of a substantial settlement offer is simply one factor but not the "sole fact that determines the fee award. Rather, courts should consider the totality of the circumstances and focus on whether the lodestar reflects the unique facts of the case or whether it should be adjusted up or down to better account for those facts." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 685 (7th Cir. 2022). The Seventh Circuit sent the case back to the district court because it erred in denying all fees for work after the settlement offer. But, as it did so, it made clear that proportionality is simply one aspect of the analysis. "Success must be measured not only in the amount of the recovery but also in terms of the principle established

and the harm checked." *Id.* (quoting *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997)).

### B. The Plaintiff Prevailed Against All Three Defendants

There can only be one prevailing party in litigation. *See O.K. Sand & Gravel v. Martin Marietta Techs.*, 36 F.3d 565, 571 (7th Cir. 1994); *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble,* 924 F.2d 633, 641 (7th Cir. 1991).  "[W]hen claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims.  In such cases, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Jaffee v. Redmond*, 142 F.3d 409, 413-14 (7th Cir. 1998) (internal quotations omitted)

The Plaintiff will argue in connection with her Response to Defendant's Motion for Judgment as a Matter of Law, Amended Verdict, and/or New Trial that the Jury's Verdict against the Individual Defendants was not simply a "nominal" verdict. Based on the instructions, the Plaintiff proposes that the Court interpret the verdict by finding that the Jury did not want to duplicate the damages they had already awarded to the Plaintiff in connection with her claim against Purdue. If the shoe were on the other foot, Plaintiff suggests that the Defendants would argue that any award for compensatory damages awarded against the Individual Defendants duplicated the award on the Title IX claim.

Regardless, whether or not the damages are "nominal" on the Plaintiff's Due Process claim against the individual Defendants is irrelevant to whether the Plaintiff was a prevailing party on

that claim. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *see Moore v. Liszewski*, 838 F.3d 877, 879 (7th Cir. 2016). Notably, the jury instructions in this case did not have the option of awarding simply a nominal amount to the Plaintiff on the claims against the individual Defendants but the instructions did have the option of awarding a nominal amount against Purdue University. As indicated above, the Plaintiff's interpretation of the jury verdict was that the jury believed she suffered $10,000 in economic harm, assessed it to Purdue University, indicated that it found that the individual Defendants malicious and deliberately indifferent to the Plaintiff's rights under the Constitution but declined to duplicate the Damages award against the individuals. Alternatively, the Court could determine that given the jury verdict on liability required a nominal damages award and enter that award in favor of the Plaintiff. In either event, the Plaintiff was the prevailing party in the case. And given that all of her evidence against Sermersheim and Rollock was the same evidence used to prove the Title IX claim, there should be no reduction in her fee award, no matter what the Court determines regarding the Section 1983 claims.

### C. Defendants' Claim that the Settlement in the Doe Case Bars Clams for Work Prior to August 31, 2022, has No Basis in Law or Reality

The Defendant cites to no authority for this proposition and the Court can quickly dispose of it. As the Declarations submitted by the Plaintiff indicate, the time billed in this case and submitted to the Court was time worked on behalf of Nancy Roe. For instance, prior to August 31, 2022, Defendant filed separate summary judgment motions for Roe and Doe and Plaintiffs' counsel filed separate responses for each case. Similarly, prior to August 31, 2022, the Defendant deposed Nancy Roe individually and counsel for Roe attended. Additionally, prior to August 31, 2022, counsel for Plaintiff deposed Dean Katherine Sermersheim, who was a decision-maker in Roe's case only. The Plaintiff has filed her petition for fees seeking work done only in

4

connection with her case. Even under the Defendants' outlandish argument, the fees associated with this work would necessarily be assessed to this case, but Defendant argues for a blanket reduction based on the resolution of Doe's case.

Moreover, the Doe settlement agreement said nothing about Roe's fees. All it did was acknowledge a compromise for Doe that included a resolution of her claims, including her claims for fees. Nothing in the agreement purports to cap Roe's entitlement to recover her fees under 42 U.S.C. § 1988.

### D. Defendants' Claim that the Offer of Judgment Bars Fees Misstates Controlling Seventh Circuit Law

Defendants' offer of judgment was for $11,000 **including** fees and costs. Indeed, Defendant specified that the $1,000 was attributable to "all costs of every kind, including any cost recoverable under Fed. R. Civ. P. 54(d), and her attorney's fees." Plaintiff achieved a recovery more favorable than the offer of judgment because it did not fully compensate her for her fees and costs at the time of the offer.

