UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NANCY ROE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Cause No. 4:18-cv-00089-JEM |
| | ) |
| PURDUE UNIVERSITY and | ) |
| ALYSSA ROLLOCK | ) |
| and KATIE SERMERSHEIM, in their official and | ) |
| individual capacities | ) |
| | ) |
| Defendants. | ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR (i) JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL ON PLAINTIFF'S TITLE IX CLAIM AND (ii) TO CONFORM THE SECTION 1983 JUDGMENT IN FAVOR OF THE INDIVIDUAL DEFENDANTS TO THE MODEL FORM OF JUDGMENT FOR A DEFENSE VERDICT**

Defendants, The Trustees of Purdue University ("Purdue"), Alysa Rollock, and Katie Sermersheim (the "Individual Defendants"), by counsel, in reply to Plaintiff's Response in Opposition [DE 178] ("Opposition") to Defendants' Motion for (i) Judgment as a Matter of Law or, in the Alternative, a New Trial on Plaintiff's Title IX Claim and (ii) to Conform the Section 1983 Judgment in Favor of the Individual Defendants to the Model Form of Judgment for a Defense Verdict ("Motion"), state:

A. **The inconsistency between the Title IX verdict and the Section 1983 Equal Protection verdict is irreconcilable.**

By silence, the Opposition concedes the lack of trial evidence that Purdue's application of its False Statement Rule to Roe was motivated by her gender. The unchallenged testimony of the Individual Defendants was that they employed the same decision-making process as they would

1

if Plaintiff were a man, not a woman. The unchallenged evidence was that the False Statement Rule applied to all persons reporting sexual assault, regardless of gender.

The unchallenged evidence was that the Individual Defendants genuinely believed, based on the weight of the evidence, that Roe violated the False Statement Rule. By silence, the Opposition concedes that Roe's gender was not a motivating factor in the Individual Defendants' determination that Roe made false statements or the imposition of discipline.

Tacitly admitting that the jury exonerated Vice President Rollock and Dean Sermersheim on Roe's allegation of anti-female bias, Roe speculates that the jury could have imputed bias to the investigator (Ms. Wright) instead. Roe's attempt to pivot and impute gender bias to Ms. Wright is not only unsupported in the record, it also leads nowhere. There is no logic in Roe's argument that the investigation was unfair, even if the discipline was not.

The Opposition once again beats the incapacitation drum, but incapacitation is indisputably not a gender-based concept. Therefore, Plaintiff's arguments to the jury about incapacitation had no probative value regarding Fourteenth Amendment Equal Protection or Title IX gender discrimination.

Roe does not dispute that she conflated Title IX retaliation and Equal Protection. She argued: "The evidence is that both [I]ndividual Defendants acted with retaliatory animus based on their discriminatory assumptions about the Plaintiff derived from the sexually exploitive tape produced by the male student" and the Individual Defendants "punished her because she made a complaint (in violation of her equal protection rights)." [DE 137 pp. 8-9].

The jury's verdict on Plaintiff's Section 1983 Equal Protection allegation rejected these claims. [DE 144]. The unavoidable conclusion is that the jury rejected Roe's hybrid

2

retaliation/Equal Protection claim, leaving only her deliberate indifference claim, which should never have gone to the jury at all, as further discussed below.

Given the irreconcilable conflict between the Title IX verdict and the Section 1983 equal protection verdict, the Court should enter a judgment in Purdue's favor on the Title IX claim.

**B. Title IX does not impute pretext or retaliatory motive to evidence-based distinctions about incapacitation and intent to make a false statement.**

The Opposition is strikingly silent on Roe's admission that "I can understand if someone didn't feel there was sufficient evidence to support my claim, I can understand that." [DE 54 at p. 7]. This admission is dispositive on the question whether Purdue's no-assault finding was an act of retaliation. This admission leaves only the question whether Purdue's false-statement finding was an act of retaliation.

Roe attempts a jumbled argument that Purdue's interpretation of incapacity was retaliatory. [DE 178 pp. 11-12]. Roe cites no authority linking incapacity and retaliation. It does not matter whether Roe agrees with the incapacity analysis that Purdue employed. The undisputed, controlling fact was that an *evidentiary analysis* led Purdue decision-makers to an *evidentiary conclusion* on the issue of incapacity. Roe has expressly conceded that the Individual Defendants genuinely believed that the weight of the evidence established Roe's capacity for sexual consent. Roe cites no authority that would permit a jury to find such a genuine analysis and conclusion to be pretextual.

Roe cannot salvage the jury's Title IX verdict by bootstrapping her self-serving views on incapacity into an aspersion of a retaliatory motive for those who do not share her views. Roe fails to cite any authority for the proposition that Title IX imposes a rigid formula for evaluation of incapacity. Roe fails to cite any authority for the proposition that Title IX imputes conflates incapacity analysis and retaliation analysis.