For an offer judgment, under Rule 68, to foreclose Plaintiff's post-offer costs, the offer of judgment must be more favorable to the Plaintiff than the verdict. In this case, the verdict was more favorable to the Plaintiff than the Defendant's Offer of Judgment. When considering, pursuant to Rule 68(d), whether the "judgment that the offeree finally obtains is not more favorable than the unaccepted offer," the Court considers not just the amount of damages awarded to the offeree (in this case, the Plaintiff), but also the costs accrued by the Plaintiff at the time of the offer, including pre-offer costs and pre-offer attorney's fees. *Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir. 1986) ("There is no reason to understand the term "judgment" to refer only to the jury's verdict on damages, rather than to both the verdict and the district court's determination of reasonable pre-offer fees under § 1988.") *See also* 42 U.S.C. § 1988(b) (If

5

awarded, Section 1983 and Title IX attorney's fees become part of the prevailing party's costs.) *See e.g., Townsend v. Benjamin Enter.*, 679 F.3d 41, 58-60 (2d Cir. 2012). Plaintiff's Itemization to the Bill of Costs [Dkt. 149-1] reveals that the Plaintiff owed costs prior to the Offer in deposition and filing fees of $4,317.35, not even including much more significant attorney's fees of $95,935 (*see* Dkt. 150-4) which are costs under both Title IX and Section 1983 and should be accounted for in the offer of judgment. To foreclose Plaintiff's entitlement to post-Offer fees, the Offer of Judgment needed to include the verdict amount for the Plaintiff plus these costs, plus attorney's fees that the Plaintiff had incurred up to that date. It did not even come close.

### E. The Amount of Time Counsel was Required to Spend on this Case was Dictated by the Defendants' Motion Practice

The Defendants' contention that this was a small case is belied by their extensive motion practice in the case. Defendants' numerous motions required extensive responses backed by extensive research. The Defendants filed a Motion to Dismiss and Sever on January 9 2019, a "Renewed" motion to Sever on May 29, 2019, a Motion for Summary Judgment on March 4, 2021, a Motion to Bifurcate Trial filed on April 1, 2022, a Motion to Dismiss for Lack of Jurisdiction on April 22, 2022, an eighteen page Motion in Limine on June 6, 2022, which, if granted, would have had the effect of essentially excluding all of the Plaintiff's evidence, a second Motion in Limine on September 9, 2022, and a third Motion in Limine on September 15, 2022[1]. The Defendants also filed a Motion for Judgment as a Matter of Law to which the Plaintiff was required to respond during the trial. The Plaintiff was required to respond to all of these motions or face serious consequences to her case including its dismissal. To make it to the jury and be heard for the first time, the Plaintiff needed to do all of this work to preserve her case. The Defendant had the right to file these motions, but not the right to exclude the incredible

---

[1] The Plaintiff substantially prevailed on each of these motions.

amount of time required by these motions from the Plaintiff's Award of Fees. That amount is properly billed toward the case.

If this were a small-claims court case, as the Defendants now contend, the Defendants' motion practice would be far different. Clearly, the Defendants perceived this matter as an important one due to the interests at stake. So did Nancy Roe. The rights vindicated in this case far exceed the potential economic recovery; the parties treated it as such. The Court's attorneys' fee award should recognize this public interest.

### F. The Defendants' Pretrial Settlement Offers Never Offered Her the Full Relief She Obtained at Trial

The Defendants justified their conduct in this case by alleging that Nancy Roe violated a rule against making false statements. This was their purported basis for her suspension. Absent a jury verdict in her favor, Roe faced a recurring problem in her future: a disciplinary suspension for dishonesty would follow her as she attempted to start a career. She testified that she worried about having to explain it in connection with application to law school or her future potential career as an attorney.