Roe's incapacity argument is solely an argument about whether Purdue mis-weighed the evidence of incapacity. A jury cannot assign Title IX liability on that basis. *See Doe v. Univ. of S. Ind.*, 43 F.4th 784, 800 (7th Cir. 2022) (university Title IX decision-maker's weighing of the evidence is "not held 'to a higher standard than we hold district courts'" and debate about the reconstruction of "what happened between John and Jane . . . is not the question for federal courts on the merits of John's Title IX claim").

Roe pointed the jury to speculation about her alleged blood alcohol content. In contrast, the evidence relied upon by the Purdue decision-makers required no speculation. The trial evidence showed Purdue's reliance on concrete evidence of capacity: the dorm hall video, the dorm room audio tape, Roe's own admissions via her text messages and statements to others describing the encounter with C.L., eyewitness testimony from the Resident Assistant who interacted with Roe when she was supposedly incapacitated, and statements and information provided by numerous other witnesses.

No case finds that Title IX is violated by reliance upon such evidence to evaluate incapacity. Roe is pushing the bald proposition that Title IX not only *bars* Vice President Rollock and Dean Sermersheim from giving greater weight to Roe's overt conduct, but also imputes retaliatory motive to their decision to do so. Roe has never cited any authority for such a bar. There is none.

Roe's incapacity argument -- which rests solely on "guidelines established by the Association of Title IX Administrators" [DE 178 p. 10] -- is a public policy argument dressed up as a supposed statutory rule. Obviously the Association of Title IX Administrators is not the United States Congress or the federal Department of Education. A Title IX trial is about what the law requires, not about a trade association's opinion.

By silence, Roe also concedes that, as a matter of law, the Individual Defendants' evidence-based conclusion on the False Statement Rule precludes any Title IX retaliation claim. In 34 CFR § 106.71(b)(2) (titled "Retaliation") the Department of Education specifies: "Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this part does not constitute retaliation prohibited under paragraph (a) of this section, provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith."

### C. Prejudice from the "deliberate indifference" instruction.

Roe does not dispute that the Court's Title IX verdict form gave the jury four options to find an alleged Title IX violation, with the jury only needing to choose one to find Purdue liable under Title IX, and two of the four listed options were "deliberate indifference" bases. Roe does not dispute that the Title IX verdict form permitted the jury to find a Title IX violation even if they found that (1) Purdue did not treat Roe differently in investigating her complaint of assault because she was a female and (2) Purdue did not retaliate against Roe because she made a good faith complaint of sexual assault. By inviting the jury to find liability against Purdue on a "deliberate indifference" theory of relief that fails as a matter of law, the instruction and the corresponding provision of the verdict form invited error as a matter of law.

Roe admits that this was her intentional strategy. Her proposed instruction, as delivered by the Court, invited the jury to find Purdue liable in any one of "three different ways . . . differential treatment by gender, retaliation, or deliberate indifference." [DE 178 p. 6]. This concession cements Defendants' point that the jury was invited to find Title IX liability on alleged "deliberate indifference", even if the jury found no gender bias or retaliation.

5

The erroneous instruction requires a new trial on Plaintiff's Title IX claim.

The error was not limited to the structure of the instruction. The jury should never have been instructed on "deliberate indifference" at all because the trial record did not establish any material issue of fact under the caselaw standard for that theory of relief. When a school is deliberately indifferent to a report of sexual harassment, the harm is the failure to protect the student. Roe has never alleged that Purdue failed to protect her.

Deliberate indifference means choosing not to investigate and decide a report of sexual misconduct. Roe's deliberate-indifference argument is irreconcilable with her admission that the "investigation of the male student's conduct took months and resulted in the compilation of several hundred pages of documents." [DE 178 p. 12]. No court has ever endorsed the proposition that such a commitment of effort is "deliberate indifference."

The standard is not deliberate indifference to "Plaintiff's evidence" as Roe supposes without citation to any authority. [DE 178 p. 9]. For a deliberate-indifference claim, Roe would have needed to prove that "sexual harassment . . . deprive[d] [Roe] of access to the educational opportunities or benefits provided by [Purdue]." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Sexual harassment that does not recur after it is reported does not meet that standard. *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 540 (7th Cir. 2022) (en banc). The "deliberate indifference" theory of relief asks "whether the school's response to th[e] harassment reflected an official decision not 'to take action to end the harassment or to limit further harassment.'" *Id.* at 544 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289 (1998)). For a "deliberate indifference" claim, Plaintiff Roe must show "past misconduct revealing risks" that she was exposed to a recurrence. *Id.* at 542. Roe has never argued that Purdue failed to "end the harassment or to limit further harassment" of her by C.L.

In any event, as noted above, Roe expressly admitted, "I can understand if someone didn't feel there was sufficient evidence to support my claim, I can understand that." [DE 54 at p. 7]. Given that even Roe admits that the arguable insufficiency of the evidence for her claim, for Purdue to reach that same conclusion could not possibly be "deliberate indifference".

By silence, Roe concedes that nothing in the "deliberate indifference" caselaw equips a plaintiff like Roe with a cause of action against the school for not imposing a retributory sanction on the alleged assailant.