The Seventh Circuit has recognized that a judgment of liability is itself worth going to trial for rather than accepting a settlement wherein Defendants do not acknowledge liability. *Capps v. Drake*, 894 F.3d 802, 806 (7th Cir. 2018) ("[T]he record demonstrates that a large damage award was not Capps's primary focus. Capps testified that it was more important to him to take the case to trial and receive a verdict than to accept a large settlement without the officers' acknowledgment of responsibility, and he made no specific monetary request to the jury.") *See also Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 685 (2022) ("[T]he rejection of [a substantial settlement ] offer, especially if it is not a Rule 68 offer of judgment that qualifies for limited fees, should not be the sole fact that determines the fee award. Rather,

courts should consider the totality of the circumstances and focus on whether the lodestar reflects the unique facts of the case or whether it should be adjusted up or down to better account for those facts.")

Similarly, in this case Roe testified that her primary goal was to be heard; she testified that she was concerned about the effect her suspension would have on her future career; and counsel for Plaintiff explicitly told the jury that this is not a case about money. But to get to that point, to get the case in the hands of the jury, the Plaintiff's counsel had to do a ton of work. The point of a fees award under Section 1988 is to allow a Plaintiff like Nancy Roe to be able to have her case heard by a jury.

Additionally, as the Defendants' Exhibit 2 shows, to accept a settlement offer from the Defendant, Roe would have been required to waive her claims against them, and the Agreement would have required a non-admission clause. Neither of those conditions would have given the Plaintiff the relief she obtained at trial: complete exoneration and a declaration that her rights under federal law were violated. Similarly, the Defendants are being cagey about the terms of their final offer to the Plaintiff. As the court is aware, there were other non-financial terms attached to the offer that made it completely unacceptable to the Plaintiff[2]. The result she obtained in court gives her a degree of freedom that the Defendants' settlement offers did not give her.

---

[2] It was Plaintiff's understanding that settlement offers made in both the prior mediation and the mediation before the court were confidential; additionally, the Plaintiff believed that the offer accepted by Doe was confidential. The Defendants are attempting to use their settlement posture against her, but the Plaintiff does not want to waive confidentiality by using the Defendants conditions against them in public. Nonetheless, all parties to the settlement proceedings in this court and the Court are aware of the conditions that the Defendants attempted to attach to their settlement proposals just prior to trial.

## G. Defendants' Remaining Arguments are Not Supported

### a. Barry Macey's Fees

The Defendants had two attorneys at trial; so did the Plaintiff. The Plaintiff did not bill Barry Macey for "second chair services." Instead, each time entry on the Bill described the activity Barry Macey performed. Defendants do not challenge any of the work he performed and listed on the bill or the rate he charged for the work. Accordingly, this argument should be rejected.

### b. Clerical Tasks

Plaintiff does not object to the removal of .3 hours for flight scheduling from the lodestar calculation. However, Plaintiff does not concede it is a clerical task.

### c. Witness Fees/Service Costs for Individual Defendants

To the extent that the individual Defendants agree to not cash their checks for witness fees, the Plaintiff will not claim them. But, because both individual defendants testified in the Plaintiff's case in chief, subpoena and witness fees were necessary to guarantee their presence in court on the day of trial when Plaintiff intended to call them. Defendants cite no authority to the contrary.

## H. Expert Witness Fees and Fees for Travel Expenses are Recoverable as Attorneys' Fees

In Paragraph 8, Plaintiff expressly requested that to "the extent costs included in the Bill are not automatically taxable by statute, Plaintiff requests those costs be included in the award of fees." Defendant objects to their inclusion in the bill of costs, but even if they are excluded under the authority the Defendant cites, they are properly included in the fees calculation under Section 1988. This approach has been recognized in the Northern District of Indiana in *Burns v. Orthotek, Inc.*, No. 3:08-CV-190-PS, 2010 U.S. Dist. LEXIS 72087, at *8 (N.D. Ind. July 15, 2010) (citing *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,

9

460 F.3d 1253, 1257-1259 (9th Cir. 2006); *Grove v. Wells Fargo Fin. Cal.*, 606 F.3d 577, 580-581 (9th Cir. 2010); *Pasternak v. Radek*, 2008 U.S. Dist. LEXIS 27492, 2008 WL 2788551 (N.D.Ill. April 3, 2008) ("Expenses that fall outside the scope of § 1920 may be awarded" under other fee shifting provisions.) "It is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Redland Ins. Co.*, 460 F.3d at 1257. In other words, as Plaintiff requested, the Court may award these expenses, which Defendant does not contest as unreasonable, under Section 1988 because they are "out-of-pocket" litigation expenses. The question the Court should consider is whether the law firm or the client usually bears these expenses. For the travel and witness expenses, the answer is clearly: the client.