By silence, Roe concedes that nothing in the "deliberate indifference" caselaw equips a plaintiff like Roe with a cause of action against the school for disciplining a sexual assault complainant based on an evidence-based evaluation of false statements.

By instructing the jury that it could find Title IX liability even if the jury could not find gender discrimination or retaliation, the Court – at Roe's behest – instructed the jury incorrectly. It is impossible to conclude that the jury disregarded the erroneous deliberate indifference instruction.

At a minimum, Purdue should be granted a new trial on the Title IX claim because the deliberate-indifference instruction was a prejudicial error. *See Hillmann v. City of Chicago*, 834 F.3d 787, 793 (7th Cir. 2016) ("The district court has the discretion to 'grant a new trial on all or some of the issues—and to any party,' FED. R. CIV. P. 59(a), and a new trial should be granted if a prejudicial error occurred, ...".).

### D. Roe lost on her Section 1983 Due Process claim.

Roe argues that the jury rendered an "unequivocal" verdict that the Individual Defendants "deprived [Roe] of her liberty and/or property." [DE 178 p. 4].

7

Roe purports to divine "the jury's intended message to the Parties" and then, in the very same breath, asks the Court to "add one dollar in both nominal compensatory and punitive damages against both Sermersheim and Rollock" after the jury flatly refused to do so. [DE 178 pp. 8-9]. What is "unequivocal" is the bottom line. The jury stated that it could not find evidence of even a single dollar's worth of deprivation.

The jury wrote down four zeros – one zero for each of Roe's Section 1983 compensatory damage claims, and one zero for each of Roe's punitive damage claims. The jury's "intended message" to Roe was indeed "unequivocal".

Roe's Section 1983 Due Process damage claim is nothing but a damage claim. No damages, no claim. Roe lost and the Individual Defendants prevailed. The jury's verdict was "plaintiff recover nothing" on Roe's Section 1983 damage claim.

E. **Qualified immunity bars the Section 1983 Due Process claim.**

By failing to address Defendants' qualified immunity defense, the Opposition defaults that issue. Because Roe has failed to show deprivation of a "clearly established" constitutionally protected property or liberty interest, Vice President Rollock and Dean Sermersheim have qualified immunity from Roe's Section 1983 Due Process damage claim. In *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019), the court applied qualified immunity to bar plaintiff's Section 1983 Due Process claim against Rollock and Sermersheim because there was no prior case in which a student had "successfully shown the requisite interest" for a claim of deprivation without constitutional due process. *Id.* at 665. The same analysis and conclusion apply here.

## F. Clerical omission: the "plaintiff recover nothing" box on the Section 1983 Judgment.

Roe does not dispute that the Individual Defendants prevailed on her Section 1983 Equal Protection claim. [DE 178 p. 7]. Roe does not even try to show why the Judgment on her Section 1983 Equal Protection claim should not check the "plaintiff recover nothing" box.

For both of her Section 1983 damage claims, Roe asserts that the current form of the Judgment "accurately describes the jury's verdict." [DE 178 p. 2]. This concession proves the Individual Defendants' point. Accurately, the Judgment does not recite any liability of the Individual Defendants to Roe. Accurately, the Judgment does not recite any finding in favor of Roe and against the Individual Defendants. The Judgment describes an outright defense verdict against Roe on both her Due Process and Equal Protection damage claims against the Individual Defendants.

Roe nonetheless clings to her erroneous position that there can only be one prevailing party. [DE 178 p. 9 ("... the Defendants are not entitled to fees or costs because they were not the prevailing party in this case")]. Roe ignores controlling Seventh Circuit authority and decisions by this Court that expressly hold that there can be more than one prevailing party. *See* Reply in Support of the Individual Defendants' Bill of Costs [DE 174 pp. 1-4].

The Individual Defendants are just as entitled as any other defendant to the federal judiciary's model form of judgment for a defense verdict. The clerical omission of a check of the "plaintiff recover nothing" box is an oversight that this Court can and should remedy pursuant to Rule 60(a) by checking the box on the Judgment on Roe's allegations against the Individual Defendants: "The plaintiff recover nothing, the action be dismissed on the merits, and the defendant [name] recover costs from the plaintiff Nancy Roe."

9

## CONCLUSION

For the foregoing reasons, Purdue respectfully requests that its motion for judgment as a matter of law be granted and judgment be entered in favor of Purdue on Plaintiff's Title IX claim. Alternatively, the Court should order a new trial limited to Plaintiff Roe's Title IX retaliation claim against Purdue. The Individual Defendants respectfully request that the Judgment be conformed to show them as prevailing parties on the claims against them.

Dated: November 30, 2022                                 Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (Attorney No. 18973-79)
Joseph H. Harrison III (Attorney No. 35248-53)
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN  47902-1010
Telephone:  765-423-1561
Facsimile: 765-742-8175
E-Mail:  wpk@stuartlaw.com
              jhh@stuartlaw.com
***Attorneys for Defendants***

1534776v1