## I. The Defendants Fail to Acknowledge a Key Rationale for Fees in the Instant Case: the Public Interest Advanced by the Litigation

The Defendants do not even attempt to address the public interest served by the litigation, which the Seventh Circuit has repeatedly held is crucial to a determination of a fee award under Section 1988. Their failure to do so is evidence that the factor cuts overwhelmingly in favor of the Plaintiff and could be construed as waiver on this critical portion of the analysis.

"In determining an appropriate attorney's fee, we have rejected mechanical rules which call on a court simply to compare the amount demanded and the amount recovered because federal antidiscrimination law vindicates important public interests which may not be reflected in the size of a particular recovery." *Connolly v. Nat'l Sch. Bus Serv.*, 177 F.3d 593, 597 (7th Cir. 1999). The Seventh Circuit uses a three-part test "derived from Justice O'Connor's concurrence in *Farrar*" that looks at "the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public

purpose served by the litigation." *Id.* (citing *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir. 1993). Some cases involve "important public interests which may not be reflected in the size of a particular recovery." *Cooper*, 42 F.4th at 687 (citing *Connolly,* 177 F.3d at 597).

In cases relied on by the Defendants to argue that the lodestar standard should be reduced, the Courts explicitly questioned the value to the public of the case. *See, e.g., Ragland v. Ortiz*, No. 08 C 6157, 2012 U.S. Dist. LEXIS 86610, at *59 (N.D. Ill. Feb. 17, 2012) (noting that the case did not present substantial legal or factual complexity and that the case had "no broader public interest ramifications" beyond those present in every Section 1983 case); *Swanigan v. Trotter*, 2012 U.S. Dist. LEXIS 132603, at *34-35 (N.D. Ill. Mar. 12, 2012) (same rationale as *Ragland*); *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019) (analyzing a Fair Debt Collection Practices Act without reference to the public interest in the litigation[3]); *J&J Sports Prods. v. Rafiq*, No. 1:17-cv-07347, 2019 U.S. Dist. LEXIS 233810, at *1-2 (N.D. Ill. Sep. 30, 2019) (reducing the lodestar by 50% in an unauthorized reception of cable claim).

"The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (citing *Bankston v. State of Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995). The fees requested by the Plaintiff match the difficulty, stakes, and outcome of this case. As discussed above, the Plaintiff herself is freer to pursue her career goals and education because of the verdict. And, as a result of her success in this litigation, Purdue's Student Government passed

---

[3] While not overruling *Paz*, the Seventh Circuit, in *Cooper*, distinguished the approach taken by the Court in *Paz* on its facts. *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022) (noting that in *Paz*, the "district court dealt a 'substantial blow' to the plaintiff's case before trial by dismissing several of his claims, the settlement offer was three times the statutory damages available, and 'every indication from the record [was] that [the plaintiff] had but the slimmest chances of receiving any more than statutory damages). In *Cooper*, the Seventh Circuit expressly contrasted *Paz* with *Capps*, discussed *supra,* wherein the Seventh Circuit "reject[ed] the district court's determination that plaintiff's damages award was de minimis and he was not entitled to post-offer fees because the plaintiff's primary goal from the litigation was to obtain a judgment of liability, which none of the settlement offers provided." *Id.*

11

two resolutions to clarify Purdue's rules regarding incapacitation and punishment for false allegations. *See* PSG passes legislation reacting to Roe v. Purdue, Purdue Exponent, November 9, 2022. Change is coming to Purdue's campus, and it is coming because of Roe's decision to proceed to trial.

The Plaintiff's Petition for Fees should be granted, and Costs should be awarded to the sole prevailing party: the Plaintiff.

Respectfully submitted,

*/s/ Jeffrey A. Macey*
Jeffrey A. Macey (Atty No. 28378-49)
MACEY SWANSON LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
Telephone: (317) 637-2345
Email: jmacey@maceylaw.com
***Attorney for Plaintiff***

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Response was served on all counsel of record via operation of the Court's electronic filing system on November 14, 2022.

*/s/ Jeffrey A. Macey*
Jeffrey A. Macey (Atty No. 28378-49)
MACEY SWANSON LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
Telephone: (317) 637-2345
Email: jmacey@maceylaw.com
***Attorney for Plaintiff***